Luke A. Connelly, Esq. (LC-8462) **JUDGE HOLWELL**
Edward C. Wipper, Esq. (EW-6140)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone:    (212) 294-6700
Facsimile:    (212) 294-4700

Jonathan M. Cohen (application for *pro hac vice* pending)
Krista M. Enns (application for *pro hac vice* pending)
101 California Street, Suite 3900
San Francisco, California  94111
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

Attorneys for Plaintiff Global IP Sound Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

GLOBAL IP SOLUTIONS, INC.

                   Plaintiff,

          -against-

DELTATHREE, INC.

                 Defendant.

------------------------------------------------------------------------X

**07 CIV 7631**

07-CV-

: **COMPLAINT**

: **DEMAND FOR JURY TRIAL**

FILED
2007 AUG 28 AM 10: 16
U.S. DISTRICT COURT
S.D. OF N.Y.

For its Complaint against Defendant deltathree, Inc. ("deltathree"), Plaintiff Global IP Solutions, Inc. ("GIPS"), by its undersigned counsel, alleges, upon knowledge as to its own actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is an action for copyright infringement, declaratory relief, return of property and damages all arising out of the breach of a licensing agreement titled the OEM Licensing and Distribution Agreement (the "Agreement").

## PARTIES

2.     Plaintiff GIPS was founded in Stockholm, Sweden and has U.S. offices in San Francisco, Santa Barbara and Boston. Global IP Solutions, Inc. is a Delaware corporation. GIPS is world-renowned for its Digital Signal Processing and its IP telephony expertise. Through research and development as well as strategic decision making, it has developed or acquired rights to certain software used to improve the sound quality for devices utilized to make Voice over Internet Protocol ("VoIP") calls.

3.     Defendant deltathree, Inc. is a Delaware corporation that was founded in 1996, is headquartered in New York and trades on the NASDAQ. It provides integrated VoIP telephony services, products, hosted solutions, and infrastructure.

## JURISDICTION

4.     Subject matter Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 because one of the claims for relief arises under the United States Code, and by 28 U.S.C. § 1332

- 1 -

because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

5.     This Court has personal jurisdiction over deltathree pursuant to N.Y. C.P.L.R. § 301 because deltathree does business regularly within New York State through continuous and systematic commercial conduct.

6.     In the alternative, by signing the Agreement, the parties consented to be hailed into this Court.

## VENUE

7.     Venue is proper under 28 U.S.C. § 1391(d) because by signing the Agreement the parties established that "Any action relating to th[e] Agreement must be venued in New York, New York" and expressly consented "to venue in the . . . federal courts."

## STATEMENT OF FACTS

8.     Effective as of August 19, 2005, GIPS and deltathree entered into the Agreement under which GIPS granted deltathree a license to use certain of GIPS' intellectual property in connection with deltathree's products and services. A copy of the Agreement is attached hereto as Exhibit A.

9.     In return for this license, deltathree agreed, among other things, to pay GIPS royalties.

10.    The parties' agreement concerning royalties is set forth in Appendix C to the Agreement.

11.    Appendix C provides that deltathree will pay GIPS a "one-time lifetime royalty of US$1.00 per Incremental Active User . . . ."

12.    The term "Incremental Active User" is defined by the Agreement as "the total number of additional users in said quarter that have made an outbound call compared to the total number of users in the prior quarter."

13.    This definition was drafted and proposed by deltathree.

14.    GIPS agreed to use this definition and it was inserted into the Agreement.

15.    deltathree paid GIPS US$15,000 in advance royalties as prepayment for the first 15,000 Incremental Active Users.

16.    Under the Agreement, once the number of Incremental Active Users reached 15,000, deltathree agreed it would pay GIPS a "one-time lifetime royalty of US$1.00 per Incremental Active User . . . ."

17.    deltathree also agreed that within thirty (30) days after the end of each calendar quarter, it would provide detailed reports to GIPS in English.

18.    Under Article 9.1 of the Agreement, deltathree was required on a quarterly basis "detailing for that quarter:  (a) the number of Royalty Events; (b) the Royalties owing to GIPS; (c) the calculations used to determine the Royalties; (d) the number of Combined Products distributed; and (e) a good-faith estimate of the number of Combined Products to be sold or sub-licensed in the next 12 months."

19.    The arrangement set forth in the Agreement was to continue for three (3) years unless extended or earlier terminated pursuant to the Agreement's terms.

