# WINSTON & STRAWN LLP | Facsimile

101 CALIFORNIA STREET, SAN FRANCISCO CA 94111-5894
TELEPHONE: 415-591-1000    FACSIMILE: 415-591-1400

35 W. WACKER DRIVE    200 PARK AVENUE    1700 K STREET, N.W.    333 SOUTH GRAND AVENUE    43 RUE DU RHONE    25 AVENUE MARCEAU    99 GRESHAM STREET
CHICAGO, IL 60601-9703    NEW YORK, NY 10166-4193    WASHINGTON, DC 20006-3817    LOS ANGELES, CA 90071-1543    1204 GENEVA, SWITZERLAND    75116 PARIS, FRANCE    LONDON, UNITED KINGDOM EC2V 7NG
312-558-5600    212-294-6700    202-282-5000    213-615-1700    41-22-317-75-75    33-1-53-64-82-82    44-(0)-20-7105-0000

Fax Number: 415-591-1400

FROM:   Jonathan M. Cohen
        415-591-1483

CHARGEBACK:

999999.333

DATE:   10/9/2007

## Please Deliver as Soon as Possible To:

| RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|
| 1. Hon. Donald Pogue | U.S. Court of International Trade | (212) 264-3201 | |
| 2. Dominic J. Picca, Esq. | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. | (212) 983-3115 | (212) 935-3000 |

Total number of pages including this page: 5

**COMMENTS**

Please see the following attachment. Thank you.

IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL OUR FAX OPERATOR AS SOON AS POSSIBLE.
THANK YOU.
415-591-1000

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

Operator Initials: _____
Confirmation: Yes ____ Name: _____    No: ____

# WINSTON & STRAWN LLP

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

(415) 591-1000

FACSIMILE (415) 591-1400

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

JONATHAN M. COHEN
ATTORNEY AT LAW
(415) 591-1483
jcohen@winston.com

October 9, 2007

**BY FACSIMILE AND FEDERAL EXPRESS**

Honorable Donald C. Pogue
United States Court of International Trade
One Federal Plaza
New York, New York 10278-0001

Re:    Global IP Solutions, Inc. v. Deltathree, Inc., No. 07 CV 7631

Dear Judge Pogue:

Winston & Strawn LLP is counsel of record for plaintiff Global IP Solutions, Inc. ("GIPS") in connection with the above-referenced action. We write in response to Defendant Deltathree, Inc.'s ("Deltathree's") October 5, 2007 letter brief that was faxed to the Court late Friday, and to advise the Court of GIPS' position in advance of the scheduled telephone conference at 3:00 p.m. on October 9, 2005.

Stripped of all rhetoric, Deltathree now wants the Court to reconsider Judge Swain's prior order setting a preliminary injunction hearing – which was originally scheduled for September 17th. (It was subsequently reset due to the Court's calendar.)

Deltathree now alleges that GIPS' request for a preliminary injunction is moot due to the fact that it is supposedly no longer allowing new users to download GIPS' software. This, however, only partially addresses GIPS' concern because as a result of Deltathree's prior breaches of the Agreement and GIPS' subsequent termination, Deltathree has no right to ongoing usage of the software, even for existing users. Although Deltathree claims that it has such an ongoing right, their argument is based solely on a typographical error and therefore their argument should fail. As such, Deltathree is still infringing on GIPS' copyright, which was precisely the issue before Judge Swain when she set the Preliminary Injunction hearing and expedited discovery schedule. Deltathree's agreement to discontinue its distribution of infringing product on a go-forward basis only addresses half of the relief sought by GIPS.

WINSTON & STRAWN LLP

October 9, 2007
Page 2

It is GIPS' position that Deltathree's reading of the Agreement as to ongoing use is incorrect and because the face of the Agreement itself indicates that Deltathree is wrong, the preliminary injunction hearing should not be taken off calendar.

**Background.**

GIPS specializes in VoIP[1] technology and has developed or acquired rights to certain software used to improve the sound quality for VoIP calls. Through the Agreement, GIPS licensed to Deltathree certain software that enhances the voice quality of several of Deltathree's products.

Pursuant to the Agreement, Deltathree should have been paying royalties to GIPS every quarter based on the "total number of additional users" who were using the Deltathree product that incorporated GIPS' software. Deltathree, however, paid royalties based on the average number of additional users, and even that number was artificially reduced by applying a divisor which was never addressed in the Agreement or approved by GIPS. In spring 2007, Deltathree inadvertently disclosed this information to GIPS. Deltathree's unwillingness to properly calculate royalties (among other things) ultimately led to the instant lawsuit.

After appearing in front of Judge Swain in late August on an Order to Show Cause, Judge Swain ordered that the parties engage in expedited discovery and set a hearing on the Preliminary Injunction on September 17, 2007. That date was later modified to October 21 and 22 to accommodate the Court's schedule. On or about October 2, 2007, the parties exchanged their first productions of documents.

On October 4, 2007, counsel for Deltathree informed counsel for GIPS for the first time that Deltathree will no longer use GIPS' software on a go-forward basis. He then demanded that GIPS take the Preliminary Injunction hearing off calendar. He also demanded a six-month run-off period for the Agreement, ostensibly based on Article 14.5. Because Article 14.5 does not provide for a run-off period after a termination of the Agreement due to breach (particularly in this case where the breach was due to a non-payment of royalties), GIPS refused Deltathree's demands. The following day, Deltathree filed its letter brief with this Court along with its proposed Consent Order.

