Exhibit B

OEM License And Distribution Agreement
between
Global IP Sound Inc.
and
Deltathree, Inc.

This OEM License And Distribution Agreement ("Agreement") is made to be effective as of __ **August 2005** (the "Effective Date") by and between **Global IP Sound Inc.**, a Delaware corporation with offices at 900 Kearny Street, Fifth Floor, San Francisco, California 94133-5124 USA (including its subsidiary, Global IP Sound Europe AB) (collectively, "GIPS" or "Licensor"), and **Deltathree, Inc.**, a Delaware corporation with offices at 75 Broad Street, 31st Floor, New York, New York 10004, ("Deltathree" or "Licensee").

Recitals

A.   Global IP Sound, Inc. and Global IP Sound Europe AB have developed or acquired rights to certain software used to improve the sound quality for devices utilizing packet networks, including the Internet.

B.   Deltathree has products that enable voice-over-IP communications.

C.   Deltathree desires to obtain, and Licensor desire to grant, a license to use and exploit certain of GIPS' intellectual property in connection with Licensee's products and services in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises set forth below, the parties agree as follows:

Agreement Terms And Conditions

1   DEFINITIONS. In this Agreement:

"**Combined Product**" means each of the products composed of Licensee products and GIPS Integrated Programs listed in Appendix A, Article 1.1(B). The list of Combined Products and associated Deltathree products, GIPS Software, and GIPS Integrated Programs, may be modified only by a written amendment to *Appendix A*.

"**Compliance Test**" means testing of the GIPS Integrated Programs on the Target Environment to verify compliance with the Specifications, as updated by GIPS from time to time.

"**Distributor**" means an entity to which Deltathree has granted the right to distribute Combined Products as permitted by Article 3.4 of this Agreement.

"**End User**" means any person or entity that has acquired Combined Products for personal use, and not for further resale.

"**Fees**" shall have the meaning given to such term in Appendix C, ArticleC.1.

"**GIPS API**" means the application programmer's interface for the GIPS Software.

"**GIPS Integrated Program**" means a binary code version of the GIPS Software with GIPS APIs that has been (a) configured to work on the target environment and (b) compliance tested, for distribution on or with the Licensee Products.

"**GIPS Software**" means the proprietary GIPS Software and related materials identified in *Appendix A*.

"**Golden Master**" means the master disks of the GIPS Integrated Programs provided by GIPS to Deltathree under this Agreement.

"**Intellectual Property Rights**" means all patents, copyrights, trademarks, trade secrets, and other intellectual property rights now existing or that may arise in any jurisdiction, and all applications therefor and registrations thereto.

"**Deltathree Product**" or "**Licensee Product**" means the Deltathree IP communications devices, environments, and services identified in *Appendix A* into which one or more GIPS Integrated Programs will be incorporated in order to produce the Combined Products.

"**OEM Party**" means a third party to which Deltathree has granted the right to distribute Combined Products which is embedded into the third party's own products as permitted by Article 3.4 and Article 3.7of this Agreement.

"**Royalties**" means the royalties payable by Licensee upon the occurrence of each Royalty Event as specified in Appendix C, Article C.2.

"**Royalty Event**" means each new "incremental Active user" (as defined in Appendix C) shall be considered a Royalty Event (an upgrade to the Combined Product or any component thereof, including or if applicable, to an OEM Party; provided, however, without limitation, any GIPS Integration Program, shall be considered part of the payment related to the original Royalty Event).

"**Specifications**" means the performance and technical specifications for the GIPS Integrated Programs, as updated by GIPS from time to time.

"**Target Environment**" means the computer environment described in *Appendix A* for which the integration work will be performed.

"**Third-Party Software**" means the Third-Party Software identified in *Appendix A*.

2 APPENDICES. The following Appendices are incorporated by reference into this Agreement:

| | |
|---|---|
| Appendix A | Development And Distribution Of The Combined Products |
| Appendix B | Maintenance And Support |
| Appendix C | Fees And Royalties |
| Appendix D | Trademark License |

3 LICENSE GRANT

**3.1 Grant From Deltathree To GIPS.** Deltathree grants to GIPS a non-exclusive, royalty free, non-distribution license to the binary and related code and documentation of Licensee Product and/or related hardware reasonably necessary for the sole purpose to allow GIPS to participate in development, maintenance, and improvement of the Combined Product.

**3.2 Specific License Limitations.** Only those licenses expressly set forth in this Agreement are granted. All licenses granted by one Party to the other Party under this Agreement are personal that Party and are subject to the following further limitations:

(A) each Party is granted no interest in or license to the other party's source code, except the limited license to specified GIPS APIs.

(B) Each Party may not, except as expressly permitted by this Agreement, (a) modify or create any derivative work of Deltathree the other Party's Software, APIs, Documentation, or Integrated Programs; or (b) assign, transfer, lease, or rent such software, APIs, documentation, or Integrated Programs.

(C) Neither Party may reverse engineer, decompile, or otherwise attempt to derive source code, underlying ideas, algorithms, structure, or organization of the other Party's Software or Integrated Programs, except to the extent required by local law to obtain interoperability with other independently created computer programs or as required by other compulsory local law, in which case such Party must notify the other Party of same and provide supporting authorities therefore.

(D) No sublicense rights are granted except to the extent expressly set forth in this Agreement.

No other licenses are granted under this Agreement, whether by implication, estoppel, course of conduct, or otherwise.

**3.3 Integration Of GIPS Software and GIPS APIs.** GIPS grants to Deltathree the non-exclusive, worldwide, non-assignable, non-sublicensable, non-transferable right and license to use internally, test, and configure the GIPS Software in binary code form and GIPS APIs in both binary and human-readable forms, solely to the extent necessary to (a) help develop the GIPS Integrated Programs and (b) produce the Combined Products.

**3.4 Distribution Of Incorporated GIPS Integrated Programs And Documentation.** Licensee agrees to distribute the Combined Products, accordingly. Subject to the terms and conditions of this Agreement (including but not limited to Licensee's payment obligations), GIPS grants to Deltathree a non-exclusive, world-wide, non-assignable, non-transferable right and license to:

(A) Incorporate the GIPS Integrated Programs from Golden Masters into the Licensee Products, in order to create the Combined Products;

(B) Market and sell the Combined Products, directly or through a Distributor, to End Users;

(C) Modify the GIPS documentation (subject to Appendix D 2.3);

(D) Distribute the modified GIPS documentation to Distributors or End Users with the Combined Products, either separately or incorporated appropriately into Deltathree's own product documentation; and

(E) Copy the GIPS Integrated Programs and modified GIPS documentation solely to the extent necessary for Deltathree's internal testing, backup, and archival purposes.

Nothing in this Agreement grants to Deltathree any license to distribute the GIPS Integrated Programs other than for use on or with the Combined Products.

