UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

GLOBAL IP SOLUTIONS, INC.,                      :
                                                :
                          Plaintiff,            :        07 CV 7631 (DCP)
                                                :
            vs.                                 :
                                                :
DELTATHREE, INC.,                               :
                                                :
                          Defendant.            :

------------------------------------------------------------x

## DELTATHREE'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Dominic J. Picca (DP 2376)
Seth R. Goldman (SG 2452)
666 Third Avenue
New York, New York 10017
Attorneys for Defendant
Tel: 212-692-6845
Fax: 212-983-3115

*Attorneys for Defendant deltathree, Inc.*

February 5, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

UNDISPUTED FACTS ....................................................................................................2

The Parties .......................................................................................................................2

The Agreement..................................................................................................................2

Deltathree's Payments Under the Agreement..................................................................5

The Dispute and the Litigation .......................................................................................6

ARGUMENT...................................................................................................................7

I.      PARTIAL SUMMARY JUDGMENT IS MANDATED WHERE, AS
        HERE, THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH
        RESPECT TO HE ISSUE OF DAMAGES. ........................................................7

II.     GIPS'S POTENTIAL RECOVERY IN THIS CASE IS LIMITED TO
        $111,350...............................................................................................................9

        A.      The Agreement Unambiguously Limits Deltathree's Potential Liability
                to the Amount it Paid GIPS Under the Agreement....................................9

        B.      The Public-Policy Exceptions to the Rule of Enforcing Limitations of
                Liability Do Not Apply in this Case. ......................................................13

                1.      Controlling New York Court of Appeals authority dictates the
                        enforceability of the liability limit. ..............................................13

                2.      *MetLife*'s progeny strengthens the conclusion that
                        the limitation of liability is enforceable. .....................................17

        C.      The Limitation of Liability Is Equally Enforceable under the U.C.C. ..................19

III.    THE COURT SHOULD DIRECT THAT IF DELTATHREE TENDERS
        THE MAXIMUM AMOUNT OF DAMAGES, WITHOUT ADMITTING
        ANY LIABILITY, THE COURT WILL ENTER FINAL JUDGMENT........................21

IV.     GIPS'S CLAIM FOR BREACH OF THE IMPLIED COVENANT
        OF GOOD FAITH AND FAIR DEALING MUST BE DISMISSED
        BECAUSE IT IS REDUNDANT. ....................................................................23

CONCLUSION.............................................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,*
    485 F.3d 85 (2d Cir. 2007)..........................................................................22

*American Home Assur. Co. v. Hapag Lloyd Container,*
    446 F.3d 313 (2d Cir. 2006)..........................................................................9

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..........................................................................8

*Arbitron, Inc. v. Traylyn Broadcasting, Inc.,*
    400 F.3d 130 (2d Cir. 2005)..........................................................................19

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,*
    902 F.2d 174 (2d Cir. 1990)..........................................................................8, 17

*DynCorp v. GTE Corp.,*
    215 F. Supp. 2d at 318 ..........................................................................18

*Eppendorf-Netheler-Hinz GmbH v. Enteron Co.,*
    89 F. Supp.2d 483 (S.D.N.Y. 2000)..........................................................................8

*Guilbert v. Gardner,*
    480 F.3d 140 (2d Cir. 2007)..........................................................................8

*Harris Trust & Savs. Bank v. John Hancock Mut. Life Ins. Co.,*
    970 F.2d 1138 (2d Cir. 1992)..........................................................................8

*Harris v. Provident Life and Accident Insur. Co.,*
    310 F.3d 73 (2d Cir. 2002)..........................................................................23

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt.,*
    192 F.3d 337 (2d Cir. 1999)..........................................................................7

*Lava Trading, Inc. v. Hartford Fire Ins. Co.,*
    365 F. Supp. 2d 434 (S.D.N.Y. 2005)..........................................................................9

*Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)..........................................................................8

*McNally Wellman Co. v. New York State Elec. & Gas Corp.,*
    63 F.3d 1188 (2d Cir. 1995)..........................................................................20, 21

ii

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*,
    434 F. Supp. 2d 257 (S.D.N.Y. 2006)................................................................9

*Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003).............................................................18

*Omni Quartz, Ltd. v. CVS Corp.*,
    287 F.3d 61 (2d Cir. 2002)...............................................................................8

*PC Com, Inc. v. Proteon, Inc.*,
    946 F. Supp. 1125 (S.D.N.Y. 1996).................................................................21

*Specht v. Netscape Comm. Corp.*,
    306 F.3d 17 (2d Cir. 2002).............................................................................19

*U.S. Gold Corp. v. Federal Exp. Corp.*,
    719 F. Supp. 1217 (S.D.N.Y. 1989)..................................................................9

*Yafa Jewelry, Inc. v. All Those Underwriters*,
    42 F. Supp.2d 307 (S.D.N.Y. 1999)..................................................................8

## STATE CASES

*AT&T Corp. v. Microsoft Corp.*,
    2004 WL 188078 (S.D.N.Y. Feb. 2, 2004)........................................................7

*Banc of Amer. Secs. LLC v. Solow Building Co. II*
    847 N.Y.S.2d 49 (1st Dept. Dec. 4, 2007).......................................................19

*Deutsche Lufthansa AG, v. The Boeing Co.*,
    2007 WL 403301 ..........................................................................17, 18, 19

*General Elec. Co. v. Varig-S.A.*,
    2004 WL 253320 (S.D.N.Y. Feb. 10, 2004)....................................................21

*Gillman v. Chase Manhattan Bank*,
    73 N.Y.2d 1, 537 N.Y.S.2d 787 (1988) ..........................................................20

*Kalisch-Jarcho, Inc. v. City of New York*,
    58 N.Y.2d 377, 461 N.Y.S.2d 746 (1983)  (emphasis added) .................14, 16, 18

*Levi v. Utica First Ins. Co.*,
    12 A.D.3d 256, 786 N.Y.S.2d 3 (1st Dept. 2004)..............................................23

*McMahon & Co. v. Bass*,
    250 A.D.2d 460, 673 N.Y.S.2d 19 (1st Dept. 1998)...........................................23