- 3 -

20.     Among the Agreement's early termination clauses, is Article 14.4 ("Termination For Breach").

21.     In full, Article 14.4 provides:

> If a party has breached this Agreement in any material respect, the
> other party may send written notice to the breaching party stating
> (a) the nature of the breach and (b) the date (at least 10 days after
> delivery of the notice) on which this Agreement is to terminate;
> *provided, however*, that the Agreement terminates only if the
> breach is not cured prior to the expiration of the notice period.

## Fourth Quarter 2005

22.     On or about January 30, 2006, deltathree submitted to GIPS the number of active users during the fourth quarter of calendar year 2005.

23.     The number it provided was 5,295, well below the 15,000 active user threshold that would trigger deltathree's duty to make Royalty payments to GIPS.

## First Quarter 2006

24.     More than thirty (30) days after the end of the first quarter 2006, on or about May 2, 2006, deltathree next submitted to GIPS Royalty information.

25.     deltathree represented that its total number of Incremental Active Users was 10,759.

26.     It also reported that this increase put it over the 15,000 Incremental Active User threshold by 1,054 Incremental users.

- 4 -

27.    Therefore, on or about May 25, 2006, deltathree made a Royalty payment to GIPS in the amount of $1,054.

28.    At or about that same time, deltathree publicly reported that for the first quarter of 2006, it had record revenues of $10.7 million.

29.    Of this, approximately $9.1 million was revenue from VoIP telephony services.

**Second Quarter 2006**

30.    Following the end of the second quarter of 2006, in breach of the Agreement, deltathree failed to submit to GIPS a report that set forth the number of Royalty Events or the Royalties owing to GIPS.

31.    While deltathree failed to report anything to GIPS, deltathree publicly reported that its revenues had increased approximately 53.3% over the first six months of 2005 to approximately $20.7 million for the six months ended June 30, 2006.

32.    And, it also publicly reported revenues from VoIP telephony services was approximately $8.5 million for the three months ended June 30, 2006.

**Third Quarter 2006**

33.    During Fall 2006, deltathree started to publicly report how many people had deltathree accounts.

34.    According to documents deltathree filed with the SEC, as of September 30, 2006, it had approximately 306,000 active user accounts.

35.    Also during Fall 2006, deltathree resumed reporting Royalty information to GIPS.

36.    Deltathree reported the number of Incremental Active Users increased by 3,607.

37.    On or about October 3, 2006, deltathree sent GIPS a check that included a $3,607 Royalty payment.

38.    While paying $3,607 to GIPS, deltathree publicly reported that its revenue for the three months that ended September 30, 2006 was $8.5 million.

39.    It also publicly reported revenues from VoIP telephony services of approximately $7.2 million.

**Fourth Quarter 2006**

40.    After the close of the fourth quarter of 2006 – and in breach of the Agreement – deltathree did not submit a Royalty Report to GIPS within 30 days after the end of the quarter.

41.    It did, however, publicly report its total number of users as of the end of fourth quarter of 2006: 425,000.

42.    This number was over 100,000 more users than it publicly reported at the end of the prior quarter.

43.    When deltathree finally submitted a Royalty Report to GIPS, however, it reported that it only had 5,689 new users.

44.    deltathree tendered only a $5,689 Royalty payment on or about May 24, 2007.

45.    From the backup information deltathree submitted in support of its 5,689 new-user number, GIPS learned that deltathree was not calculating its new-user number in accord with the Agreement's definition of new Incremental Active User.

46.    Rather, in breach of the Agreement, deltathree's number was generated by calculating the number of deltathree users for each month of the quarter in question, finding the average number of users and then comparing that average to the average number of deltathree users from the prior quarter.

47.    Not only does use of this averaging method breach the Agreement, on information and belief, this Royalty Report was inaccurate.

48.    Indeed, given that the increase in the number of users was 119,000 – as publicly reported to the SEC -- deltathree should have paid GIPS $119,000 in royalties for the fourth quarter of 2006.

49.    By failing to do so, deltathree breached the Agreement.

**First Quarter 2007**

50.    After the first quarter of 2007, deltathree again publicly reported a massive increase in its number of users.

51.    According to documents filed with the SEC, it had 505,000 active users – *i.e.*, accounts that made or received a call during the quarter.