GIPS' intent was always clear – if the licensee breached the Agreement, then it was not entitled to any run-off period. Why would a licensor agree to allow a licensee to breach

---

[1] VoIP is shorthand for Voice over Internet Protocol, which, among other things, allows customers to make voice telephone calls with their computers. *See Global NAPS, Inc. v. Verizon New England, Inc.*, 454 F.3d 91, 101 n.8 (2d Cir. 2006). "As the name implies, VoIP communications are sent at least partially over the internet." *Frontier Telephone of Rochester, Inc. v. USA Datanet Corp.*, 386 F. Supp. 2d 144, 145 (W.D.N.Y. 2005). This is accomplished through VoIP technology that "converts the contents of a particular communication into digital packets of information, which it then sends over private networks or over the internet to an end user. These separate packets of information run through various computers, routers, and switches anywhere in the world, and are then 'reconstituted' at the destination." *Id.*

**WINSTON & STRAWN LLP**

October 9, 2007
Page 3

the agreement and then have an additional six months of essentially free use? In this case, if Deltathree's position is adopted, Deltathree will be able to allow its users to continue to use software for six months that it had no right to distribute in the first place simply because it has agreed not to continue to do so on a go forward basis.

### Deltathree's Position And The Agreement's Language.

Deltathree's letter brief focuses on a single sentence in Article 14.5 of the Agreement (the "survival provision"). Were this the only sentence relating to the issue of whether a party's contractual rights survive the termination of the Agreement, resolution of the issue likely would be simple. The sentence that follows what Deltathree focuses on, however, provides an exception to the survival provision. Together, the first two sentences of Article 14.5 provide:

> After the expiration or earlier termination of this Agreement under this Article 14 above, all licenses to Licensee and all sublicenses cease, except that (i) for a period of one (1) year from the date of termination, Licensee, Sublicensees and Distributors may continue to use the GIPS Integrated Programs and documentation solely for the purpose of providing support to End Users and (ii) Licensee, Sublicensee and Distributors shall have the right to sell off existing inventories of Combined Products for a period of six (6) months from the date of termination. <u>Notwithstanding the foregoing, if this Agreement is terminated pursuant to Article 14.3 above due to Licensee's breach, the exceptions described.</u>

(Emphasis added.) Article 14.3, in turn, provides: "Either party may terminate this Agreement immediately upon written notice if the other party (a) institutes bankruptcy or similar proceedings; (b) has bankruptcy or similar proceedings instituted against it and such proceedings are not stayed or dismissed within 60 days; or (c) makes an assignment of assets for the benefit of its creditors. In addition, GIPS may terminate this Agreement if Licensee becomes insolvent." Obviously, Deltathree takes the position that because neither party is involved with a bankruptcy-related proceeding, Article 14.3 is inapplicable. The cross-reference to Article 14.3, however, is a typographical error and Deltathree knows it.

### Deltathree Is Trying To Take Advantage Of A Typographical Error.

It is clear from the face of the agreement that the cross-reference to 14.3 is a typographical error. First, the language immediately surrounding the reference 14.3 references "due to a Licensee's breach" not "due to a Licensee's bankruptcy." A termination due to a Licensee's bankruptcy would not involve a breach of the contract. In addition, trying to apply 14.5 in the context of a bankruptcy as suggested would conflict directly with the bankruptcy code. Given the sophistication of the parties, they would not have mutually agreed to include an illegal provision in the Agreement. Deltathree knows that this is a typographical error and is

# WINSTON & STRAWN LLP

October 9, 2007
Page 4

attempting to take advantage of it. Given that the parties are unlikely to reach a compromise on the issue of the cross-reference, leaving the preliminary injunction on calendar is both eminently reasonable and appropriate.

### The Preliminary Injunction Should Remain On Calendar.

As part of Judge Swain's order, each week Deltathree has been required to provide GIPS with the number of new Deltathree accounts utilizing GIPS' software. This number has been averaging upwards of 20,000 per week. Deltathree has paid no royalties for these 80,000 plus new users and in fact has paid less than $25,000 in total royalties during the term of the Agreement despite there likely being in excess of 500,000 active incremental users for which Deltathree should have paid a dollar each.

GIPS should not be forced to license its copyrighted works to these users who acquired GIPS' software when Deltathree was infringing on GIPS' copyright. Simply stated, even though Deltathree is claiming to have relinquished certain use of GIPS' software, this does not make the Preliminary Injunction moot.[2] The issue remains that since the Agreement terminated on July 31, 2007, Deltathree has continued to improperly use GIPS' software and now seeks to use the survival provision to continue its improper usage. A Preliminary Injunction hearing is not only proper but GIPS believes that it is necessary to address the legal and factual disputes that exist between the parties – legal and factual disputes that were presented to Judge Swain in August and that have not changed since the Agreement terminated at the end of July.

Regards,

*[signature]*

Jonathan M. Cohen

JMC:kme

cc   Dominic J. Picca, Esq. (via facsimile)

---

[2] Nor does it make the court-ordered reporting requirement moot.