**3.5 Sublicense Rights.** Subject to the terms and conditions of this Agreement, Deltathree may sublicense to Distributors only those rights granted to Deltathree in Articles 3.4(A), 3.4(B), 3.4(C), and 3.4(D) above. Deltathree must ensure that Distributors adhere to the terms and conditions of this Agreement, including but not limited to retention of branding and proprietary legends and audit-able record keeping.

**3.6 End User Licenses.** Deltathree will in good faith use its use reasonable efforts to ensure that, whether distribution is direct to End Users or through Distributors, distribution of Combined Products and documentation to End Users is subject to a license agreement including, in substance, the following terms and conditions:

  (A) End User's license is personal, nonexclusive, non-sublicensable, and consistent with Deltathree's confidentiality obligations under this Agreement;

  (B) GIPS's copyright, patent, confidentiality, and other notices and legends are retained;

  (C) Combined Products and documentation may not be copied, except for limited backup purposes where appropriate;

  (D) End User may not (i) create any derivative work of any Combined Products; or (ii) decompile, reverse engineer, or otherwise attempt to derive source code, underlying ideas, algorithms, structure, or organization of a Combined Product, except to the extent required by local law to obtain interoperability with independently created computer programs or as required by other compulsory local law; and

  (E) End User's sole warranty on Combined Products is from Deltathree or a Distributor, but not from GIPS.

**3.7 OEM.** If Deltathree enters into an OEM or similar relationship for its products pursuant to which a Combined Product is embedded in any form into an OEM Party product, each delivery of Combined Products the Licensee distributes under that arrangement are treated as Royalty Events under this Agreement.

**4   NON-RECURRING ENGINEERING ("NRE") AND COMPLIANCE TESTING**

**4.1 GIPS Software Integration and Platform.** The GIPS Software will be modified by GIPS with Licensee's support to create the GIPS Integrated Programs as set forth in *Appendix A*. Integration work by GIPS may be subject to engineering fees payable by Licensee as set forth in *Appendix C*. GIPS will perform final compliance testing of the GIPS Integrated Programs on the Combined Products. When GIPS has approved the successful completion of the Compliance Tests, GIPS will deliver a Golden Master for each GIPS Integrated Program or suite of GIPS Integrated Programs.

**4.2 Licensee Products.** Licensee is solely responsible for modifications to the Licensee Products necessary or desirable to complete the Combined Products. GIPS will provide reasonable support for Licensee's efforts as part of GIPS's NRE work.

**4.3 Changes To Licensee Products.** If, after completion of the initial Combined Products, (a) Licensee changes the development environment, the target environment, or any Licensee product, or Licensee and GIPS mutually determine that the GIPS Integrated Programs require compatibility re-engineering, and (b) GIPS agrees to undertake such development engineering, then GIPS will undertake such compatibility engineering upon Licensee's request, and Licensee will pay additional fees to GIPS for compatibility re-engineering and to ensure quality control of the GIPS Integrated Programs, as agreed to by both Parties.

**5   OWNERSHIP**

GIPS and its licensors retain exclusive right, title and interests (including all Intellectual Property Rights) in and to the GIPS Software, GIPS APIs, GIPS Integrated Programs, GIPS Workbench and GIPS Network Simulator test environments, test vectors, documentation and any other GIPS technology incorporated into the Combined Product pursuant to this Agreement, together with all error corrections, derivative works, improvements and modifications thereto, whether made by GIPS, Deltathree, jointly by the parties, or otherwise. If Deltathree is ever inadvertently or erroneous held or deemed to be the owner of any such Intellectual Property Rights, Deltathree agrees to assign and hereby irrevocably assigns to GIPS all such interests as of the Effective Date, and agrees to execute all documents to implement and confirm the letter and intent of this Article 5.

Deltathree retain exclusive right, title and interests (including all Intellectual Property Rights) in and to the Deltathree Product, documentation and any other Deltathree License Product incorporated into the Combined Product pursuant to this Agreement, together with all error corrections, derivative works, improvements and modifications thereto, whether made by Deltathree, GIPS, jointly by the parties, or otherwise. If GIPS is ever inadvertently or erroneous held or deemed to be the owner of any such Intellectual Property Rights, GIPS agrees to assign and hereby irrevocably assigns to Deltathree all such interests as of the Effective Date, and agrees to execute all documents to implement and confirm the letter and intent of this Article 5.

**6   BRANDING, MARKETING, AND TRADEMARKS**

**6.1** Upon mutually agreement by both parties, Deltathree and GIPS will issue a joint press release announcing the relationship that is the subject matter of this Agreement, and Deltathree will refer to GIPS and the GIPS Integrated Programs in all products and customer announcements relating to voice over IP capabilities of the Licensee products.

**6.2** After execution of the OEM License Agreement, GIPS may announce the licensing agreement to it investors on FINFO (Norwegian Financial Bulletin Board) if required by the Norwegian securities governing body.

GIPS00000550

6.3  After execution of the OEM License Agreement, Deltathree will provide GIPS with a company logo that will be utilized within the GIPS customers / partners section of the website and within GIPS marketing materials

6.4  Licensee agrees to consider becoming a GIPS reference and support the development of a customer case study.

6.5  The parties will confer quarterly regarding potential additional marketing efforts such as incremental press releases, joint promotional efforts such as co-speaking, presenting and authoring of industry materials, trade show presentations and booth presence, and support of GIPS solutions with standards bodies such as ITU, 3GPP, and IETF.

6.6  Licensee will display GIPS branding (e.g. "Audio by Global IP Sound") in connection with the Combined Products solely in Deltathree's About Menu section of such Combined Products.

## 7     MAINTENANCE AND SUPPORT

7.1  **Support**. Deltathree will use the GIPS Basic Support Services on the terms and conditions set forth in *Appendix B*, and will pay the associated fees set forth in *Appendix C*.

7.2  **End-User Support**. Deltathree is solely responsible for providing support to End Users and Distributors. GIPS's support is provided to the Deltathree Technical Liaison identified in *Appendix B*. Additional Support Services may also be purchased as reflected in *Appendix B*.

## 8     FEES AND PAYMENT TERMS

8.1  **Expenses**. Each party is solely responsible for its own expenses unless expressly identified as a shared or allocated cost under this Agreement.

8.2  **Fees And Royalties**. In consideration for the licenses granted by GIPS, Licensee agrees to pay GIPS in U.S. Dollars (a) the Royalties and (b) the Fees (such as for implementation/certification, support services, NRE, consulting, GIPS Tools, and any other Fees) set forth in *Appendix C*.

8.3  **Payment and Taxes**. Invoices for amounts due under this Agreement shall be due and payable on the date set forth in the relevant Appendix C.  If no date is stated, payment shall be due thirty (30) calendar days from Licensee's receipt of invoice.