4248984v.1

*Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.*,
 84 N.Y.2d 430, 618 N.Y.S.2d 882 (1994) .................................................................. passim

*Noble Thread Corp. v. Vormittag Assocs.*,
 305 A.D.2d 386-87, 758 N.Y.S.2d 509 (2d Dept. 2003).................................................20, 21

*Proto Const. & Dev. Corp. v. Superior Precast, Inc.*,
 2002 WL 1159593 (E.D.N.Y. May 28, 2002) .........................................................................21

*Sommer v. Fed. Signal Corp.*,
 79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992) ..............................................................................15

*South Rd. Assocs., LLC v. Int'l Bus. Mach. Corp.*,
 4 N.Y.3d 272, 793 N.Y.S.2d 835 (2005) ..........................................................................10, 11

*Tulger Contracting Corp. v. Star Building Sys.*,
 2002 WL 986994 (S.D.N.Y. May 14, 2002) ..........................................................................21

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
 1 N.Y.3d 470, 775 N.Y.S.2d 765 (2004) ...............................................................................10

*World-Link, Inc. v. Citizens Telecom. Co.*,
 2000 WL 1877065 (S.D.N.Y. December 26, 2000) ..................................................................9

*W.W.W. Assocs., Inc. v. Giancontieri*,
 77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ..............................................................................10

*Matter of Wallace v. 600 Partners Co.*,
 86 N.Y.2d 543, 634 N.Y.S.2d 669 (1995) ..............................................................................10

## FEDERAL STATUTES

Fed. R. Civ. P. 26(a)(1) .................................................................................................................7

Fed. R. Civ. P. 56(c) .....................................................................................................................8

## STATE STATUTES

N.Y.U.C.C. § 2-719(1)................................................................................................................20

## PRELIMINARY STATEMENT

Defendant deltathree, Inc., ("Deltathree") respectfully submits this memorandum of law in support of its partial motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

This is a case that should not be litigated because the costs of litigation far exceed the real amount in controversy. The case concerns alleged breaches of an agreement by which Plaintiff Global IP Solutions, Inc. ("GIPS") licensed software to Deltathree. The agreement contains crystal-clear provisions limiting the aggregate liability of either party to the total amount Deltathree paid to GIPS under the agreement. Deltathree simply seeks this Court's ruling that the provision is enforceable and that Deltathree's liability in this case therefore is limited to the undisputed amount it paid GIPS under the agreement: $111,350.

Most likely, each of the parties already has spent more than that amount in legal fees for this case. As formal discovery gets underway, fees will begin to multiply. Although Deltathree vigorously contests liability, it recognizes that it would be impossible to defend itself adequately through discovery and full summary-judgment briefing for less than the amount at stake. Therefore, as a matter of practical sense, Deltathree is willing to tender to GIPS the full $111,350 without admitting liability, since the Second Circuit recently has confirmed that tendering the maximum amount of damages is grounds for final judgment ending a case. This Court should rule that GIPS will be held to its bargain limiting liability and that if Deltathree tenders the full amount, it will end this litigation.

Finally, irrespective of the Court's rulings regarding the limitation of liability, GIPS's claim for breach of the implied covenant of good faith and fair dealing is duplicative and must be dismissed.

## UNDISPUTED FACTS

**The Parties**

Deltathree is a Delaware corporation, headquartered in New York, which provides integrated Voice Over Internet Protocol ("VoIP") telephony services, products, hosted solutions and infrastructure. One of the products Deltathree offers is the ability to make phone calls from a customer's personal computer to a telephone, known as PC-to-Phone connectivity. This product is called a "Softphone." *See* 56.1 Statement ¶¶ 1-2.[1]

GIPS, formerly Global IP Sound, is a Delaware corporation with offices in San Francisco, California. GIPS is known for its Digital Signal Processing and IP telephony expertise. GIPS has developed and/or acquired rights to certain software used to improve the sound quality for devices utilized to make VoIP calls. *See* Complaint of Global IP Solutions, Inc., dated August 28, 2007 ("Complaint") ¶ 2.

**The Agreement**

Deltathree and GIPS entered into an OEM Licensing Agreement (the "Agreement"), effective August 19, 2005, pursuant to which Deltathree licensed from GIPS the right to use GIPS's software in Deltathree's Softphone — in return for which Deltathree agreed to pay GIPS royalties. Deltathree also agreed to use GIPS's support services for the software, and pay fees for those services. *See* 56.1 Statement ¶ 4; Agreement (Exhibit A to the Zimels Declaration). The Agreement is a comprehensive and detailed 17-page contract (including four appendices) that attempts to address all aspects of the parties' business relationship — from announcing the relationship on the Norwegian Financial Bulletin Board to the GIPS copyright notice Deltathree

---

[1]   Citations to "56.1 Statement" are to Deltathree's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment, filed together with this memorandum of law. The 56.1 Statement relies in part on the Declaration of Shimmy Zimels, also filed herewith.

was obligated to include with its Softphone.  *See, e.g.*, Agreement § 6.2, Appendix D § 2.1.  Importantly, the original draft of the Agreement, which contained all of the relevant limitation-of-liability provisions, was a form agreement prepared by and regularly used by GIPS.

The Agreement recites that the parties negotiated it "with the advice of counsel and approval of their authorized representatives."  Agreement § 16.7.  It includes a severability clause, and an integration clause stating that it constituted the entire agreement between the parties on the subject matter.  Agreement §§ 16.4, 16.8.  The Agreement also contains a choice-of-law clause:  "This Agreement is governed by the laws of New York .... Choice of law rules do not apply ...."  Agreement § 16.3.

A key element of the Agreement is a series of limitations of liability interwoven throughout.  The Agreement contains no fewer than *six* different sections limiting liability, several of which inure to the exclusive benefit of GIPS:

- The Agreement gives GIPS the right to suspend or terminate its support services for the software, under circumstances involving Deltathree's non-payment of royalties or fees.  In that event, the Agreement provides:  **"GIPS shall have no liability for damages sustained by [Deltathree]** resulting from such termination or suspension of Support Services ...."  Agreement § 8.3 (emphasis added).