52.    This was 80,000 more users than it had reported in the prior quarter.

53.    Although deltathree timely submitted its publicly-reported information to the SEC, in breach of the Agreement, it failed to provide GIPS with any Royalty information for the quarter ending March 31, 2007.

- 7 -

54.    Nor did it make a royalty payment – even though it reported $6.6 million in revenue from its VoIP telephony services.

**The Audit**

55.    On or about May 15, 2007, the Senior Vice President of deltathree, Effi Baruch, met with Michael Poppler, the European Region Sales Director for GIPS.

56.    At this meeting, Baruch admitted that from the date the Agreement was signed, deltathree had been calculating royalties only after it divided its number of active accounts by ten.

57.    With this admission, Baruch confirmed that deltathree was not calculating its new-user numbers based the definition of "Active Incremental User" as set forth in the Agreement.

58.    Shortly thereafter, GIPS notified deltathree that pursuant to the audit provision in the Agreement, it intended to engage an independent auditor and audit deltathree's records.

59.    With a letter dated May 23, 2007 letter, deltathree acknowledged receipt of the audit demand and expressly set forth that it would cooperate with the audit process pursuant to the terms of the Agreement.

60.    Indeed, it was required to do so because it agreed to do so under Article 9.3 of the Agreement.

61.    In June 2007, GIPS engaged PricewaterhouseCoopers ("PwC") to audit deltathree's Royalty Report records.

62.     Initially, deltathree provided PwC with the data requested.

63.     During the audit process, however, deltathree stopped cooperating, which breached the Agreement.

64.     Notwithstanding deltathree's intransigence, it admitted again to GIPS that the user totals it had provided to GIPS were based on quarterly averages.

65.     That is, deltathree took its user counts, added them over a three month period and then divided by three (3) to get a quarterly average.

**Notice of Breach**

66.     Frustrated by deltathree's failure to fully cooperate with the audit and because of deltathree's multiple admissions that it was not calculating its royalty payments properly, with a letter dated on or about July 19, 2007, GIPS informed deltathree via letter that deltathree was in material breach of the Agreement.

67.     In its letter, GIPS identified five specific breaches of the Agreement

68.     One was that deltathree failed to provide an accurate Royalty Report as to the number of Incremental Active Users for the calendar quarter ending December 31, 2006 in breach of Article 9.1 of the Agreement.

69.     The second was that deltathree failed to provide an accurate Royalty Report as to the number of Incremental Active Users for the calendar quarter ending March 31, 2007 in breach of Article 9.1 of the Agreement.

- 9 -

70.    The third was failure to pay Royalties in the amount of US$1.00 for each Incremental Active User for the calendar quarter ending December 31, 2006 in breach of Article 8.2 and Appendix C.2.

71.    The fourth was failure to pay Royalties in the amount of US$1.00 for each Incremental Active User for the calendar quarter ending March 31, 2007 in breach of Article 8.2 and Appendix C.2.

72.    And the fifth breach was failure to cooperate fully with GIPS and PwC in connection with the audit in breach of Article 9.3.

73.    This letter also served as a Notice of Termination, i.e., that if deltathree failed to cure its breaches, the Agreement would terminate effective July 31, 2007.

**deltathree's Response And Failure To Cure**

74.    deltathree's response to this letter is dated July 25, 2007 letter (the "Response Letter").

75.    In the Response Letter, deltathree admitted that the Royalty data it sent regarding the fourth quarter of 2006 was incorrect.

76.    It also falsely stated that corrected data for the fourth quarter of 2006 had been provided to PwC.

77.    The Response Letter also addressed the belated first quarter 2007 Royalty Report.

78.    First, it falsely claimed that it provided the Royalty Report to PwC royalty data for the first quarter of 2007.

- 10 -

79.    Second, it claimed that it was unable to timely provide first quarter 2007 royalty data because of the audit.

80.    This, however, does not make sense.

81.    deltathree was bound by the Agreement to provide royalty data within 30 days after the end of the calendar quarter, which was March 31, 2007.

82.    30 days after March 31, 2007 was April 30, 2007.

83.    GIPS did not make its audit demand until May 18, 2007.

84.    In addition to making these statements, the Response Letter admitted that although deltathree reported an increase of almost 200,000 new users between the end of September 2006 and the end of March 2007, as of July 25, 2007, deltathree had paid GIPS only $25,350 in royalty payments.