   (A)  In addition to any remedies GIPS may have hereunder or a law, any payments more than thirty (30) days overdue will bear a late payment fee of 1.5% per month commencing from the payment due date.  If the foregoing would not be enforceable under applicable law, then the applicable late payment fee shall be an amount equal to the maximum rate allowed by law, accruing from the payment due date.

   (B)  In addition to any other remedies, GIPS may suspend or terminate Basic Support Services for non-payment continuing for more than fifteen (15) calendar days after Licensee's receipt of a written notice from GIPS informing of the failure to pay when due.  GIPS shall have no liability for damages sustained by Licensee resulting from such termination or suspension of Support Services pursuant to this Article 8.3.

   (C)  The amounts set forth in this Agreement and all invoices hereunder are exclusive of all taxes (including without limitation, value added taxes and withholding taxes), tariffs, duties and the like.  If GIPS is required to pay any sales, use, value-added, withholding or other tax, tariff, duty, etc., (other than taxes on GIPS's net income) on the licenses or services provided pursuant to this Agreement or pertaining to Licensee's or End User's use of the GIPS Software, GIPS Integrated Program, GIPS API, or the Combined Product, then such taxes shall be billed to and paid by Licensee.

## 9     RECORDS, STATEMENTS, FORECASTS, AND AUDITS

9.1  **Reports And Forecasts**. Within 30 days after the end of each calendar quarter, Licensee will provide to GIPS a report (each, a "Royalty Report") in English detailing, for that quarter: (a) the number of Royalty Events; (b) the Royalties owing to GIPS; (c) the calculations used to determine the Royalties; (d) the number of Combined Products distributed; and (e) a good-faith estimate of the number of Combined Products to be sold or sub-licensed in the next 12 months. Upon request from GIPS, Licensee must also provide evidence of compliance with the terms and conditions of this Agreement, such as (by way of example only) End User licenses, modified documentation as provided to End Users, sample packaging, and an estimate of the number of Combined Products in use.

9.2  **Records**. Licensee shall keep complete and accurate records relating to the use and distribution of the Combined Products which are sufficient to determine the Royalty payments due to Licensor under this Agreement, and shall ensure that its agents, contractors, and affiliates also do so.  License, its agents, contractors, and affiliates shall maintain such records for the term of this Agreement and one (1) years thereafter.

9.3  **Audits**. GIPS may, during the term of this Agreement and for  a six (6) month from the date of the final Royalty Report is received by GIPS , have an independent auditor of its choosing verify Licensee's compliance with its payment and other obligations under this Agreement. Audits require at least fifteen (15) business day's prior notice. Deltathree agrees to cooperate fully with GIPS and its representatives in any audit and to remedy immediately any variance between the audit and Deltathree's

obligations under this Agreement. GIPS will pay the auditor's fee unless an audit reveals an underpayment of five percent or more for any calendar quarter, in which case Deltathree must immediately remit such underpayment plus interest to GIPS and reimburse GIPS for the cost of the audit.

**10  WARRANTIES**

**10.1 Authority.** Each party represents and warrants that it has the corporate power and authority to enter into this Agreement, and that its performance will not conflict with any other contractual or legal obligations.

**10.2 GIPS Integrated Programs.** GIPS warrants to Deltathree that during the term of this Agreement, that the GIPS Integrated Program will perform in accordance with the Specifications. However, the warranty only applies if the Licensee is agrees to and has paid for Basic Support and Service as defined in Appendix B. The foregoing warranty does not apply to nonconformance or errors caused by (a) any modifications or improvements to the GIPS Integrated Program other than by GIPS, (b) any use of the GIPS Integrated Program in a manner for which it was not designed, or (c) use of the GIPS Integrated Program with any software, hardware, or third-party equipment not furnished by GIPS. In the event of any breach of the foregoing warranty, GIPS's sole liability and Deltathree's sole remedy with respect only to this Section 10.2 is for GIPS, to use commercially reasonable efforts to bring the GIPS Integrated Program into material compliance with the Specifications.

**10.3 Non-Infringement.** GIPS will have obtained all necessary rights in the GIPS Integrated Program (with exception of the Third Party Software) to grant the licenses described in Section 3 of this Agreement. The GIPS Software does not infringe any copyright, patent, trade secret, or other intellectual property or proprietary right held by any third party .

**10.4 Disclaimer.** THIS ARTICLE 10 STATES THE ONLY WARRANTIES MADE BY GIPS, WHICH ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**11  CONFIDENTIALITY**

**11.1 Disclosures.** Each party may disclose to the other certain nonpublic or proprietary information or materials relating to the party's products, technology, or business ("Confidential Information") that are identified as confidential or that under the circumstances of the disclosure should reasonably be understood to be confidential. GIPS Software, GIPS APIs, GIPS Integrated Programs, GIPS Workbench, GIPS Network Simulator, documentation (other than documentation released to End Users), and the terms and conditions (but not the existence) of this Agreement, are deemed Confidential Information of GIPS.

**11.2 Obligations.** Except as expressly provided in this Agreement, the receiving party may not use or disclose the other party's Confidential Information without the disclosing party's prior written consent except to (a) the receiving party's employees and contractors on a need-to-know basis and (b) the receiving party's current or bona fide prospective investors, investment bankers, lenders, accountants, and attorneys, in each case only to the extent reasonably necessary and under written obligations restricting use and disclosure of the Confidential Information consistent with this Article 11. Each receiving party must use at least the same care in protecting the other's Confidential Information as the receiving party uses to protect its own confidential and proprietary information and trade secrets of a similar nature, but in no event less than reasonable care.

**11.3 Exclusions.** "Confidential Information" does not include, and nothing in this Agreement prohibits or limits either party's use of, information that: (a) was public knowledge at the time of disclosure or thereafter becomes public knowledge through no breach by the receiving party of this Agreement, other than through a wrongful or negligent act of the receiving party; (b) was previously known to the receiving party prior to the date of disclosure, as evidenced by contemporaneous written records; (c) was acquired from a third party without the breach of any obligation of confidentiality; or (d) was independently developed without use of or access to the Confidential Information. If Confidential Information is required to be disclosed pursuant to a subpoena, order, or regulation of any court, government agency, or regulatory body, the party receiving such subpoena or order must promptly inform the other party in writing and provide a copy thereof, must take reasonable steps to protect against disclosure, and may only disclose that Confidential Information necessary to comply with such subpoena, order, or regulation.

**11.4 Injunctive Relief.** Each party acknowledges that, due to the unique nature of the other party's Confidential Information, the disclosing party will not have an adequate remedy in money or damages in the event of unauthorized use or disclosure of its Confidential Information; accordingly, in addition to any other remedies that may be available, the disclosing party is entitled to injunctive relief to prevent such unauthorized use or disclosure, and without any obligation to post a bond.