- GIPS offers a warranty that its software would perform according to specifications, but provides that "the warranty only applies if [Deltathree] agrees to and has paid for Basic Support and Service ...."  Even then, GIPS exculpates itself from any damages for breach of warranty: "In the event of any breach of the foregoing warranty, **GIPS's sole liability and Deltathree's sole remedy** with respect only to this Section 10.2 is for GIPS ... to use commercially reasonable efforts to bring the GIPS [software] into material compliance with the [s]pecifications."  Agreement § 10.2 (emphasis added).  GIPS then disclaims all other warranties, express or implied, including warranties of merchantability and fitness for a particular purpose.  Agreement § 10.4.

3

- GIPS agrees to indemnify Deltathree to the extent a third-party lawsuit claimed that GIPS's software infringed the claimant's intellectual-property rights. Yet the Agreement sets forth five sets of conditions under which "**GIPS shall have no [indemnification] obligation or liability to [Deltathree].**" Agreement § 12.1 (emphasis added).

- Concerning termination, the Agreement provides: "**Neither party incurs any liability or compensation obligation for any damage ... loss, or expense of any kind** suffered or incurred by the other party due solely to the termination of this Agreement pursuant to the terms of this Article 14 ...." Agreement § 14.6 (emphasis added).

- The trademark license that is Appendix D to the Agreement contains a "Limitation of Liability" section in all capital letters:

  **IN NO EVENT IS EITHER PARTY LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES** IN CONNECTION WITH ... THIS LICENSE ... NO MATTER WHAT THEORY OF LIABILITY, EVEN IF EITHERPARTY HAS BEEN ADVISED OF THE POSSIBILITY OR PROBABILITY OF SUCH DAMAGES. FURTHER, LIABILITY FOR SUCH DAMAGE IS EXCLUDED, EVEN IF THE EXCLUSIVE REMEDIES PROVIDED FOR IN THIS LICENSE FAIL OF THEIR ESSENTIAL PURPOSE. THE PROVISIONS OF THIS ARTICLE D.5 ALLOCATE THE RISKS UNDER THIS LICENSE BETWEEN GIPS AND DELTATHREE, AND THE PARTIES HAVE RELIED UPON THE LIMITATIONS SET FORTH HEREIN IN DETERMINING WHETHER TO ENTER INTO THIS LICENSE. (Agreement Appendix D, Article D.5 (bold emphasis added).)

In addition to these more specific limitations of liability, the Agreement includes a general "Limitation of Liability" section in Article 13, and that is the subject of this motion. Every word of each of the three subsections of Article 13 is in all capital letters (the bold emphasis is added below). Section 13.1 provides:

  EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER SECTIONS 12.1 OR 12.3, AS APPLICABLE, OR CLAIMS BY GIPS RELATING TO MISAPPROPRIATION OR INFRINGEMENT OF ITS INTELLECTUAL PROPERY BY LICENSEE, **NEITHER PARTY IS LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES OF ANY KIND (INCLUDING BUT NOT LIMITED TO LOST PROFITS) RELATING TO THIS AGREEMENT** OR THE USE OR PER-

4

FORMANCE OF THE GIPS SOFTWARE … OR THE PROVISION OF SER-
VICES, REGARDLESS OF THE THEORY OF LIABILITY.

Section 13.2 provides:

> EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER
> SECTIONS 12.1 OR 12.3, AS APPLICABLE, **IN NO EVENT DOES GIPS'S
> OR DELTATHREE'S AGGREGATE LIABILITY UNDER THIS
> AGREEMENT OR FOR BREACH OF THIS AGREEMENT**, WHETHER IN
> CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR
> ANY OTHER LEGAL THEORY, **EXCEED THE TOTAL AMOUNTS PAID
> BY DELTATHREE TO GIPS UNDER THIS AGREEMENT**.

Section 13.3 provides:

> THE LIMITATIONS IN ARTICLES 13.1, AND 13.2 APPLY EVEN IF THE
> OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH
> DAMAGES AND NOTWITHSTANDING THE FAILURE OF THE ESSEN-
> TIAL PURPOSE OF ANY LIMITED REMEDY, BUT DO NOT LIMIT LI-
> ABILITY FOR DEATH OR BODILY INJURY CAUSED BY EITHER
> PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDCUT.

The initial draft of the Agreement that Deltathree received was a form agreement pre-
pared by, and regularly used by GIPS.  *See* 56.1 Statement ¶ 10.  Section 13.2 of this initial draft
provided a limitation of liability for GIPS.  Deltathree negotiated to make that limitation recipro-
cal, and Section 13.2 of the executed Agreement (quoted above) provides a limitation of liability
for both GIPS and Deltathree.  *See id.* ¶ 11.

**Deltathree's Payments Under the Agreement**

After signing the Agreement and receiving GIPS's software, in October 2005, Deltathree
completed its up-front payments to GIPS, totaling $80,000 — $60,000 in "platform fees" for the
software platform; $15,000 in advance royalties; $3,000 as a pre-payment for three months of
GIPS support services; and $2,000 for product testing.  *See* Agreement Appendix C; 56.1 State-
ment ¶ 12.  Deltathree's subsequent royalty and fee payments to GIPS brought the total paid un-
der the Agreement to $111,350.  *See* 56.1 Statement ¶ 12.

4248984v.1

**The Dispute and the Litigation**

On or about July 19, 2007, GIPS sent a letter to Deltathree in which GIPS purported to advise Deltathree that the Agreement would terminate on July 31, 2007. The letter claimed material breaches of the Agreement by Deltathree and demanded that as of July 31, Deltathree cease "the further marketing, sale and distribution" of Deltathree products including GIPS software, and return or destroy all copies of GIPS software. *See id.* ¶ 13.

On or about July 25, 2007, Deltathree sent a letter to GIPS replying to its July 19 letter. Deltathree's letter disputed GIPS's claims of material breach and stated that (in any event) Deltathree had completely cured all alleged breaches. The letter stated Deltathree's position that there was no "legitimate or permissible ground for [GIPS] to claim that the Agreement will terminate," and that an immediate termination "would cause material harm and damages to [D]eltathree" — which had "invested significant time and resources" in integrating GIPS's software. *See id.* ¶ 14.