85.    Finally, the Letter claimed that deltathree had cured as to each issue raised in GIPS' July 19, 2007 letter when deltathree had not.

**Termination of the Agreement**

86.    As of July 31, 2007 – more than ten (10) days after delivery of the notice that deltathree was in material breach of the Agreement – deltathree had failed to cure its breaches of the Agreement.

87.    Deltathree's failure to act, therefore, resulted in termination of the Agreement on that date.

88.    Under the Agreement, within ten (10) days of termination – *i.e.*, no later than August 10, 2007 – deltathree was required certify in writing that it had returned or destroyed all copies of the GIPS Integrated Programs or Combined Products.

89.    As of the filing of this Complaint, deltathree had not done so.

90.    Indeed, on or about August 13, 2007, deltathree sent GIPS further reporting data as if the Agreement had not been terminated.

91.    On or about August 14, 2007, deltathree publicly reported that its revenues from VoIP telephony services were approximately $12.6 million for the six months ended June 30, 2007.

92.    It also again reported an increase in its active accounts.

93.    By continuing to use GIPS's technology following the termination of the Agreement, deltathree has caused and continues to cause GIPS irreparable harm.

### FIRST CLAIM FOR RELIEF

(Copyright Infringement)

94.    GIPS incorporates paragraphs 1 through 93 above as if fully set forth herein.

95.    GIPS is the owner of all copyrights in NetEq which is incorporated into VoiceEngine PC Advanced. GIPS has complied in all respects with Title 17 of the United States Code, secured the exclusive rights and privileges to NetEq as well as obtained the appropriate certificates of copyright registration, which constitutes *prima facie* evidence of the validity of the copyrights and the facts stated in the certificates.

- 12 -

96.    GIPS has registered NetEq with the United States Copyright Office, and received from the Register of Copyrights certificates of registration

97.    Each version of the NetEq and therefore VoiceEngine PC Advanced incorporates material original to GIPS, or for GIPS has acquired all right title and interest, and each is copyrightable subject matter under the laws of the United States.

98.    Following termination of the License Agreement by GIPS, deltathree has copied, reproduced, distributed, adapted, and/or publicly displayed NetEq and VoiceEngine PC Advanced without the consent or authority of GIPS, thereby directly infringing GIPS copyrights.

99.    deltathree's acts constitute infringement of GIPS's copyrights in violation of 17 U.S.C. §§ 106 and 501.

100.    The acts of infringement by deltathree have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of GIPS.

101.    As a direct and proximate result of deltathree's infringement and threatened infringement, GIPS has sustained and will continue to sustain substantial injury, loss and damage to its ownership rights in the copyrighted work.

102.    GIPS is entitled to an injunction restraining deltathree, its officers, agents, and employees, distributors, and all persons acting in concert with them, from engaging in further acts of copyright infringement.

103.    GIPS is further entitled to recover from deltathree damages sustained and/or likely to be sustained by GIPS as a result of deltathree's wrongful acts. GIPS is presently unable to ascertain the full extent of the monetary damages that it has suffered by reason of deltathree's

- 13 -

acts of copyright infringement, but on information and belief, alleges that such damages exceed $75,000.

104.    GIPS is further entitled to recover from deltathree the gains, profits, and advantages that deltathree has obtained as a result of its wrongful acts. GIPS is presently unable to ascertain the full extent of the gains, profits, and advantages that deltathree has realized by reason of its acts of copyright infringement, but on information and belief, alleges that such damages exceed $75,000.

105.    GIPS is further entitled to an order from this Court for the destruction of all copies made or used in violation of GIPS's exclusive rights, and all articles by means of which such copies are reproduced.

## SECOND CLAIM FOR RELIEF

(Breach of the License Agreement)

106.    GIPS incorporates paragraphs 1 through 105 above as if fully set forth herein.

107.    The Agreement constitutes a binding and enforceable agreement between GIPS and deltathree.

108.    GIPS has fully performed its obligations under the Agreement, or such obligations have been waived or excused.

109.    deltathree breached the Agreement by failing to provide an accurate Royalty Report for the quarter ending December 31, 2006.

110.    deltathree breached the Agreement by failing to provide an accurate Royalty Report for the quarter ending March 31, 2007.

111. deltathree breached the Agreement by failing to pay Royalties in the amount of US$1.00 for each Incremental Active User for the calendar quarter ending December 31, 2006.