**12  INFRINGEMENT AND INDEMNIFICATION**

**12.1 Infringement Remedies.** GIPS, at its sole expense, shall (a) defend any legal proceeding brought by a third party against Licensee to the extent that the proceeding includes a claim that any GIPS Integrated Programs, *with exception of an infringement claim related to the iLBC codec or Third Party Software*, furnished by GIPS to Licensee under this Agreement directly infringes the claimant's patent, copyright, trademark, or trade secret; and (b) hold Licensee harmless against damages and costs awarded by final judgment in such proceeding to the extent directly and solely attributable to such infringement. GIPS shall have no obligation or liability to Licensee under this 12.1:

(A) unless GIPS is: (1) promptly notified in writing of such claim; (2) given the sole right to control and direct the investigation, preparation, defense and settlement of such claim; and (3) given reasonable assistance and cooperation by Licensee in such settlement and defense;

(B) to the extent that any such claim arises from: (1) alteration or modification of the GIPS Integrated Programs not permitted under this Agreement if the claim of infringement would have been avoided by use of the unmodified GIPS Integrated Programs; (2) design, specifications or instructions not permitted under this Agreement furnished by Licensee; (3) the combination, operation, or use of the GIPS Integrated Programs in a manner not permitted under this Agreement with any other product, service, or technology; or (4) the acts or omissions of others;

(C) marketing, sale or distribution of the Combined Products outside the scope of this Agreement;

(D) arising from Licensee's, Sublicensee's, or Distributor's manufacture, use, sale, offer for sale, importation or other disposition or promotion of the Combined Products after GIPS' notice to Licensee that Licensee should cease any such activity; or

(E) for any costs or expenses incurred by Licensee without GIPS' prior written consent.

**12.2 Alternatives for GIPS.** If the GIPS Integrated Program is, or in GIPS' sole opinion is likely to become, the subject of such a claim of infringement, GIPS shall have the right, at Licensee's sole option, to: (a) procure for Licensee the right to continue to use the GIPS Integrated Program in accordance with this Agreement; (b) replace or modify the GIPS Integrated Program in such a way so as to make the modified GIPS Integrated Program non-infringing; or (c) terminate this Agreement upon written notice to Licensee. In the event of any such termination, GIPS shall refund to Licensee the Fees paid to GIPS with respect to the GIPS Integrated Programs which are then subject to the claimant's continuing claim of infringement less a refund charge equal to ten percent (10%) of the refundable amount.

**12.3 Licensee and GIPS Obligations.** Licensee shall indemnify, defend, and hold GIPS and its officers, directors, employees, and agents harmless from and against any liabilities, damages, judgments, losses, costs, and expenses (including reasonable attorneys' fees) arising out of Licensee's, Sublicensee's or Distributor's use, marketing or sale of the GIPS Integrated Program or the Combined Products in a manner inconsistent with the terms and conditions of this Agreement.

12.4 GIPS shall indemnify, defend, and hold Licensee and its officers, directors, employees, and agents harmless from and against any liabilities, damages, judgments, losses, costs, and expenses (including reasonable attorneys' fees) arising out of a manner inconsistent with the terms and conditions of this Agreement

**12.4 Exclusive Remedy.** THE FOREGOING STATES THE PARTIES' EXCLUSIVE OBLIGATIONS AND EXCLUSIVE REMEDIES WITH RESPECT TO CLAIMS OF INFRINGEMENT OF ANY INTELLECTUAL PROPERTY RIGHTS OF ANY KIND."

## 13   LIMITATION OF LIABILITY

13.1 EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER SECTIONS 12.1 OR 12.3, AS APPLICABLE, CLAIMS BY GIPS RELATING TO MISAPPROPRIATION OR INFRINGEMENT OF ITS INTELLECTUAL PROPERTY, NEITHER PARTY IS LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES OF ANY KIND (INCLUDING BUT NOT LIMITED TO LOST PROFITS) RELATING TO THIS AGREEMENT OR THE USE OR PERFORMANCE OF THE GIPS SOFTWARE, GIPS APIs, GIPS INTEGRATED PROGRAMS, GIPS NETWORK SIMULATOR, GIPS WORKBENCH, COMBINED PRODUCTS, DOCUMENTATION, SUPPORT MATERIALS, OR THE PROVISION OF SERVICES, REGARDLESS OF THE THEORY OF LIABILITY.

13.2 IN NO EVENT DOES GIPS'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR FOR BREACH OF THIS AGREEMENT, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR ANY OTHER LEGAL THEORY, EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT.

13.3 THE LIMITATIONS IN ARTICLES 13.1, AND 13.2 APPLY EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY, BUT DO NOT LIMIT LIABILITY FOR DEATH OR BODILY INJURY CAUSED BY EITHER PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

## 14   TERM AND TERMINATION

**14.1 Initial Term.** This Agreement commences on the Effective Date and continues for three (3) years (the "Initial Term"), unless extended or earlier terminated pursuant to this Article 14.

**14.2 Renewal.** This Agreement may be renewed for additional one-year periods upon 60 days prior written notice by Licensee to GIPS before expiration of the then-current Term, of its intention to renew the Agreement.

**14.3 Termination For Bankruptcy.** Either party may terminate this Agreement immediately upon written notice if the other party (a) institutes bankruptcy or similar proceedings; (b) has bankruptcy or similar proceedings instituted against it and such proceedings are not stayed or dismissed within 60 days; or (c) makes an assignment of assets for the benefit of its creditors. In addition, GIPS may terminate this Agreement if Licensee becomes insolvent.

**14.4 Termination For Breach.** If a party has breached this Agreement in any material respect, the other party may send written notice to the breaching party stating (a) the nature of the breach and (b) the date (at least 10 days after delivery of the notice) on which this Agreement is to terminate; *provided, however,* that the Agreement terminates only if the breach is not cured prior to expiration of the notice period.

**14.5 Effect Of Termination; Survival.** After the expiration or earlier termination of this Agreement under this Article 14 above, all licenses to Licensee and all sublicenses cease, except that (i) for a period of one (1) year from the date of termination, Licensee, Sublicensees and Distributors may continue to use the GIPS Integrated Programs and documentation solely for the purpose of providing support to End Users and (ii) Licensee, Sublicensees and Distributors shall have the right to sell off existing inventories of Combined Products for a period of six (6) months from the date of termination. Notwithstanding the foregoing, if this Agreement is terminated pursuant to Article 14.3 above due to Licensee's breach, the exceptions described in subparts (i) and (ii) above shall not apply. The following provisions, together with any payment obligations and provisions that by their nature should survive, any expiration or termination of this Agreement: Articles 1, 5, 7.1(according to its terms), 9.2, 9.3, 10, 11, 12, 13, 14, 15, and 16. Upon expiration or earlier termination of this Agreement, Licensee and Sublicensees shall each return or destroy all copies of the GIPS Integrated Programs or Combined Products (including copies resident in the Licensee's or Sublicensees computer system) and certify in writing to GIPS such return or destructions within ten (10) days of termination.