On August 28, 2007, GIPS commenced this action. GIPS's claims include: copyright infringement, based on Deltathree's use of GIPS software after the July 31 purported termination date; breach of contract, and breach of the implied covenant of good faith and fair dealing, based on allegations that Deltathree failed to submit accurate and timely royalty reports, pay the correct amount of royalties, and fully cooperate with an audit conducted pursuant to the Agreement. *See* Complaint. GIPS seeks: unspecified monetary damages; "all gains, profits, and advantages derived by [D]eltathree" from its alleged copyright infringement; reimbursement for costs of the audit; prejudgment interest; and attorneys' fees. *See* Complaint, "Prayer for Relief," pp. 17-18. On September 21, 2007, Deltathree filed an Answer denying those allegations, including that Deltathree breached the Agreement.

6

Simultaneous with the filing of its complaint, GIPS moved for a preliminary injunction by order to show cause. *See* Order to Show Cause (dated August 28, 2007). In its motion, GIPS sought the return of the software it licensed to Deltathree pursuant to the Agreement. Although Deltathree disputed, then as now, that it breached the Agreement and that GIPS had any right to claim the Agreement was terminated, in an effort to resolve that aspect of the litigation, Deltathree consented to the preliminary injunction. Pursuant to a Stipulation Regarding Preliminary Injunction and Order (entered on November 26, 2007), Deltathree agreed that, on a going-forward basis, none of its customers could utilize GIPS's software. Stipulation at ¶¶ (a)-(c). Deltathree further agreed that, except for use by its counsel in this litigation, it would return or destroy all copies of the GIPS software. *Id.* at 2. As of November 5, 2007, no customers of Deltathree have been able to use, or have used, the GIPS software. *See* Declaration of Shimmy Zimels (dated November 8, 2007) at ¶¶ 8-9.

On January 4, 2008, GIPS served its Initial Disclosures Under Federal Rule of Civil Procedure 26(a)(1), which state that GIPS is seeking $1 million in damages. Presently, the parties are engaged in discovery.

## ARGUMENT

## I.    PARTIAL SUMMARY JUDGMENT IS MANDATED WHERE, AS HERE, THERE IS NO GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO THE ISSUE OF DAMAGES.

The standard of review on a motion for **partial** summary judgment is the same as on a motion for summary judgment. *See, e.g., Lane Capital Mgmt., Inc. v. Lane Capital Mgmt.*, 192 F.3d 337, 343 (2d Cir. 1999); *AT&T Corp. v. Microsoft Corp.*, 2004 WL 188078, at *1 (S.D.N.Y. Feb. 2, 2004). Summary judgment is mandated when the record shows that "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a

matter of law." *See, e.g.*, Fed. R. Civ. P. 56(c); *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007). Although "the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party ... Rule 56 jurisprudence is clear ... that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Yafa Jewelry, Inc. v. All Those Underwriters*, 42 F. Supp.2d 307, 310 (S.D.N.Y. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

Thus, in order to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990).

A decision on the issue of recoverable damages in this case is one of contract interpretation, which is particularly well-suited for summary judgment. As the Second Circuit has held: "The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002); *see also, e.g., Harris Trust & Savs. Bank v. John Hancock Mut. Life Ins. Co.,* 970 F.2d 1138, 1147-48 (2d Cir. 1992) (summary judgment appropriate if contract language is clear on its face, even though non-movant proffers different interpretation).

Furthermore, the "mechanism of summary judgment promotes judicial economy by preventing further litigation on an issue with an unalterably predetermined outcome." *Eppendorf-Netheler-Hinz GmbH v. Enteron Co.*, 89 F. Supp.2d 483, 484 (S.D.N.Y. 2000). And courts in

8

the Second Circuit consistently have granted motions for **partial** summary judgment where, as

here, there is no genuine issue of material fact regarding limitations on a defendant's potential

liability. *See, e.g., American Home Assur. Co. v. Hapag Lloyd Container*, 446 F.3d 313, 317,

319 (2d Cir. 2006); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 434 F. Supp. 2d 257,

264 (S.D.N.Y. 2006); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 365 F. Supp. 2d 434, 448

(S.D.N.Y. 2005); *U.S. Gold Corp. v. Federal Exp. Corp.*, 719 F. Supp. 1217, 1225-26 (S.D.N.Y.

1989).

In fact, this Court has recognized that a ruling on limitation of liability can fundamentally

alter the incentives to litigate, and agreed to render such a ruling **even in the absence of formal**

**motion practice**. In *World-Link, Inc. v. Citizens Telecom. Co.*, the parties wished to avoid the

cost of extensive motion papers and asked the Court for its interpretation of a limitation-of-

liability clause in their contract, based only on short submissions. Noting that, "[a]rmed with

such an interpretation, the parties will be in a position to undertake further settlement negotia-

tions," the Court obliged — and ruled that the contract precluded an award of the consequential

damages the plaintiff sought. *See* 2000 WL 1877065, at *1 (S.D.N.Y. December 26, 2000).

As discussed below, a ruling on limitation of liability should lead to the disposition of

this case. To promote judicial economy by preventing needless litigation, the Court can and

should use the mechanism of partial summary judgment to render that ruling now.

## II.    GIPS'S POTENTIAL RECOVERY IN THIS CASE IS LIMITED TO $111,350.

### A.    The Agreement Unambiguously Limits Deltathree's Potential Liability to the Amount it Paid GIPS Under the Agreement.

New York contract law requires enforcement of the unambiguous terms of an agreement.

Time and again, the New York Court of Appeals has instructed that "when parties set down their

9

agreement in a clear, complete document, their writing ... should be enforced according to its terms." *South Rd. Assocs., LLC v. Int'l Bus. Mach. Corp.*, 4 N.Y.3d 272, 277, 793 N.Y.S.2d 835, 838 (2005); *accord, e.g.*, *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 767 (2004); *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990). This principle "'is particularly important where ... the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length.'" *South Rd.*, 4 N.Y.3d at 277 (quoting *Vermont Teddy Bear*, 1 N.Y.3d at 475, and *Matter of Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548, 634 N.Y.S.2d 669, 671 (1995)).