112. deltathree breached the Agreement by failing to pay Royalties in the amount of US$1.00 for each Incremental Active User for the calendar quarter ending March 31, 2007.

113. deltathree breached the Agreement by failing to cooperate with the Audit.

114. As a direct and proximate result of deltathree's breaches of the Agreement, GIPS has been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

115. GIPS incorporates paragraphs 1 through 113 above as if fully set forth herein.

116. The Agreement contains an implied covenant of good faith and fair dealing that prohibits one party from doing anything to deprive the other party of the benefits of the Agreement.

117. deltathree breached the implied covenant of good faith and fair dealing by failing to provide an accurate Royalty Report for the quarter ending December 31, 2006.

118. deltathree breached the implied covenant of good faith and fair dealing by failing to provide an accurate Royalty Report for the quarter ending March 31, 2007.

119. deltathree breached the implied covenant of good faith and fair dealing by failing to pay Royalties in the amount of US$1.00 for each Incremental Active User for the calendar quarter ending December 31, 2006.

- 15 -

120.    deltathree breached the implied covenant of good faith and fair dealing by failing to pay Royalties in the amount of US$1.00 for each Incremental Active User for the calendar quarter ending March 31, 2007.

121.    deltathree breached the implied covenant of good faith and fair dealing by failing to cooperate with the Audit.

122.    As a direct and proximate result of deltathree's breaches of the implied covenant of good faith and fair dealing, GIPS has suffered damages in an amount to be proven at trial.

123.    GIPS is entitled to its attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF

(Declaratory Judgment, 28 U.S.C. § 2201)

124.    GIPS incorporates paragraphs 1 through XX above as if fully set forth herein.

125.    GIPS seeks a judicial determination that the Agreement was properly terminated.

126.    An actual controversy exists between GIPS and deltathree with respect to whether the Agreement has been terminated enabling the court to declare the rights and legal relations between them to 28 U.S.C. § 2201.

### FIFTH CLAIM FOR RELIEF

(Replevin, NY CPLR § 7101)

127.    GIPS incorporates paragraphs 1 through 126 above as if fully set forth herein.

128.    With respect to the VoiceEngine PC Advanced, GIPS has a possessory right superior to that of deltathree.

- 16 -

129.     GIPS has demanded return of the VoiceEngine PC Advanced, but deltathree refuses to return it.

130.     GIPS is entitled to the immediate possession of the VoiceEngine PC Advanced.

### PRAYER FOR RELIEF

WHEREFORE, GIPS prays for entry of judgment as follows:

(1)      That the Agreement was terminated on July 31, 2005;

(2)      That deltathree, its agents, and servants be enjoined during the pendency of this action and permanently from infringing the copyright in GIPS's NetEq and VoiceEngine PC Advanced in any manner, and from publishing, selling, marketing or otherwise using any copies of the either;

(3)      That deltathree be required to deliver up to be impounded during the pendency of this action all copies of the VoiceEngine PC Advanced in its possession or under its control and to deliver up for destruction all infringing copies and matter for making such copies;

(4)      That deltathree be required to pay GIPS such damages as GIPS has sustained in consequence of deltathree's infringement of the copyright of NetEq and therefore VoiceEngine PC Advanced and to account for and pay to GIPS all gains, profits, and advantages derived by deltathree by its infringement on GIPS's copyright;

(5)      That deltathree be required to properly account for its total number of additional users for each quarter the contract was in force and to pay royalties to GIPS based on these revised calculations;

- 17 -

(6)    That deltathree be required to reimburse GIPS for the costs of the Audit;

(7)    For interest at the highest rate and from the earliest date as allowed by law;

(8)    For costs of suit incurred herein; and

(9)    For such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 28, 2007

Respectfully Submitted,

By:    Luke A. Connelly, Esq. (LC-8462)
       Edward C. Wipper, Esq. (EW-6140)
       WINSTON & STRAWN LLP
       200 Park Avenue
       New York, NY 10166-4193
       Telephone:    (212) 294-6700
       Facsimile:    (212) 294-4700

       Jonathan M. Cohen, Esq.
       Krista M. Enns, Esq.
       *Pro hac vice applications pending*
       WINSTON & STRAWN LLP
       101 California Street, Suite 3900
       San Francisco, CA  94111-5894

       *Attorneys for Plaintiff Global IP Sounds Inc.*