**14.6 Rights On Termination.** Neither party incurs any liability or compensation obligation for any damage (including without limitation damage to or loss of goodwill or investment), loss, or expense of any kind suffered or incurred by the other party due solely to the termination of this Agreement pursuant to the terms of this Article 14 (Term And Termination), whether or not such party is aware of any such loss or expenses; but termination is not the sole remedy and, except as otherwise provided herein, all other remedies remain available to each party, subject to the express limitations set forth in Article 13 (Limitation of Liability).

## 15 NOTICES

15.1 Any notice required or permitted to be given by either party under this Agreement must be in writing and delivered to the following addresses. Notices are deemed given when delivered.

| If to GIPS: | If to Deltathree: |
|---|---|
| Global IP Sound<br>Attn: Gary P. Hermansen, CEO<br>900 Kearny Street, Floor 5<br>San Francisco, CA 94133-5124<br><br>With a copy to GIPS Legal Department<br>via Facsimile to +1 415.397.2577 | Deltathree, Inc.<br>Attn: Guy Gussarsky<br>75 Broad Street<br>31st Floor<br>New York, New York 10004 |

## 16 MISCELLANEOUS

**16.1 Force Majeure.** A delay or failure by either party to perform its obligations (other than payment obligations) under this Agreement is excused to the extent caused by unforeseeable circumstances beyond the party's control such as a strike, act of deity, riot, war, fire, explosion, natural disaster, or embargo, provided that such affected party is using commercially reasonable efforts throughout the period of the delay to mitigate the effects of the event causing the delay. The party requesting relief must notify the other party in writing without delay at the commencement and conclusion of such circumstances.

**16.2** Export. Deltathree agrees that it will not directly or indirectly export the GIPS Integrated Programs to any country to the extent such country requires an export license or other governmental approval, without first obtaining such license or approval.

**16.3** Deltathree.

**16.4 Governing Law.** This Agreement is governed by the laws of New York. Any action relating to this Agreement must be venued in New York, New York, and the parties consent to jurisdiction and venue in the state and federal courts, as applicable, in that county. Choice of law rules do not apply, regardless of jurisdiction.

**16.5 Severability.** If any provision of this Agreement conflicts with applicable law or regulation, or is found invalid or unenforceable, it will be enforced to the maximum extent and the parties will endeavor to amend such provision so that the intent of this Agreement may be carried out to the extent legally possible; the other parts of this Agreement remain in force.

GIPS00000554

**16.6 Assignment.** Neither party may assign any rights or delegate any duties under this Agreement without the other party's prior written consent, which consent may not be withheld unreasonably. This Agreement binds and inures to the benefit of the parties and their respective successors and permitted assigns. Any purported assignment in violation of this Article 16.6 is invalid.

**16.7 No Waiver.** No waiver may be implied from conduct or failure to enforce rights. No waiver is effective unless signed in writing on behalf of the party claimed to have waived.

**16.8 Relationship Of Parties.** The parties are independent contractors; there is no relationship of principal to agent, employer to employee, or franchisor to franchisee between the parties. Neither party has authority to bind the other or incur any obligation on its behalf. The parties have negotiated this Agreement with the advice of counsel and approval of their authorized representatives, and this Agreement accordingly may not be construed against either party on the basis that any provision was drafted by a particular party.

**16.9 Entire Agreement.** This Agreement, together with its Appendices, is the entire Agreement between the parties regarding its subject matter and supersedes all statements, representations, undertakings, and agreements previously made between the parties with respect to its subject matter as well as the conflicting provisions of any purchase orders, invoices, or other instruments unless otherwise expressly agreed by the parties in writing. This Agreement may be modified only by a written document duly signed by officers of both parties and referencing this Agreement.

SIGNED BELOW by the authorized representatives of the parties to confirm this Agreement.

| Global IP Sound Inc. (Licensor) | Deltathree, Inc. (Licensee) |
|---|---|
| Signed: | Signed: |
| Name:    Gary P. Hermansen | Name: |
| Title:    President and CEO | Title: |
| Date: | Date: |

GIPS00000555

# APPENDIX A
## to
## OEM License Agreement

### Development And Distribution Of The Combined Products

**A.1 DEFINED TERMS**

1.1 The following further defines certain terms defined in the Agreement.

(A) The GIPS Software is listed below, and will be modified to produce the GIPS Integrated Programs. The Specifications for each GIPS Integrated Program will be delivered to Licensee in writing and are deemed an attachment to this *Appendix A*.

GIPS Software

 GIPS Voice Engine PC Advanced (including RTP handling and sound card handling) including the following components:
  GIPS NetEQ-wb (including NetEQ)
  GIPS Enhanced G.711 (nb)
  G.711
  GIPS iPCM-wb (including GIPS Enhanced G.711)
  GIPS iSAC
  GIPS AEC PC (Acoustic Echo Canceller for PC, nb/wb)
  GIPS AES (Acoustic Echo Suppression, nb/wb)
  GIPS VAD/DTX/CNG (Voice Activity Detection, nb/wb)
  GIPS AGC (Automatic Gain Control)
  GIPS Multi-party conferencing (up to 3 to 5 participants)
  GIPS Video Synchronization
  GIPS NS (Noise Suppression)
  GIPS AEC Tuning Wizard

GIPS Royalty Free Software
 GIPS iLBC

Third-Party Software *
 SRTP   http://srtp.sourceforge.net/srtp.html
 G.729
 G.723

* Any Third-Party fees or royalties will be the responsibility of the Licensee. Licensor will not be responsible for any royalty payments associated with the Third-Party Software.

(B) The "Combined Products" are composed of the following combinations of Deltathree products and GIPS Integrated Programs; Combined Products are intended to include all listed GIPS Integrated Programs, but may include fewer depending on development issues. Only those GIPS Integrated Programs marked with an asterisk* are required before the Combined Product is released; omission of other GIPS Integrated Programs results only in an adjustment to royalties.

| COMBINED PRODUCT NO. 1. | |
|---|---|
| Combined Product: | Deltathree's current and future Dialer(s) and software (under Deltathree's brand, Deltathree partners' brands, or Deltathree's third party brands) with GIPS Integrated Programs; |
| Licensee Product: | Deltathree's current and future Dialer(s) and software (under Deltathree's brand, Deltathree partners' brands, or Deltathree's third party brands) |
| Development Environments: | n/a |
| Target Environments - OS: | Windows 98/2000/NT/XP/ME/2003/Longhorn(Vista) |
| Target Environments - HW: | n/a |
| GIPS Software: | GIPS Voice Engine PC Advanced (including RTP handling and sound card handling) including the following components:<br> GIPS NetEQ-wb (including NetEQ)<br> GIPS Enhanced G.711 (nb)<br> G.711 |

GIPS00000556

| | COMBINED PRODUCT NO. 1. |
|---|---|
| | GIPS iPCM-wb (including GIPS Enhanced G.711)<br>GIPS iSAC<br>GIPS AEC PC (Acoustic Echo Canceller for PC, nb/wb)<br>GIPS AES (Acoustic Echo Suppression, nb/wb)<br>GIPS VAD/DTX/CNG (Voice Activity Detection, nb/wb)<br>GIPS AGC (Automatic Gain Control)<br>GIPS Multi-party conferencing (up to 3 to 5 participants)<br>GIPS Video Synchronization<br>GIPS NS (Noise Suppression)<br>GIPS AEC Tuning Wizard<br>GIPS iLBC<br><br>Third-Party Software *<br>   SRTP  http://srtp.sourceforge.net/srtp.html<br>   G.729<br>   G.723 |
| Expected FCS Date: | As soon as possible |

1.2  Additional GIPS Software, Licensee products, target environments, and Combined Products may be added, subject to GIPS's written approval and subject to all terms and conditions of the Agreement. Additional integration engineering, Compliance Tests, and associated fees may be required.