Whether or not an agreement is ambiguous "is a question of law to be resolved by the courts." *W.W.W.*, 77 N.Y.2d at 162. And "it is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *Id.* at 163 (internal quotation marks omitted).

In this case, there is absolutely nothing ambiguous about the limitation of liability in Section 13.2 of the Agreement. It provides that "**IN NO EVENT DOES GIPS'S OR DEL- TATHREE'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR FOR BREACH OF THIS AGREEMENT**, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR ANY OTHER LEGAL THEORY, **EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT**" (bold emphasis added). The Agreement goes on to clarify in Section 13.3 that this liability limit applies "EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY." The only exceptions to the liability limit are for: (1) indemnification obligations for third-party claims of intellectual-property infringement; or (2)

"death or bodily injury caused by either party's gross negligence or willful misconduct." *See* Agreement §§ 13.2, 13.3. Of course, neither of those exceptions is relevant here.

Further, there is no question that the limitation of liability applies equally to GIPS's copyright-infringement claim. Section 13.2 uses the phrase **"in no event,"** and its limitation applies not only to liability "for breach of this Agreement" but also to liability "under this agreement," and under **"any … legal theory"** (emphasis added). Tellingly, while Section 13.1 expressly carves out IP infringement claims from the exclusion of indirect, consequential, and punitive damages, Section 13.2 contains no such carve-out — demonstrating that even infringement claims are within the ambit of the liability cap.

Thus, the limitation of liability is ripe for a grant of partial summary judgment. It is contained in a "clear, complete document," that was "negotiated between sophisticated, counseled business people negotiating at arm's length." *See, e.g., South Rd.,* 4 N.Y.3d at 277; Agreement § 16.7 ("The parties have negotiated this Agreement with the advice of counsel and approval of their authorized representatives."). Even within the clear and complete Agreement, the limitation of liability stands out. Article 13 is **202 words long** — in **all capital letters**. It is a **mutual** limitation of liability that protects both Deltathree and GIPS, and is just part of an array of limitations of liability — several of which are one-sided in **GIPS's** favor. *See supra* pp. 3-5. Having immunized itself in all sorts of ways, including in Section 13.2 itself, GIPS cannot be heard to argue that the limitation of Deltathree's liability somehow is unenforceable. That point is particularly true here since the original draft of the Agreement, which GIPS prepared, contained the

4248984v.1

limitation-of-liability language.  Obviously, from the start, GIPS negotiated for the language and believed it was enforceable.[2]

GIPS also cannot argue that the plain meaning of the limitation of liability is so absurd as to be unenforceable; far from absurd, the limitation is entirely reasonable.  While it may be true that it is more common for the **licensor** of software to limit its liability to the amounts it is paid under a license, there is nothing inherently unreasonable (let alone absurd) with that limitation being reciprocal and extending to the **licensee**.  And that is the bargain Deltathree and GIPS made.

The limitation was not illusory, nor did it encourage breach on some theory that Deltathree could take the software, refuse to pay, and then have its liability limited to zero.  The Agreement itself contradicts that theory because it requires up-front payments for the software platform, advance royalties, and pre-payment for support services.  *See* Agreement Appendix C.  And as a matter of fact, Deltathree paid a total of $80,000 up front, by October 2005.  *See* 56.1 Statement ¶ 12.  Further, the Agreement authorizes GIPS to terminate its support services for the software in the event of Delathree's non-payment — with no liability for any damages Deltathree might sustain as a result.  *See* Agreement § 8.3.

There can be no genuine dispute concerning the fact that the total amounts paid by Deltathree to GIPS under the Agreement equal $111,350.  The Agreement provides in no uncertain

---

[2]    Although the Court need not advert to parol evidence on this motion, the basic fact that the Agreement generally, and Section 13.2 specifically, originate from **GIPS's** form agreement and contain **GIPS's** language only underscores that GIPS is in no position to plead unenforceability. *See* 56.1 Statement ¶¶ 10-11.  While the Agreement provides that it may not be "construed against either party on the basis that any provision was drafted" by it (§ 16.7), Deltathree is not invoking the principle of *contra preferentum* to resolve an ambiguity against GIPS.  Section 13.2 is unambiguous.  The point is that the Court cannot countenance GIPS's sword-and-shield tactic of including the limitation of liability for its sake, agreeing to reciprocity, but then claiming the limitation is unenforceable when used against it.  GIPS must lie on the bed that **it** made.

terms that "IN NO EVENT DOES … DELTATHREE'S AGGREGATE LIABILITY UNDER

THIS AGREEMENT OR FOR BREACH OF THIS AGREEMENT … EXCEED THE TOTAL

AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT." Agreement §

13.2.  The Court should enforce the Agreement as written, and rule that GIPS's total potential

recovery in this case is limited to $111,350.

### B.    The Public-Policy Exceptions to the Rule of Enforcing Limitations of Liability Do Not Apply in this Case.

#### 1.    Controlling New York Court of Appeals authority dictates the enforceability of the liability limit.

The New York Court of Appeals has held that "a limitation on liability provision in a

contract represents the parties' [a]greement on the allocation of the risk of economic loss in the

event that the contemplated transaction is not fully executed, which the courts should honor."

*Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.,* 84 N.Y.2d 430, 436, 618 N.Y.S.2d 882,

885 (1994) (hereinafter, "*MetLife*").  *MetLife* is a software-license case that is directly on point

and that demonstrates that the public-policy exceptions to the rule of enforcing limitations of li-

ability do not apply here.