A.2  NON-RECURRING ENGINEERING: DEVELOPMENT OF GIPS INTEGRATED PROGRAMS AND COMBINED PRODUCTS

2.1  **GIPS Obligations.** GIPS will, with Licensee's support and assistance, configure the GIPS Software to operate on the target environment for each Licensee product. GIPS will provide Licensee reasonable expertise and support during integration. GIPS will use reasonable efforts to respond initially to the Deltathree Technical Liaison within one (1) business day after the initial request for assistance.

2.2  **Licensee Obligations.** Licensee will modify the Licensee products, in consultation with GIPS, in order to produce the Combined Products. Licensee will provide reasonable support and assistance to GIPS to produce the GIPS Integrated Programs. Licensee is responsible for providing in a timely manner all necessary facilities, capital, equipment, tools, software, training personnel, development environments, target environments, and any other resources not specifically made the responsibility of GIPS. In addition, Licensee will:

    (A)  Together with GIPS, define APIs between the GIPS Software and the target environment.

    (B)  Define the architecture and development parameters for the target environment.

    (C)  Provide GIPS with the appropriate development environment and target environment (including necessary source code, library code, and compiler environment) reasonably necessary or desirable for the integration and implementation efforts.

    (D)  Provide GIPS with reasonable, responsive expertise and support during integration, and respond to GIPS within three working days after the initial request for assistance.

    (E)  Use its best efforts to release first commercial shipment ("FCS") software containing the GIPS Integrated Programs in the next commercial release of the relevant Licensee products following delivery of the GIPS Integrated Programs.

2.3  **Completion.** The final version of each GIPS Integrated Program will be delivered by GIPS to Licensee in library (object) file format, with corresponding API definition files and GIPS documentation. Licensee has final responsibility for completing the integration and optimization work necessary to produce the Combined Products.

A.3  BUSINESS AND TECHNICAL CONTACTS FOR INTEGRATION WORK

The parties will use reasonable efforts to channel all communications regarding integration work and business issues through the following designated contacts, and each Party will notify the other Party promptly if the designated contact changes:

    Licensor:

        Business Contact: Jeff Zeichick / (603) 883-1783 / jeff.zeichick@globalipsound.com

        Technical Contact: Patrik Sorqvist / +46 8 5455 3041 / patrik.sorqvist@globalipsound.com

<u>Licensee:</u>
Business Contact: [Need name and title]/ [Need telephone] tel/ [Need email]
Technical Contact: [Need name and title]/ [Need telephone] tel/ [Need email]

APPENDIX B
to
OEM License Agreement

<u>Maintenance And Support</u>

In consideration of Licensee's payment of the Basic Support Services Fees, GIPS undertakes to provide the Licensee with the following Services regarding the GIPS Integrated Programs.

### B.1 DEFINITIONS

For purposes of this Appendix, the capitalized terms set forth below have the following meanings:

"**Error**" means a deviation between a GIPS Integrated Program or documentation and its Specifications that can be replicated by GIPS on the applicable development environment or target environment.

"**Critical Error**" means an Error in a GIPS Integrated Program that (a) causes Combined Products to be nonfunctional system-wide or (b) directly disrupts the system to which the Combined Products are connected to the extent that the system cannot be used without performing substantial and undesirable changes to the system.

"**Serious Error**" means an Error in a GIPS Integrated Program that severely affects the functionality of GIPS Integrated Programs or Combined Products generally, but the GIPS Integrated Programs or Combined Products can still be used.

"**Minor Error**" means an Error in a GIPS Integrated Program that has no significant effect on the functionality or usability of a GIPS Integrated Program or the Combined Product.

"**Error Correction**" brings a GIPS Integrated Program or its documentation into conformance with its Specifications. An Error Correction may take the form of corrective software (temporary patch or Maintenance Update), documentation, or a workaround.

"**New Release**" is designated "X" in the naming convention ProductName X.Y.Z. A New Release changes features and/or functionality but is not necessarily backwards compatible with previous releases.

"**Functionality Upgrade**" is designated "Y" in the naming convention ProductName X.Y.Z. A Functionality Upgrade changes features and/or functionality and is always compatible with the then current X release.

"**Maintenance Update**" is designated "Z" in the naming convention ProductName X.Y.Z. A Maintenance Update (e.g. bug fixes) is not intended to alter functionality or add hardware platforms and is always compatible with the then current X release.

"**Product Discrepancy Report**" or "PDR" means the document to be used by Licensee to report Errors in any GIPS Integrated Program. A current copy is attached to this *Appendix B, Article 7.2*. Any format that includes the same information is acceptable.

"**Reference Environment**" means the development environment and target environment, and the non-compatibility engineered GIPS Software and the compatibility engineered GIPS Integrated Programs designated by GIPS.

### B.2 TERM

**2.1 <u>Term</u>.** This Appendix is effective commencing with the Agreement and terminates either (i) on the termination of the Agreement or (ii) upon Licensee giving written notice (90) days prior to the anniversary date of the Agreement. Deltathree agrees to pay the Basic Support Service fees set forth in *Appendix C*.

### B.3 BASIC SUPPORT SERVICES

**3.1 <u>Services</u>.** In consideration for payment of the Basic Support Services Fees, commencing on the Effective Date of this Agreement, GIPS will provide to Licensee the GIPS Basic Support Services as follows:

(A) <u>Covered Releases</u>. Basic Support Services are provided for the GIPS Integrated Programs running on the Reference Environment only, and are limited to the then-current release of the GIPS Software, X.Y.Z, and two previous Y-level releases. If a new version of GIPS Software is released, GIPS will support the previous Y-level releases at least for one year.

(B) <u>Error Corrections</u>. GIPS will correct Errors in the GIPS Integrated Programs if (i) Licensee provide sufficient information for GIPS to reproduce the Error on the target environment; and (iii) GIPS is able to reproduce the Error. GIPS will then use reasonable effort to furnish solutions within the following time frames

(1) For Critical Errors, GIPS will acknowledge receipt of the report within four (4) hours, and will use reasonable efforts to create a temporary solution within two (2) workdays and a final solution in the next Maintenance Update.