In *MetLife*, Noble Lowndes agreed to license to MetLife a software program with cus-

tomized enhancements.  The license agreement absolved Noble from liability for losses resulting

from its "performance or non-performance" of the agreement, except in cases of "intentional

misrepresentations, or damages arising out of [Noble's] willful acts or gross negligence." 84

N.Y.2d at 433.  When the expense of supplying the enhancements turned out to be greater than

anticipated, Noble demanded an upward adjustment to the agreed-upon ceiling for the cost of the

enhancements.  MetLife refused the adjustment and Noble discontinued its performance under

the license.  *Id.*  MetLife argued that Noble could not avail itself of the limitation of liability be-

cause its refusal to perform was a "willful act[]." The Court of Appeals disagreed. *See id.* at

435.

The Court of Appeals recognized that parties to an agreement containing a limitation-of-

liability clause "'may later regret their assumption of the risks of non-performance in this man-

ner; **but the courts let them lie on the bed they made**. Where a contract provides that damages

for breach shall not be recoverable beyond a specified sum, it is obvious that the risk of loss be-

yond that sum is being assumed by the promisee.'" *Id.* at 436 (quoting 5 Corbin on Contracts, §

1068, at 386 (1964)) (emphasis added). The court found that MetLife's construction of the

"willful acts" exception — holding Noble liable unless its breach was inadvertent — "would

eliminate any semblance of reciprocity between [MetLife] and [Noble]." *Id.* at 438. Yet courts

"will endeavor to give the contract construction most equitable to both parties instead of the con-

struction which will give one of them an unfair and unreasonable advantage over the other." *Id.*

(internal quotation marks and brackets omitted).

The Court of Appeals therefore concluded that "willful acts" excluded from the limitation

of liability only "truly culpable, harmful conduct, not merely intentional nonperformance of the

Agreement motivated by financial self-interest." *Id.* The conduct had to be "**tortious in nature**,

*i.e.*, **wrongful conduct in which defendant willfully intends to inflict harm on plaintiff**" to be

excluded. *See id.* (emphasis added).

The Court of Appeals deemed its holding consistent with its prior precedent concerning

public-policy exceptions to the enforceability of limitations of liability. The court had held that

"an exculpatory clause is unenforceable when, **in contravention of acceptable notions of mo-

rality**, the misconduct for which it would grant immunity **smacks of intentional wrongdoing**."

*Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385, 461 N.Y.S.2d 746, 750 (1983)

14

(emphasis added).  The intentional wrongdoing "can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith," which "connotes a dishonest purpose."  58 N.Y.2d at 385 & n.5.  Alternatively, "when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit."  *Id.* at 385; *accord Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 963 (1992).  Because Noble's repudiation of the MetLife agreement "was motivated exclusively by its own economic self-interest" and was not "intended to inflict harm" on MetLife, the limitation of liability was enforceable.  *Id.* at 439.

The enforceability of the limitation of liability in this case follows *a fortiori* from *MetLife*.  Given GIPS's litany of liability protections, including Section 13.2 itself, declining to enforce Section 13.2 in Deltathree's favor "would eliminate any semblance of [the] reciprocity" for which Deltathree bargained.  *See id.* at 438.  The Court should "endeavor to give the contract construction most equitable to both parties" and enforce the limitation.  *See id.*

In *MetLife*, the parties excluded "willful acts" from their limitation of liability.  In the Agreement here, by contrast, the parties excluded "willful misconduct" only if it causes "death or bodily injury" (*see* Agreement § 13.3) — and thus the only practical constraints on the limitation are those of public policy.  In *MetLife*, Noble stiffed MetLife and repudiated the entire license agreement after MetLife had committed to its software.  But at bottom in this case, GIPS accuses Deltathree of little more than underpaying royalties, and continuing to use its software for a  few months while the parties disputed whether the Agreement was terminated and whether (even if terminated) it required the software's immediate return.

Under *MetLife*, the conduct GIPS alleges in its breach-of-contract and breach-of-implied-covenant claims does not remotely approach the boundaries of public policy.  It would

15

not contravene "acceptable notions of morality" to limit Deltathree's liability for allegedly un-derpaying royalties or not adequately cooperating with an audit, for instance. *See Kalisch-Jarcho*, 58 N.Y.2d at 385. Even if, *arguendo*, GIPS could create a genuine issue whether Del-tathree intentionally breached the Agreement, that would not suffice. Any breach plainly would have been motivated by Deltathree's "own economic self-interest" and was not "intended to in-flict harm" on GIPS. *See MetLife*, 84 N.Y.2d at 439.

Moreover, even if GIPS's copyright-infringement claim sounds in tort, it cannot evade the limitation of liability, because only tortious conduct that "smacks of intentional wrongdoing" triggers the public-policy exception. *See id.* at 438-39. GIPS could never prove that Deltathree possessed some "malicious" or "sinister" motive for retaining the GIPS software after receiving a (disputed) termination notice from GIPS because **the Agreement itself permitted Deltathree to do so.** *See Kalisch-Jarcho*, 58 N.Y.2d at 385; Agreement § 14.5.

Deltathree disputed GIPS's asserted right to terminate the Agreement. *See supra* p. 6. Yet even in the event of a valid termination, Section 14.5 of the Agreement authorized Del-tathree to continue using the software to support its end users for **one year** post-termination. GIPS argued in its preliminary-injunction motion that only a typographical error in the Agree-ment prevented an exception from disqualifying Deltathree's right to retain the software. *See* GIPS's Oct. 9, 2007 Letter to the Court, pp. 3-4. Irrespective of the merits of that "typo" argu-ment, GIPS could never show that Deltathree "intended to inflict harm" on GIPS when it relied on the face of the Agreement to prevent "material harm and damages" to its own business. *See supra* p. 6. It is not as if Deltathree had an **exclusive** license to GIPS's software and was hold-ing GIPS captive. Like GIPS's contract claims, any supposed harm from the few months of al-

16

leged copyright infringement boils down to a simple underpayment to GIPS for use of its software.

Deltathree definitively displayed its **good faith** by expeditiously finding a substitute software provider, consenting to the preliminary injunction, and discontinuing use of GIPS's software. *See supra* p. 7. Thus, GIPS's allegations of "willful," "intentional," and "reckless" copyright infringement (Complaint ¶ 100) ring hollow, and such "[c]onclusory allegations will not suffice to create a genuine issue." *See Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990).