(2) For Serious Errors, GIPS will acknowledge receipt of the report within one (1) business day, and will use reasonable efforts to create a temporary solution within five (5) workdays and a final solution in the next Maintenance Update.

(3) For Minor Errors, GIPS will create a final solution within a reasonable time.

GIPS will assign a tracking number to each Error report. Errors may be reclassed by mutual agreement or by GIPS in its reasonable discretion with notification to the Licensee technical liaison. GIPS reserves the right to determine the timing for the release of the next Maintenance Update; that a reported Error is not due to the GIPS Integrated Programs or otherwise under GIPS's control; or that an Error cannot or should not be corrected for technical or resource reasons such as unreasonable cost in terms of time, resources, or money as compared to the relative seriousness of the Error.

Suspected Errors that involve software or hardware other than the target environment, or are otherwise not included in the scope of the Agreement or this *Appendix B*, are the responsibility of Deltathree. If a suspected Error cannot be replicated on the Target Environment at GIPS's offices, GIPS will so advise Deltathree so that Deltathree can attempt to replicate the Error, determine the source, and resubmit a Product Discrepancy Report if appropriate. GIPS's acknowledgment that an Error report has been received does not constitute confirmation that an Error exists; GIPS will advise the Licensee Technical Liaison when an Error is reproduced.

Licensee is solely responsible for the deployment of Error Corrections on the target environment and Combined Products, and for interface with End Users regarding Error Corrections.

(C) Maintenance Updates. GIPS will provide to Licensee any Maintenance Updates to the GIPS Integrated Programs. When feasible, GIPS will notify Licensee in advance regarding Maintenance Updates and provide a change description.

(D) Upgrades. GIPS will provide, when and if available, Functional Upgrades and New Releases to the GIPS Integrated Programs that provide changed or enhanced functionality.

(E) Mandatory Updates. GIPS reserves the right to deliver a modified version of any GIPS Integrated Program and to require that Licensee take reasonable steps to use the modified version in its next release.

(F) Reports. Upon Licensee's reasonable request, GIPS will provide a report regarding maintenance status and upcoming changes.

(G) Travel Expenses. If, GIPS support personnel are required to travel more than 100 km from the GIPS offices in Stockholm or San Francisco, whether at the request of Licensee or due to the nature of the issue, upon Licensee approval, Licensee will, in addition to the Basic Support Services Fees, pay the support engineer's reasonable travel and associated living expenses.

3.2 **Other Technical Issues.** For technical questions, advice, and assistance not relating directly to Errors in the GIPS Integrated Programs, Licensee will receive up to 5 consultant hours per month, and may request Additional Support Services at the then-current GIPS standard rate as set forth below.

### B.4 ADDITIONAL SUPPORT SERVICES & UPGRADES

4.1 **Services.** For additional fees and subject to availability of GIPS engineering resources, Licensee may request additional support services for matters not covered under the Basic Support Services, such as the following: 7x24 Support, Consulting, Training, Compatibility Engineering or any other support other than Basic Support Services.

4.2 **Fees.** Additional support services are charged to Licensee at the then-current standard rate for such request; see *Appendix C*.

### B.5 RESPONSIBILITIES OF LICENSEE

5.1 Licensee will:

(A) Liaise with Licensee's customers; maintain all software and hardware, except to the extent GIPS is expressly obligated to provide support under this *Appendix B*;

(B) Verify and report any Errors identified by Licensee or its customers, Distributors, or End Users to the GIPS Support Center, with supporting documentation;

(C) Assist GIPS in resolving technical problems; correct any errors or problems reported by GIPS on a timely basis;

(D) Maintain and insure the Reference Environment and keep it operational;

(E) Make two sets of the development environment and target environment available to GIPS, upon GIPS's request, at support services locations specified by GIPS; and

(F) Pay any charges for packing, insurance, and shipping the Reference Environment to and from the support services location, and pay any personal property inventory or other taxes claimed or imposed with respect to the Reference Environment while at the support services location.

**B.6 PERFORMANCE BY GIPS**

**6.1 Compatibility.** GIPS is not responsible for support for software or hardware other than the GIPS Integrated Programs, nor for compatibility between the GIPS Integrated Programs and any program or platform other than a GIPS-certified target environment.

**6.2 Location Of Services.** Support services are provided by GIPS to Licensee via the GIPS Support Center located at GIPS's affiliated offices in California or Sweden (at GIPS's option), and when necessary at other locations at Licensee's expense.

**6.3 Efforts.** The services described in this *Appendix B* will be provided by GIPS on a reasonable commercial efforts basis. Support is provided by GIPS to Licensee only, and not to Licensee's customers.

**6.4 Subcontractors.** GIPS may fulfill its obligations under this Agreement through third party subcontractors, but GIPS remains responsible to the Licensee for the subcontracted services.

**B.7 TECHNICAL LIAISONS; SUPPORT CENTER**

**7.1 Appointment And Responsibilities.** The GIPS Support Center contact information is specified below. Licensee will specify a Technical Liaison to coordinate the delivery of all Basic Support Services. The Licensee Technical Liaison is responsible for preparation, delivery, and receipt of all Product Discrepancy Reports. Product Discrepancy Reports may be submitted only by the Deltathree Technical Liaison to the GIPS Support Center. As of the Effective Date, each Party designates the following as Technical Liaison, and will notify the other Party promptly in writing of any changes.

GIPS Support Center: +46 8 545 530 59 (Sweden) or +1 415 438 2611 (US); support@globalipsound.com

Deltathree Technical Liaison: [Name]; [Telephone]; [Email]

**7.2 Product Discrepancy Report.** The GIPS Product Discrepancy Report can be downloaded from the GIPS website at http://www.globalipsound.com/support.

GIPS00000561

APPENDIX C
to
OEM License Agreement

Fees And Royalties

All prices are in US Dollars.

### C.1 TERMS, FEES AND PAYMENTS

**1.1 GIPS Platform Fees.** For GIPS's platform licensed, Licensee will pay the following fees:

A total of US$60,000 for Combined Product No.1, payable as follows: 30% upon the Effective Date of this Agreement; 40% upon GIPS providing the GIPS Software and all related documentation; 30%, 30 days after Deltathree receives the GIPS software and all related documentation.

**1.2 Basic Support Services.** Deltathree shall pay fees to GIPS for Basic Support Services and Upgrades commencing on the Effective Date of the Agreement. For Basic Support Services and Upgrades provided, fees are US$12,000 per year per Combined Product. Payments will be invoiced for and paid on a quarterly basis beginning 30 days from the Effective Date of the Agreement.