### 2. *MetLife's* progeny strengthens the conclusion that the limitation of liability is enforceable.

While *MetLife* was a post-trial decision, its contract interpretation did not rely on extrinsic evidence (*see* 84 N.Y.2d at 437-38), and two decisions of this Court applying *MetLife* to grant **motions to dismiss** reinforce that no further discovery is necessary here to grant partial summary judgment for Deltathree. First, in *Deutsche Lufthansa AG, v. The Boeing Co.,* Lufthansa alleged that Boeing breached a service agreement in bad faith by encouraging Lufthansa to invest tens of millions of dollars in a Boeing in-flight internet system, and then exiting the business and repudiating the agreement. *See* 2007 WL 403301, at *1-*2 (S.D.N.Y. Feb. 2, 2007). But on a motion to dismiss, this Court held that the limitation of liability in the service agreement was enforceable.

The Court observed that "New York [c]ourts set the bar quite high in placing misconduct within the exceptions" to enforcing a limitation of liability. *Id.* at *3. The exceptions demand "**'nothing short of ... a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the**

17

**rights of others, or an extensive pattern of wanton acts.**'" *Id.* (emphasis added) (quoting *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003)); *see also id.* (quoting the *Kalisch-Jarcho* formulation of the standard). Relying on *Met-Life*, the Court found that Boeing "acted rationally" and that its alleged conduct fell "well below the levels required by the New York courts to invalidate a mutually agreed upon limitation of liability." *Id.* at *4.

Second, in *DynCorp v. GTE Corp.*, DynCorp sued for fraud and breach of contract, alleging that the defendants "deceived it at every turn" in selling it a business, and seeking punitive damages due to the "egregious nature" of defendant's conduct. *See* 215 F. Supp. 2d 308, 309, 313 (S.D.N.Y. 2002). Notwithstanding DynCorp's allegations of fraud and egregious conduct, this Court held — on a motion to dismiss — that the limitation of liability in the purchase agreement was enforceable. The Court viewed *MetLife* as controlling: "an allegation that a breach of contract was willful rather than involuntary does not allow a court to disregard an unambiguous limitation of liability provision agreed to by parties of equal bargaining power." *Id.* at 318 (citing *MetLife*). The Court refused to "re-write how the parties … allocated their risks, and limited their liabilities and rights to recovery." *Id.*; *see also, e.g.*, *Net2Globe*, 273 F. Supp. 2d at 449-56 (relying on *MetLife* in granting summary judgment for defendant on limitation of liability).

*Deutsche Lufthansa* and *DynCorp* demonstrate that discovery is not required to enforce a clear limitation of liability. Deltathree is not accused of conduct as severe as leaving GIPS in the lurch after encouraging it to invest tens of millions of dollars, or egregiously deceiving GIPS at every turn in selling it a troubled business. But even if it were, mere allegations of bad faith, or deceptive and egregious conduct, could not provide grounds for "disregard[ing] an unambiguous limitation of liability provision." *See DynCorp*, 215 F. Supp. 2d at 318.

Finally, the New York Appellate Division's split decision last month in *Banc of Amer. Secs. LLC v. Solow Building Co. II* militates in favor of summary judgment in this case. *See* 847 N.Y.S.2d 49 (1st Dept. Dec. 4, 2007). *Banc of America* confirms that summary judgment is appropriate under *MetLife* unless the defendant's conduct "smacks of intentional wrongdoing." *See, e.g., id.* at 53. The three-justice majority denied summary judgment because it found that the defendant landlord engaged in a "blatant" attempt to "inflict economic duress" on its tenant, Banc of America, by demanding a $6 million payment before reviewing plans to alter the leased property. *See id.* at 56-57. This case lacks any hint of such a "sinister intention." *See id.* at 53.

Thus, since there is no genuine issue that GIPS cannot produce a "compelling demonstration" that Deltathree is guilty of "egregious intentional misbehavior evincing extreme culpability," the Court should honor the limitation of liability and grant partial summary judgment enforcing it. *See, e.g., Deutsche Lufthansa*, 2007 WL 403301, at *3.

**C.    The Limitation of Liability Is Equally Enforceable under the U.C.C.**

The Court need not decide the complex question of whether the Agreement is governed by common law or New York's version of the Uniform Commercial Code (the "N.Y.U.C.C.") because the result is the same under either — the limitation of liability must be enforced. The Agreement is a software license under which GIPS customized its software for integration with Deltathree's Softphone, licensed the software to Deltathree for its use, and contracted to provide support services to Deltathree. *See supra* p. 2. Even for software licenses less diverse, the Second Circuit has noted that it is not clear under New York law whether they are governed by common law, or constitute contracts for the sale of goods, governed by the U.C.C. *See Arbitron, Inc. v. Traylyn Broadcasting, Inc.*, 400 F.3d 130, 138 & n.2 (2d Cir. 2005); *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 29 n.13 (2d Cir. 2002).

19

Some decisions under New York law appear to assume that common law governs the software license at issue. *See, e.g.*, *MetLife*, 84 N.Y.2d at 433-39. Others assume that the N.Y.U.C.C. controls. *See, e.g.*, *Noble Thread Corp. v. Vormittag Assocs.*, 305 A.D.2d 386-87, 758 N.Y.S.2d 509, 510 (2d Dept. 2003). No matter which law governs the Agreement, Deltathree's limitation of liability is enforceable. If anything, the path to a decision of enforceability is shorter under the N.Y.U.C.C.

Section 2-719 of the N.Y.U.C.C. sanctions limitations of liability as long as they are not unconscionable. The statute provides that an agreement "may limit or alter the measure of damages recoverable." N.Y.U.C.C. § 2-719(1)(a). The Official Comment on the statute states that "parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." The exception is for unconscionable limitations of liability — an exception inapplicable here.

As the Second Circuit has ruled, the "determination of unconscionability is a question of law." *McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1198 (2d Cir. 1995). Unconscionability "'generally requires a showing that the contract was both procedurally and substantively unconscionable when made — *i.e.*, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Id.* (quoting *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 791 (1988)). The Agreement here recites that it was negotiated, with the advice of counsel (§ 16.7), and it is laden with provisions — including limitations of liability — favoring GIPS. Needless to say, GIPS cannot prove that it lacked "meaningful choice" in entering into the Agreement **and** that the Agreement "unreasonably favor[s]" Deltathree.