**1.3 Additional Services, Consulting Fees.** Deltathree pays GIPS's then-current rates (currently US$1,000 per engineer day, maximum eight hours), plus associated travel, lodging, and meals expenses, for any of the following: NRE, Optimization, Additional Support Services and Consulting.

**1.4 Fees Defined.** For purposes of this Agreement, the term 'Fees' shall mean each of the fees payable by Licensee pursuant to this Appendix C, Article C.1.

### C.2 ROYALTIES

**Royalties.** Licensee must, within 30 days after the end of each quarter, remit Royalty payments to GIPS for each Royalty Event during the quarter, accompanied by the Royalty Report described in Article 9 of the Agreement. Licensee is solely responsible for invoicing the Distributor, End-User and if applicable, the OEM Party, and for collections. For each Royalty Event, Licensee shall pay Royalties to GIPS in accordance with the following chart; all figures are in U.S. Dollars.

(A) Licensee will pay GIPS US$15,000 in advance royalties payable upon the delivery of the GIPS Software and all related documentation (as prepayment for the first 15,000 Incremental Active Users).

(B) Licensee will pay to GIPS a one-time lifetime royalty of US$1.00 per Incremental Active User (**"Incremental Active Users"** are defined as the total users in the said month that have made an outbound call compared to the prior month) of Combined Product No.1, with the first 15,000 "Incremental Active Users" paid in advance as described above.

GIPS00000562

Appendix D
to
OEM License Agreement

<u>Trademark License</u>

**D.1 GIPS TRADEMARKS**

1.1 The "GIPS Trademarks" are the following, together with all associated design marks, logos, tag lines, and audio tone strings:

    (A) The "Global IP Sound" or "GIPS" master brand;

The "GIPS Corporate Logo" consisting of an ear-shaped "G" graphic next to "Global IP Sound" shown below and can be downloaded at www. www.globalipsound.com/images/GIPS_logo.gif and http://www.globalipsound.com/legal/design_marks.php

**ⓒ GLOBAL IP SOUND**

    (B) "SoundWare", which refers to the suite of GIPS products; and

    (C) The names of GIPS Integrated Programs licensed to Licensee, such as GIPS VoiceEngine, NetEQ, iPCM, and iLBC (also referred to as the "GIPS Product Marks").

The list of GIPS Trademarks and associated designs may be revised from time to time by GIPS.

1.2 The "IPR Claims Language" is the following:

    Portions Copyright © 1999-2005 Global IP Sound Inc. and Global IP Sound Europe. All rights reserved.

    Global IP Sound, GIPS, SoundWare, VoiceEngine, ConferenceEngine, Voicemail Engine, NetEQ, iLBC, iSAC, iPCM-wb, GIPS Enhanced G.711, and associated design marks and logos are trademarks of Global IP Sound, and may be registered in certain jurisdictions.

    www.globalipsound.com

**D.2 GIPS TRADEMARK & LOGO USAGE**

2.1 **Usage Requirements.** Deltathree will display the GIPS Trademarks solely in Deltathree's product specification section of the Combined Products as follows:

    "Portions Copyright © 1999-2005 Global IP Sound AB. All rights reserved. Global IP Sound, GIPS, SoundWare, NetEQ, iPCM, iLBC, GIPS VoiceEngine, and associated design marks and logos are trademarks or used under license by Global IP Sound AB, and may be registered in the United States and other countries patents and Patents Pending, Global IP Sound AB − www.globalipsound.com"

2.2 **Usage Guidelines.** Deltathree's usage of GIPS Trademarks is governed by the GIPS Trademark Guidelines (which are incorporated by reference into this Appendix) as updated from time to time, and by this *Appendix D*, which supplements the GIPS Trademark Guidelines.

2.3 **Approval Of Documentation.** Documentation for Combined Products, including End User documentation, must include appropriate excerpts from the GIPS documentation, and must include IPR Claims Language defined by this *Appendix D.*

**D.3 TRADEMARK TERMS**

3.1 **License Grant.** GIPS grants to Deltathree a worldwide, non-exclusive, non-transferable, personal, royalty-free license during the term of the Agreement to:

    (A) Use the applicable GIPS Trademarks in connection with the Combined Products and its associated packaging, documentation, product-specific web pages, marketing materials, collateral, tradeshow displays, and Deltathree's website, and to advertise that Deltathree is a current GIPS licensee; and

    (B) Sublicense the rights stated in this Article 3.1 to its Distributors, if any, notwithstanding any contrary limitation set forth in the GIPS Trademark Guidelines. Deltathree is solely responsible for its sublicensees' compliance.

Deltathree is granted no other interest in or license to the GIPS Trademarks.

GIPS00000563

**3.2 Quality Standards.** This Trademark License is valid only for Combined Products that have successfully passed applicable Compliance Tests. GIPS or its authorized representative may inspect and test any Combined Product to ensure that such product meets GIPS's quality requirements, and may revoke the foregoing trademark license with respect to Combined Products that do not meet the quality standards.

**3.3 Further Assurances by Deltathree.** Each Party agrees not to (i) do anything that might harm the reputation or goodwill of the other Party's Trademark; (ii) take any action inconsistent with the other Party's ownership of their Trademark; or (iii) challenge the other Party's rights in or attempt to register any of the other party's Trademarks or any mark or logo substantially similar thereto.

### D.4 TERM AND TERMINATION

**4.1 Termination.** If either Party breaches the terms of this Trademark License or the Agreement, the other Party may terminate this Trademark License (i) by providing at least 28 days written notice to the breaching Party and an opportunity to cure within such period, or (ii) immediately upon notice if such breach by its nature cannot be remedied.

**4.2 Effect Of Termination.** Upon termination of this License, the breaching Party must promptly cease use, display, and distribution of all the other Party's Trademarks. The non-breaching Party may in its sole discretion reinstate this Trademark License upon the non-breaching Party's acceptance of conformance of the breaching Party's products. The non-breaching party may revoke or terminate this Trademark License without causing any revocation or termination of the Agreement.

### D.5 LIMITATION OF LIABILITY

IN NO EVENT IS EITHER PARTY LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS LICENSE (INCLUDING LOSS OF PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), NO MATTER WHAT THEORY OF LIABILITY, EVEN IF EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OR PROBABILITY OF SUCH DAMAGES. FURTHER, LIABILITY FOR SUCH DAMAGE IS EXCLUDED, EVEN IF THE EXCLUSIVE REMEDIES PROVIDED FOR IN THIS LICENSE FAIL OF THEIR ESSENTIAL PURPOSE. THE PROVISIONS OF THIS ARTICLE D.5 ALLOCATE THE RISKS UNDER THIS LICENSE BETWEEN GIPS AND DELTATHREE, AND THE PARTIES HAVE RELIED UPON THE LIMITATIONS SET FORTH HEREIN IN DETERMINING WHETHER TO ENTER INTO THIS LICENSE.

GIPS00000564