And that may end the inquiry. A number of decisions have validated limitations of liability under the N.Y.U.C.C. upon the mere finding that the limitation was not unconscionable, which appears to be the only statutory criterion. *See Noble Thread*, 305 A.D.2d at 387; *General Elec. Co. v. Varig-S.A.*, 2004 WL 253320, at *3-*4 (S.D.N.Y. Feb. 10, 2004); *see also Tulger Contracting Corp. v. Star Building Sys.*, 2002 WL 986994, at *2-*3 (S.D.N.Y. May 14, 2002) (finding no jury question on unconscionability but denying summary judgment due to genuine issue whether plaintiff ever signed the contract).

In *McNally*, the Second Circuit reserved decision on whether the N.Y.U.C.C. also maintains a "bad faith exception" to the enforceability of limitations of liability. *See* 63 F.3d at 1198 & n.9. Concededly, at least two decisions after *McNally*, from district courts within the Second Circuit, have applied a bad-faith exception. *See Proto Const. & Dev. Corp. v. Superior Precast, Inc.*, 2002 WL 1159593, at *9 (E.D.N.Y. May 28, 2002); *PC Com, Inc. v. Proteon, Inc.*, 946 F. Supp. 1125, 1138-40 (S.D.N.Y. 1996) (discussing debate over the exception). But even if a bad-faith exception exists, it would (at most) be coextensive with the public-policy exceptions the New York Court of Appeals has delineated. *Cf. Proto*, 2002 WL 1159593, at *9 (finding no evidence of tortious conduct and holding that mere nonperformance does not support a claim of bad faith). As demonstrated above in Point II.B, those public-policy exceptions do not apply in this case, and the limitation of liability is enforceable.

## III.  THE COURT SHOULD DIRECT THAT IF DELTATHREE TENDERS THE MAXIMUM AMOUNT OF DAMAGES, WITHOUT ADMITTING ANY LIABILITY, THE COURT WILL ENTER FINAL JUDGMENT.

If the Court rules, as it should, that Deltathree's aggregate liability in this case is limited to $111,350, it would make no sense for Deltathree to continue fighting. The realities of modern litigation are such that Deltathree could not adequately defend itself through discovery and seek

summary judgment on liability without spending more than that amount on attorneys' fees. Unfortunately, Deltathree **already** has spent more than the amount at stake on attorneys' fees, and even though it adamantly contests liability, it has no desire to throw good money after bad. As a business matter, it seeks an exit strategy, and the Second Circuit recently illuminated one.

In *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,* this Court granted summary judgment in part, ruling that the contractual limitations of liability were enforceable and the defendants' damages were limited to $50 each. The defendants offered to tender $50 each to the plaintiff, without conceding liability. The plaintiff rejected the tender, but this Court entered final judgment nevertheless, and the Second Circuit affirmed. *See* 485 F.3d 85, 89 (2d Cir. 2007).

The Second Circuit held that a district court can enter final judgment without a finding of liability: "Where a defendant has consented to judgment for all the relief the plaintiff can win at trial … the defendant's refusal to admit fault does not justify a trial to settle questions which can have no effect on the judgment." 485 F.3d at 93. Once the defendant tenders the amount at stake, even without admitting liability, "nothing of significance remain[s] to adjudicate." *See id.* at 94.

It would be senseless to continue this litigation if Deltathree were prepared, as it is, to tender the maximum amount of its potential liability. Relying on *ABN Amro*, this Court should order not only that Deltathree's aggregate liability is limited to $111,350, but that if it tenders that amount to GIPS — without conceding any liability — the Court will enter final judgment, bringing this case to a close.

## IV.   GIPS'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING MUST BE DISMISSED BECAUSE IT IS REDUNDANT.

In its Third Claim for Relief, GIPS alleges that Deltathree breached the implied covenant of good faith and fair dealing. The Third Claim is predicated on the same allegations as GIPS's Second Claim, for breach of contract. *See* Complaint ¶¶ 106-123. The Third Claim must be dismissed because New York law **"does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."** *See Harris v. Provident Life and Accident Insur. Co.,* 310 F.3d 73, 80 (2d Cir. 2002) (emphasis added). Thus, where a party has alleged breach of contract and added a separate claim for breach of the implied covenant of good faith, courts have routinely dismissed the claim for breach of the implied covenant as redundant. *See, e.g., Levi v. Utica First Ins. Co.,* 12 A.D.3d 256, 257-58, 786 N.Y.S.2d 3, 5 (1st Dept. 2004); *McMahon & Co. v. Bass,* 250 A.D.2d 460, 462, 673 N.Y.S.2d 19, 21 (1st Dept. 1998). As the Appellate Division explained in *McMahon*: "[T]he allegation of a breach of the duty of good faith is duplicative of the cause of action for breach of contract since, where appropriate, the courts will imply the obligation of good faith and fair dealing between parties to a contract." *McMahon*, 250 A.D.2d at 462. Accordingly, regardless of how the Court rules on the limitation of liability, the Court should dismiss GIPS's Third Claim for Relief.

## CONCLUSION

For the foregoing reasons, Deltathree respectfully requests that the Court grant its motion for partial summary judgment and order that: (1) Deltathree's potential liability in this case is limited to $111,350; (2) if Deltathree tenders that amount to GIPS, without admitting liability,

23

4248984v.1

the Court will enter final judgment; and (3) GIPS's Third Claim, for breach of the implied covenant of good faith and fair dealing, is dismissed as redundant.

Respectfully submitted,

By: _____

Dominic L. Picca (DP 2376)
Seth R. Goldman (SG 2452)
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
666 Third Avenue
New York, New York 10017
Attorneys for Defendant
Tel:  212-692-6845
Fax:  212-983-3115

*Attorneys for Defendant deltathree, Inc.*

Dated:  February 5, 2008