UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                  :

GLOBAL IP SOLUTIONS, INC.            :     07 CV 7631 (RJH)
                                  :

               Plaintiff,     :
                                  :

              -against-     :
                                  :

DELTATHREE, INC.                  :
                                  :

               Defendant.    :
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DELTATHREE, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

WINSTON & STRAWN LLP

By: Luke A. Connelly, Esq.
    Edward C. Wipper, Esq.
    200 Park Avenue
    New York, New York 10166
    Telephone:    (212) 294-6700
    Facsimile:    (212) 294-4700

    Jonathan M. Cohen
    (admitted *pro hac vice*)
    Krista M. Enns
    (admitted *pro hac vice*)
    101 California Street, Suite 3900
    San Francisco, California 94111
    Telephone:    (415) 591-1000
    Facsimile:    (415) 591-1400

    *Attorneys for Plaintiff Global IP
    Solutions, Inc.*

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 1

    A.   The Parties ........................................................................................................ 1

        1.   Plaintiff Global IP Solutions, Inc. ........................................................... 1

        2.   Defendant deltathree, Inc. ........................................................................ 2

    B.   The Agreement ................................................................................................. 2

    C.   How And When Section 13.2 Became "Reciprocal." ....................................... 3

    D.   The Dispute Underlying This Lawsuit .............................................................. 3

    E.   Deltathree's Court-Ordered Weekly Reporting ................................................ 4

    F.   Termination Of The Agreement And Transition Of Deltathree
        Accountholders Away From GIPS Software. .................................................. 5

    G.   Deltathree's Motion for Partial Summary Judgment ....................................... 6

III. LEGAL STANDARD .............................................................................................. 6

IV. ARGUMENT ............................................................................................................ 6

    A.   Deltathree's Motion Should Be Denied Because It Advocates
        Interpreting Section 13.2 In Isolation. ............................................................. 7

    B.   Deltathree's Motion Should Be Denied Because Section 13.2 Is Ambiguous .................. 7

        1.   Even when read in isolation, the Disputed Provision – Section 13.2 – is ambiguous. .... 8

        2.   When the Agreement is read as a whole, Section 13.2 is ambiguous. ......................... 10

        3.   There is a genuine issue of material fact as to the parties'
            intent and, therefore, summary judgment is inappropriate ........................................ 13

    C.   Even If The Agreement Unambiguously Granted Deltathree Immunity
        For Its Failure to Pay Royalties, Section 13.2 Would Be Unenforceable ...................... 14

        1.   There is a genuine issue of fact as to whether Deltathree's
            alleged conduct rises to the level of conduct that has been
            held to violate public policy. ..................................................................................... 15

i

2.    Deltathree's "good-faith" argument rests on another ambiguous provision of the Agreement as to which there are genuine issues of material fact as to the parties' intent.... 15

3.    The cases on which Deltathree relies are not on point................................................. 16

V. CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)............................................................................................. 8

*Allianz Ins. Co. v. Lerner*,
    416 F.3d 109 (2d Cir. 2005)............................................................................................. 6

*Atwater & Co. v. Panama R.R. Co.*,
    246 N.Y. 519 (1927)......................................................................................................... 7

*Deutsche Lufthansa AG v. Boeing Co.*,
    No. 06 CV 7667, 2007 WL 403301 (S.D.N.Y. Feb. 2, 2007) (Sand, J.)............................ 16

*Dyncorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) (Hellerstein, J.)...................................................... 16

*Frontier Telephone of Rochester, Inc. v. USA Datanet Corp.*,
    386 F. Supp. 2d 144 (W.D.N.Y. 2005)............................................................................. 2

*Global NAPS, Inc. v. Verizon New England, Inc.*,
    454 F.3d 91 (2d Cir. 2006)............................................................................................... 2

*Hoyt v. Andreucii*,
    433 F.3d 320 (2d Cir. 2006)............................................................................................. 13

*In re Lipper Holdings, LLC*,
    766 N.Y.S.2d 561 (2003)............................................................................................12, 17

*Kalisch-Jarcho, Inc. v. City of New York*,
    58 N.Y.2d 377 (1983)..................................................................................................14, 15

*Krape v. PDK Labs, Inc.*,
    826 N.Y.S.2d 340 (2006)................................................................................................. 8

*Lucente v. Int'l Bus. Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002)............................................................................................. 7

*Met. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430 (1994)...................................................................................................... 13

*Net2Globe International, Inc. v. Time Warner Telecom of New York*,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003) (Marrero, J.).......................................................... 17

*Palmieri v. Allstate Ins. Co.*,
    445 F.3d 179 (2d Cir. 2006) ................................................................ 6

*Reiss v. Fin. Performance Corp.*,
    97 N.Y.2d 195 (2001) ...................................................................... 13

*Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*,
    391 F.3d 77 (2d Cir. 2004) ............................................................... 13

*South Road Assocs., LLC v. Int'l Bus. Machs. Corp.*,
    4 N.Y.3d 272 (2005) ....................................................................... 11

*W.W.W. Assocs., Inc. v. Giancontierri*,
    77 N.Y.2d 157 (1990) ................................................................. 7, 10

Plaintiff Global IP Solutions, Inc. ("GIPS") respectfully submits this memorandum of law in opposition to Defendant Deltathree, Inc.'s ("Deltathree's") Motion for Partial Summary Judgment ("Motion").

## I.  INTRODUCTION

According to Deltathree, even if, as alleged, it substantially underpaid the royalties it owed to GIPS under the parties' OEM License and Distribution Agreement (the "Agreement"), its liability is capped at what it had under-paid GIPS up to that point.  This argument – that a sophisticated licensor intended to be bound by a contract that permitted its licensee not to pay it – makes no sense.  However, focusing on Section 13.2 of the Agreement, Deltathree argues just that.  When the Agreement is read as a whole – as it must under established canons of contract interpretation – it is far from clear that the parties intended the limitation of liability Deltathree now advocates.  Stated another way, the Agreement is ambiguous.

For this reason, it is appropriate to consider extrinsic evidence to determine the parties' intent.  Because Deltathree submitted no extrinsic evidence in support of its interpretation of the Agreement and GIPS has submitted evidence that the limitation on liability was not intended to apply to a failure to pay royalties, there is a genuine issue of material fact making summary judgment inappropriate.  Deltathree's Motion, therefore, should be denied.

## II.  FACTUAL BACKGROUND

**A.      The Parties**

1.      Plaintiff Global IP Solutions, Inc.

Plaintiff Global IP Solutions, Inc. ("GIPS") specializes in VoIP technology.[1]  VoIP is shorthand for Voice over Internet Protocol, which, among other things, allows customers to

---

[1] *See* Plaintiff's Local Rule 56.1(b) Statement in Opposition to Deltathree Inc.'s Motion for Partial Summary Judgment  ("56.1 Opposition") Response ¶ 4.

1

make voice telephone calls via their computers.[2]  "As the name implies, VoIP communications are sent at least partially over the internet."[3]

    2.    <u>Defendant deltathree, Inc.</u>

Deltathree "provides integrated . . . [VoIP] telephony services, products, hosted solutions, and infrastructure."[4]  "One of the products Deltathree offers is the ability to make phone calls from a customer's personal computer to a telephone, known as PC-to-Phone connectivity.  This product is called a 'Softphone.'"[5]

## B.    The Agreement

In late June 2005, Deltathree contacted GIPS by email to ask about GIPS's software offerings.[6]  Less than two months later, on or about August 19, 2005, GIPS and Deltathree entered into a contract, which the parties refer to as the "Agreement."[7]  The term of the Agreement was for three years "unless extended or earlier terminated pursuant to [] Article 14."[8]  For this three year term, GIPS granted Deltathree a license to use GIPS's software in Deltathree's Softphone and, in return, Deltathree agreed to accurately report and pay royalties to GIPS.[9]

Among the specific royalty-related promises Deltathree made under the Agreement was that within 30 days after the end of each calendar quarter, it would accurately report to GIPS "the number of Royalty Events."[10]  The Agreement defines Royalty Event as "new 'Incremental Active User,'"[11] which, in turn, is defined as "the total number of additional users in said quarter

---

[2] *Global NAPS, Inc. v. Verizon New England, Inc.*, 454 F.3d 91, 101 n.8 (2d Cir. 2006).
[3] *Frontier Telephone of Rochester, Inc. v. USA Datanet Corp.*, 386 F. Supp. 2d 144, 145 (W.D.N.Y. 2005).
[4] Plaintiff's Local Rule 56.1(b) Statement in Opposition to Deltathree Inc.'s Motion for Partial Summary Judgment ("56.1 Opposition") Response ¶ 1.
[5] 56.1 Opposition Response ¶ 2.
[6] *See* 56.1 Opposition Statement ¶ 15.
[7] *See* 56.1 Opposition Response ¶ 4 & Declaration of Shimmy Zimels ("Zimels Decl."), Doc. 19 Decl. Ex. A.
[8] *See* 56.1 Opposition Response ¶ 20 & Zimels Decl. Ex. A § 14.1.
[9] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A.
[10] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A § 9.1.
[11] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A § 1.

that have made an outbound call compared to the total number of users in the prior quarter."[12] Deltathree also promised that within 30 days after the end of each calendar quarter, it would accurately report to GIPS "the Royalties owing to GIPS,"[13] and "remit Royalty payments to GIPS for each Royalty Event during the quarter."[14]

## C.    How And When Section 13.2 Became "Reciprocal."

During the negotiation process, the parties' representatives negotiated over various terms in the Agreement. Section 13.2, however, was not one of them.[15] In fact, through and including the time GIPS transmitted to Deltathree its final edits to the Agreement, Section 13.2 was not reciprocal.[16] Although Deltathree changed the language of Section 13.2 to, among other things, make it reciprocal, these changes were not flagged to GIPS.[17] Because the changes Serban did flag to Zeichick were acceptable to Abbati, after discussing them with Zeichick, Abbati accepted Deltathree's version of the Agreement.[18] By the end of the day on August 19, 2005, the Agreement – with reciprocal language in Section 13.2 – was dually executed.[19] At no time was Zimels involved in the negotiation of the Agreement.[20]

## D.    The Dispute Underlying This Lawsuit

By the end of the first quarter of 2007, GIPS began to suspect that Deltathree was under-reporting Royalty Events and under-paying royalties.[21] When Deltathree submitted its fourth quarter 2006 royalty data to GIPS, the data illustrated that Deltathree was dividing its number of

---

[12] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A Appendix C, Section C.2(B).
[13] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A § 9.1.
[14] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A Appendix C, Section C.2(B).
[15] *See* 56.1 Opposition Response ¶ 11; *id.* Statement ¶ 20.
[16] *See* 56.1 Opposition Response ¶ 11; *id.* Statement ¶ 20.
[17] *See* Zeichick Decl. ¶¶ 9-11.
[18] *See* Declaration of Edward Abbati in Support of Plaintiff's Motion to Strike Shimy Zimels' Declaration and of Plaintiff's Opposition to Defendant Deltathree, Inc.'s Motion for Partial Summary Judgment ("Abbati Decl.") ¶ 8.
[19] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A  (last page).
[20] *See* 56.1 Opposition Response ¶ 11; *id.* Statement ¶ 18.
[21] *See* Abbati Decl. ¶ 11.

users (or at least certain categories of users) by 10.[22]   The data also revealed Deltathree was reporting quarterly averages not quarterly totals.[23]   By reviewing what Deltathree publicly reported to the Securities and Exchange Commission, GIPS saw that while Deltathree reported approximately 25,000 Royalty Events through the end of 2006,[24] Deltathree was reporting to the public that its number of users was increasing by hundreds of thousands each quarter.[25]   After being confronted, Deltathree admitted it was calculating Royalty Events (and paying royalties) based on a number of users calculated using ratios and averages,[26] not the "total number of additional users in [the] quarter."   When GIPS pressed Deltathree about this discrepancy, Deltathree completely stopped reporting Royalty Events and paying royalties.[27]   Although Deltathree's Softphone continued to use GIPS software during January through November 2007, *i.e.*, four quarters, Deltathree did not pay GIPS a dime.[28]   Nor did it pay royalties for the second quarter of 2006.[29]   And until GIPS demanded an audit – which was its contractual right under the Agreement – Deltathree did not report to GIPS any Royalty Events for calendar year 2007.[30]

## E.    Deltathree's Court-Ordered Weekly Reporting

At the initial hearing on GIPS's Complaint and Order to Show Cause on August 28, 2007, the Court ordered the parties to discuss "the content of a weekly reporting requirement as to newly enrolled customers" that Deltathree would submit to GIPS while GIPS's request for a preliminary injunction was being briefed.[31]   Shortly thereafter, the parties agreed that each week, Deltathree would report, among other things, the number of new accounts using GIPS's

---

[22] *See* 56.1 Opposition Statement ¶ 25.
[23] *See* 56.1 Opposition Statement ¶ 25.
[24] *See* 56.1 Opposition Statement ¶ 24.
[25] *See* Abbati Decl. ¶ 11.
[26] *See* 56.1 Opposition Statement ¶ 25.
[27] *See* Abbati Decl. ¶¶ 9 & 14.
[28] See Abbati Decl. ¶ 9.
[29] *See* Abbati Decl. ¶ 9; *see also* Zimels Decl. Ex. C.
[30] *See* Abbati Decl. ¶¶ 9 & 14.
[31] *See* Declaration of Jonathan M. Cohen in Support of Plaintiff's Motion to Strike Shimy Zimels' Declaration and of Plaintiff's Opposition to Defendant Deltathree, Inc.'s Motion for Partial Summary Judgment ("Cohen Decl.") Ex. A (Aug. 28, 2007 Order) at 2.

software.[32]  From August 27, 2007 until November 5, 2007, Deltathree reported that the number of its new accounts using GIPS's software was approximately 170,000.[33]  Of this number, over half of the new accounts were reported for the third quarter of 2007.[34]

### F. Termination Of The Agreement And Transition Of Deltathree Accountholders Away From GIPS Software.

With a letter dated July 19, 2007, GIPS notified Deltathree that it was terminating the Agreement pursuant to Section 14.4 of the Agreement and that the termination date would be July 31, 2007.[35]  As required by Section 14.4, GIPS specifically identified Deltathree's various breaches of the Agreement – including its failure to provide accurate royalty reports and its failure to accurately pay royalties.[36]  Deltathree responded via letter, which was dated July 25, 2007.  Although it purported to have completely cured the identified breaches, Deltathree admitted that the parties still were calculating the number of new Incremental Active Users differently.[37]  By maintaining its position that using ratios and averages to calculate the total number of additional users in the quarter, Deltathree remained in breach of the Agreement on July 31, 2007.  Therefore, the Agreement terminated.

Although the Agreement terminated on July 31, 2007, Deltathree still allowed its account holders to use GIPS's software.  Deltathree did not disable account-holder access to GIPS's software until the parties entered into the Stipulation Regarding Preliminary Injunction and Order (Doc. 14).[38]  As set forth in this Stipulation, Deltathree completely disabled its account holders' access to GIPS's software as of 11:59 p.m. November 5, 2007.

---

[32] *See* Cohen Decl. Ex. B (Aug. 29, 2007 Letter, File-Endorsed Aug. 30, 2007).
[33] *See* Cohen Decl. ¶ 5.
[34] *See*  56.1 Opposition Statement ¶ 27.
[35] 56.1 Opposition Response ¶ 13 & Zimels Decl. Ex. D.
[36] *See* 56.1 Opposition Response ¶ 13 & Zimels Decl. Ex. D.
[37] *See* 56.1 Opposition Response ¶ 14 & Zimels Decl. Ex. E ("You have expressed to us that you have an interpretation different then [sic] our position of how to determine incremental active users.  We understand that we both have a difference of opinion . . . .").
[38] *See also* Cohen Decl. ¶ 5.

**G.    Deltathree's Motion for Partial Summary Judgment**

Deltathree filed its Motion for Partial Summary Judgment (the "Motion") on February 6, 2008.  In its Motion, Deltathree argues that the Agreement unambiguously sets forth that the parties agreed that even if Deltathree it failed to report and pay royalties (as it did for four quarters) – and even if GIPS is correct that Deltathree under-reported Royalty Events and under-paid royalties – (1) Deltathree's liability should be limited to what it previously paid GIPS – $111,350; and (2) if Deltathree tenders $111,350 to GIPS, the case will be over.  As discussed below, Deltathree is wrong.

## III.  LEGAL STANDARD

Where, as here, the contractual provision raised by a motion for summary judgment is ambiguous and subject to varying reasonable interpretations, the parties' intent is an issue of fact, and, therefore, the motion should be denied.  *See Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005) ("A contractual ambiguity generally renders summary judgment inappropriate in a breach of contract action.")

## IV.  ARGUMENT

Ultimately, Deltathree's Motion is an end-run around the issue that is the heart of this case – namely whether Deltathree failed to pay royalties in certain circumstances and, when it actually paid royalties, whether it substantially underpaid them.  By arguing that the Court should simply "rule that GIPS's total potential recovery in this case is limited to $111,350," Memorandum of Law in Support of Deltathree's Motion for Partial Summary Judgment ("Mem.") at 13, Deltathree is taking the position that this issue is irrelevant to this case.  Deltathree's position, however, relies entirely on reading a single provision of the Agreement, Section 13.2, in isolation and contrary to the intent of at least one of the parties to the Agreement.  When the Agreement is read as a whole, Section 13.2 is far from unambiguous,

which renders summary judgment inappropriate – especially where Deltathree has submitted no extrinsic evidence to support its interpretation of the Agreement and GIPS has submitted evidence showing the Deltathree's interpretation is not what the parties intended. Moreover, even if Deltathree's interpretation of the Agreement were correct, there is a genuine question as to whether insulating Deltathree's conduct from liability violates established New York public policy. Therefore, the Motion should be denied.

## A.    Deltathree's Motion Should Be Denied Because It Advocates Interpreting Section 13.2 In Isolation.

According to Deltathree, the analysis of its Motion begins and ends with Section 13.2 of the Agreement. *See* Mem. at 10 ("there is absolutely nothing ambiguous about the limitation of liability in Section 13.2 of the Agreement"); *id.* at 1 ("Deltathree simply seeks this Court's ruling that [Section 13.2] is enforceable"). To determine whether a contract is ambiguous, however, the focus is not simply on a single provision therein. Rather, a court must read the contract as a whole to determine the contract's purpose and the parties' intent. *See W.W.W. Assocs., Inc. v. Giancontierri*, 77 N.Y.2d 157, 162-63 (1990); *see also Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519, 524 (1927) ("Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby."). Because Deltathree's argument ignores this basic canon of contract interpretation, the Motion should be denied.

## B.    Deltathree's Motion Should Be Denied Because Section 13.2 Is Ambiguous.

"Ascertaining whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 257 (2d Cir. 2002). "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Id.* (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt.*

*Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993)); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005) ("Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.'"). As discussed below, when examined by itself or when the Agreement is reviewed as a whole, the language of Section 13.2 is capable of more than one meaning. Therefore, Section 13.2 is ambiguous and extrinsic evidence must be considered, giving rise to triable issues of material fact. As such, Deltathree's Motion must be denied.

1. <u>Even when read in isolation, the Disputed Provision – Section 13.2 – is ambiguous.</u>

Section 13.2 of the Agreement provides as follows:

> EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER SECTIONS 12.1 OR 12.3, AS APPLICABLE, IN NO EVENT DOES GIPS'S OR DELTATHREE'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR FOR BREACH OF THIS AGREEMENT, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR ANY OTHER LEGAL THEORY, EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT.

Section 13.2. Although when read in isolation for the firs time, a provision – such as Section 13.2 – can appear broadly worded, a court must take care to apply facially broad language only "to the particular occasion and to the particular object which the parties had in view." *See Krape v. PDK Labs, Inc.*, 826 N.Y.S.2d 340, 342-43 (2006).

Without extension, the term of the Agreement was three years.[39] And for these three years, Deltathree agreed (among other things) that "within 30 days after the end of each quarter," it would "remit Royalty payments to GIPS for each Royalty Event during the quarter."[40] Under Deltathree's reading of Section 13.2, however, at any time during the three-year term of the

---

[39] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A § 14.1.
[40] *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A Appendix C, C.2(B).

Agreement, it could stop paying royalty payments to GIPS yet continue to use GIPS's software for the remaining term of the Agreement. And Deltathree goes so far as to say the parties agreed that even if GIPS were to terminate the Agreement for breach, Deltathree could continue using GIPS's software for one full year thereafter. *See* Mem. at 16. The plain language of Section 13.2, however, does not unambiguously permit this.

In an attempt to claim that it does, Deltathree sets up a straw argument and knocks it down, *i.e.*, that it could never have limited its liability to zero because the Agreement "requires the up-front payments for the software platform, advance royalties, and pre-payment for support services." Mem. at 12. While Deltathree is not arguing that for zero liability, it is arguing for a substantial bargain – that the Court should "rule that GIPS's total potential recovery in this case is limited to $111,350." Mem. at 13. As illustrated by the data the Court ordered Deltathree to provide to GIPS, during the third quarter of 2007 there were approximately 84,000 new accounts using GIPS's software.[41] If each of these new account holders also made a call during that quarter, GIPS's position would be that Deltathree owes it $84,000 for the third quarter of 2007.[42] And, as Deltathree acknowledges, "GIPS is seeking $1 million in damages." Mem. at 7. Given the third quarter 2007 data and GIPS's initial damages estimate, that Deltathree is not asking to pay nothing appears to be what it is – a red herring.

This example highlights a further ambiguity – Section 13.2 is not clear about the parties intent as to how or when to calculate "THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS." Deltathree reads this provision to mean that even if it underpaid royalties, its liability is limited to the total amount of money it paid to GIPS. Deltathree also reads this provision as continuing in force even if there is a breach of the Agreement. An equally reasonable

---

[41] *See* 56.1 Opposition Statement ¶ 27.
[42] *See* 56.1 Opposition Statement ¶ 28. As GIPS understands Deltathree's position, it owes (at most) $1.00 in royalties for the third quarter of 2007. *See id.* ¶ 29.

construction of Section 13.2, however, is that it would not remain in force if the Agreement terminated because of breach. It also is an equally reasonable construction of Section 13.2 that even if the Agreement remained in force, because Deltathree was misusing GIPS's software, *i.e.*, using it without paying for it, the parties did not intend to immunize Deltathree in the manner Deltathree advocates. If that is the case, then the total amount owed should be measured as what Deltathree should have paid under the Agreement. Because there are multiple interpretations of the Agreement that are equally reasonable, Section 13.2 is ambiguous.

Adding to Section 13.2's ambiguity is the fact that its terms expressly cross-reference other provisions of the Agreement. Specifically, it exempts from its reach the "INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER SECTIONS 12.1 OR 12.3, AS APPLICABLE . . . ." Section 12.3 sets forth:

> Licensee <u>shall indemnify</u>, defend, and hold GIPS and its officers, directors, employees and agents harmless from and against any liabilities, damages, judgments, losses, costs, and expenses (including reasonable attorneys' fees) <u>arising out of Licensee's</u>, Sublicensee's or Distributor's <u>use</u>, marketing or sale of the GIPS Integrated Program or the Combined Products <u>in a manner inconsistent with the terms and conditions of this Agreement</u>.

Emphases added.[43] From the plain language of Section 12.3, it appears that the parties agreed that Deltathree would be liable for damages, losses, costs, and expenses (including reasonable attorneys' fees) if Deltathree improperly used GIPS's software. Part of the dispute before this Court is whether Deltathree improperly used GIPS's software after the Agreement was terminated (if not before). Therefore, when read with in conjunction with Section 12.3, Section 13.2 is ambiguous.

    2.    <u>When the Agreement is read as a whole, Section 13.2 is ambiguous.</u>

As noted above, and as set forth in the cases Deltathree cites, to evaluate Deltathree's reading of Section 13.2, the Agreement must reviewed as a whole. *See W.W.W. Assocs., Inc. v.*

---

[43] *See* 56.1 Opposition ¶ 4 & Zimels Ex. A § 12.3.

*Giancontierri*, 77 N.Y.2d 157, 162-63 (1990).  It is important to read the Agreement as a whole "to ensure that excessive emphasis is not placed upon particular words or phrases." *South Road Assocs., LLC v. Int'l Bus. Machs. Corp.*, 4 N.Y.3d 272, 277 (2005).

a.    *Section 13.1 illustrates that Section 13.2 is ambiguous.*

When Section 13.2 is juxtaposed against Section 13.1, whether the parties intended for the Agreement to allow Deltathree to not pay (or underpay) royalties with virtual impunity is ambiguous.  Under the plain language of Section 13.1, the parties agreed that although for the most part, they could not sue each other for certain types of damages, they agreed that GIPS would retain the right to seek indirect, consequential, and punitive damages if Deltathree misappropriated or infringed GIPS's intellectual property:

> EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER SECTIONS 12.1 OR 12.3, AS APPLICABLE, <u>OR CLAIMS BY GIPS RELATING TO MISAPPROPRIATION OR INFRINGEMENT OF ITS INTELLECTUAL PROPERTY BY LICENSEE</u>, NEITHER PARTY IS LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES OF ANY KIND (INCLUDING BUT NOT LIMITED TO LOST PROFITS) RELATING TO THIS AGREEMENT OR THE USE OR PERFORMANCE OF THE GIPS SOFTWARE, GIPS APIs, GIPS INTEGRATED PROGRAMS, GIPS NETWORK SIMULATOR, GIPS WORKBENCH COMBINED PRODUCTS, DOCUMENTATION, SUPPORT MATERIALS, OR THE PROVISION OF SERVICES, REGARDLESS OF THE THEORY OF LIABILITY.

Section 13.1 (emphasis added).[44]  While acknowledging that Section 13.1 "expressly carves out IP infringement claims from the exclusion of indirect, consequential, and punitive damages," Mem. at 11, Deltathree does not attempt to reconcile this with the purported limitation of liability in Section 13.2.  Rather, Deltathree claims that because Section 13.2 "contains no such carve-out," this "demostrat[es] that even infringement claims are within the ambit of the liability cap." *Id.*  It makes no sense, however, for the parties to agree in Section 13.1 that if Deltathree misappropriated and/or infringed GIPS's intellectual property the Agreement's damages

---

[44] In addition to Section 13.1, there are other provisions of the Agreement reserve remedies for GIPS.  *See* 56.1 Opposition Response ¶ 4 & Zimels Decl. Ex. A § 8.3 ("In addition to any remedies GIPS may have hereunder or a law [sic], any payments more than thirty (30) days overdue will bear a late payment fee of 1.5% per month commencing from the payment due date.").

limitations would not apply and then in Section 13.2, effectively eviscerate Section 13.1 by limiting Deltathree's liability to the amount of money it paid GIPS. And Deltathree's glib assertion that "there is no question that the limitation of liability applies equally to GIPS's copyright-infringement claim," Mem. at 11, does not rehabilitate its argument. To the contrary, the language in Section 13.1 raises a triable issue of fact as to whether or not the limitation on liability could ever attach to GIPS's copyright claim as well as its claim that Deltathree misused GIPS's intellectual property by using GIPS's software without paying royalties.

      b.    *The various royalty provisions in the Agreement illustrate that Section 13.2 is ambiguous.*

As discussed above, the Agreement explicitly lays out Deltathree's responsibilities with respect to reporting and payment of royalties. Whether a Royalty Event occurred was within the exclusive knowledge of Deltathree. Therefore, GIPS had to rely on Deltathree to adhere to what it promised to do in the Agreement – that within 30 days after the end of each calendar quarter, it would accurately report to GIPS the total number of Royalty Events and would remit to GIPS $1.00 for each such event. Given that under the plain language of the royalty provisions, GIPS had to rely on accurate royalty reporting by Deltathree, it makes no sense for GIPS to turn around in another provision of the Agreement to, in effect, immunize Deltathree from liability for inaccurate royalty reporting.

      c.    *Holding that Section 13.2 is unambiguous would violate well-established canons of contract interpretation.*

It is axiomatic that a contract "should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (2003) (citations omitted). Yet this is exactly what Deltathree is asking the Court to do. That is, Deltathree is asking the Court to sanction an interpretation of the Agreement that would allow Deltathree to willfully breach the Agreement with impunity. As illustrated by GIPS's evidence, this is contrary to how GIPS expected the

Agreement would be read.[45]  In addition, allowing Deltathree to escape liability from the estimated $1 million in damages simply because it already paid GIPS $111,350 also would be commercially unreasonable.  And the idea that a sophisticated licensor would agree to limit its licensee's liability to whatever the licensee decided to pay it is absurd.[46]  Deltathree has introduced no evidence that suggests the contrary.

Further, the effect of Deltathree's argument is to ask the Court to read the Agreement so that GIPS is at a disadvantage.  Deltathree, however, has introduced no evidence that this was the parties' intent, and a court "should not assume that one party intended to be placed at the mercy of the other." *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 201 (2001).  Indeed, contractual language "placing one party at the mercy of the other is not favored by the courts."  *Met. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994).  For these additional reasons, the Motion should be denied.

3.    <u>There is a genuine issue of material fact as to the parties' intent and, therefore, summary judgment is inappropriate.</u>

As illustrated above, the language of Section 13.2 is ambiguous.  To determine its meaning, therefore, extrinsic evidence is considered.  *See Hoyt v. Andreucii*, 433 F.3d 320, 332 (2d Cir. 2006).  Deltathree, however, submits no extrinsic evidence in support of its position about the intent of the parties.  *See* Mem. at 12 n.2 (claiming that "the Court need not advert to parol evidence").[47]  This alone defeats Deltathree's Motion.  *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) ("[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment

---

[45] *See* 56.1 Opposition Statement ¶ 24.
[46] According to Deltathree, GIPS "cannot argue that the plain meaning of the limitation of liability is so absurd as to be unenforceable; far from absurd, the limitation is entirely reasonable." Mem. at 12.  It makes this claim because "that is the bargain Deltathree and GIPS made." *Id.*  As discussed herein, there is a genuine issue of material fact as to whether the limitation of liability Deltathree proposes is the bargain that GIPS made.
[47] To the extent Deltathree submits additional evidence with its reply brief, GIPS reserves the right to review whether it needs additional discovery to oppose the motion. *See* Fed. R. Civ. P. 56(f).

must be denied *even if no opposing evidentiary matter is presented*") (quoting and adding brackets and emphasis to *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)).

Further, as illustrated by the evidence submitted by GIPS in support of this Opposition, there are genuine issues of material fact. For example, according to both Zeichick and Abbati, it was never GIPS's intent to limit Deltathree's actual damages to the amount Deltathree had already paid it – especially when Deltathree underreported and underpaid royalties.[48] Moreover, Deltathree ignores the issue at the crux of this case – whether it was properly reporting and paying royalties. And there is evidence that it was not.[49] According to the mandatory reporting ordered by the Court, Deltathree informed GIPS that during the third quarter of 2007, there were almost 84,000 new accounts using GIPS's software.[50] And although there were almost 84,000 new accounts using GIPS's software, Deltathree essentially calculated and reported only 1 Royalty Event for that same period.[51] If each of these new account holders made his/her first call during the third quarter of 2007, Deltathree would owe GIPS $84,000 under the Agreement.[52] While it is possible that some of these new account holders signed up for an account but did not make their first calls during the third quarter of 2007, it strains credulity to assert that only one of these new account holders did. Therefore, granting summary judgment to Deltathree would be inappropriate.

**C.    Even If The Agreement Unambiguously Granted Deltathree Immunity For Its Failure to Pay Royalties, Section 13.2 Would Be Unenforceable.**

Perhaps recognizing that even if it were right, its position would be fundamentally flawed as violative of public policy, Deltathree spends almost a fifth of its brief anticipating and attempting to refute the public policy reasons its position is untenable. *See* Mem. at 13-19. First,

---

[48] *See* Zeichick Decl. ¶ 15; *see also* Abbati Decl. ¶ 8.
[49] *See* Abbati Decl. ¶¶ 11-12.
[50] *See* Cohen Decl. ¶ 5.
[51] *See* Cohen Decl. ¶ 6.
[52] *See* Abbati Decl. ¶ 15.

and as discussed above, the Court need not even reach this issue. Second, and as Deltathree recognizes, enforcement of contractual clauses that limit the contracting parties' liability is not without limits. "Under announced public policy, [an exculpatory agreement] will not apply to exemption of <u>willful or grossly negligent acts</u>." *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-85 (1983) (emphasis added). Similarly, "an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, <u>the misconduct for which it would grant immunity smacks of intentional wrongdoing</u>." *Id.* at 385 (emphasis added).

1. <u>There is a genuine issue of fact as to whether Deltathree's alleged conduct rises to the level of conduct that has been held to violate public policy.</u>

Deltathree contends that "there is no genuine issue that GIPS cannot produce a 'compelling demonstration' that Deltathree is guilty of 'egregious intentional misbehavior evincing extreme culpability.'" Mem. at 19. Deltathree is wrong. As both parties have recognized, the heart of this case is which party is properly calculating Royalty Events.[53] As detailed above, during the third quarter of 2007 (and based on the reports provided pursuant to court order), Deltathree had around 84,000 new accounts using GIPS's software yet, during that same period, Deltathree essentially reported only 1 Royalty Event.[54] Given this disparity, if GIPS's interpretation of how to calculate royalties is correct, GIPS could well show that Deltathree's actions are exactly the type that the New York public policy addresses.

2. <u>Deltathree's "good-faith" argument rests on another ambiguous provision of the Agreement as to which there are genuine issues of material fact as to the parties' intent.</u>

Although Deltathree purports to have evidence of its own "good faith," its good-faith argument is contingent on its interpretation of another Section of the Agreement that is disputed – Section 14.5. *See* Mem. at 16 (recognizing that the interpretation of Section 14.5 is disputed).

---

[53] Deltathree itself has identified this as the key issue underlying the instant dispute. *See* 56.1 Opposition ¶ 14 & Zimels Decl. Ex. E ("You have expressed to us that you have an interpretation different then [sic] our position of how to determine incremental active users. We understand that we both have a difference of opinion . . . .").
[54] *See* Cohen Decl. ¶¶ 5-6.

Deltathree reads Section 14.5 to set forth the parties' intent that even if GIPS were to terminate the Agreement for breach, Deltathree could continue using GIPS's software for one full year thereafter. *See id.* at 16. Armed with this reading of Section 14.5, Deltathree contends that it "definitively displayed its good faith by expeditiously finding a substitute software provider, consenting to the preliminary injunction, and discontinuing use of GIPS's software." *Id.* at 17. When read in the context of the whole Agreement, however, Section 14.5 does not unambiguously set forth that the parties intended to allow Deltathree to use GIPS's software for a full year after GIPS terminated the Agreement for Deltathree's breach. As explained in detail in GIPS's October 9, 2007 letter brief to the Court, Deltathree is trying to take advantage of a typographical error in Section 14.5 to advocate an interpretation of the Agreement that is commercially unreasonable. And, in any event, to the extent that Deltathree has been exhibiting "good faith," said good faith only was demonstrated after Deltathree used GIPS's software for free from January 1, 2007 through and including November 5, 2007 – and when Deltathree was faced with an impending preliminary injunction hearing and imminent discovery deadlines (and, as illustrated by Deltathree's recent filings, it is trying at all costs to avoid discovery).

3.    <u>The cases on which Deltathree relies are not on point.</u>

According to Deltathree, "two decisions of this Court . . . reinforce that no further discovery is necessary here to grant partial summary judgment for Deltathree." Mem. at 17. In *Deutsche Lufthansa AG v. Boeing Co.*, No. 06 CV 7667, 2007 WL 403301 (S.D.N.Y. Feb. 2, 2007) (Sand, J.), however, the defendant's motion to dismiss was granted in part because the plaintiff made "no allegations that [the defendant] engaged in any malicious behavior, any series of callous acts, or intentional wrongdoing." *Id.* at *3. Here, in contrast, GIPS has alleged intentional wrongdoing by Deltathree, *i.e.*, intentionally failing to pay and underpaying royalties (among other things).

*Dyncorp v. GTE Corp.*, 215 F. Supp. 2d 308 (S.D.N.Y. 2002) (Hellerstein, J.), is also inapposite. At issue in *Dynacorp* were contractual provisions that expressly "limited potential recoveries" to actual damages within a certain range. *See id.* at 312-13. The plaintiff, however, sought to recover compensatory damages well beyond the range set forth in the contract, as well as an unspecified dollar amount of punitive damages for breach of contract. The language at issue in *Dynacorp* is nothing like the language in Section 13.2, nor is Dynacorp factually similar to this case. As discussed at length above, Section 13.2 is ambiguous and Deltathree does not even attempt to reconcile it ambiguities. *Dynacorp*, therefore, is of limited, if any use, in interpreting Section 13.2.[55]

## V. CONCLUSION

As discussed above, when the Agreement is viewed as a whole, whether the parties intended Section 13.2 to immunize Deltathree from actual damages if it failed to pay royalties to GIPS is ambiguous. To hold otherwise would violate various canons of contract interpretation including that a contract "should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (2003) (citations omitted). When a contract is ambiguous, granting summary judgment is not appropriate especially when evidence has been presented that there is a genuine issue of material fact as to the parties' intent. Where there is an issue of material fact, summary judgment cannot be granted. Furthermore, even if Deltathree were correct – which it is not – Section 13.2 would violate public policy and be void. For these

---

[55] *Net2Globe International, Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436 (S.D.N.Y. 2003) (Marrero, J.), similarly is inapt. At issue in *Net2Globe* was a limitation of liability clause that barred "incidental, indirect, special, or consequential damages (including lost revenue or profits) of any kind whatsoever." *Id.* at 449. Although the plaintiff identified no basis for claiming actual damages, it nonetheless filed a complaint against the defendant seeking consequential damages in the form of lost profits. *See id.* Unlike the language in the contract considered by *Net2Globe*, the language in the Agreement does not directly address the situation at hand – whether Deltathree is immunized from liability if it fails to pay (or underpays) royalties.

reasons, and as discussed herein, Deltathree's Motion for Partial Summary Judgment should be

denied.

Dated: New York, New York
       February 29, 2008

                                        Respectfully Submitted,

                                        WINSTON & STRAWN LLP


                                        /s/ Krista Enns_____

                            By:    Luke A. Connelly, Esq.
                                   Edward C. Wipper, Esq.
                                   WINSTON & STRAWN LLP
                                   200 Park Avenue
                                   New York, NY 10166-4193
                                   Telephone:    (212) 294-6700
                                   Facsimile:    (212) 294-4700


                                   Jonathan M. Cohen, Esq.
                                   *Admitted pro hac vice*
                                   Krista M. Enns, Esq.
                                   *Admitted pro hac vice*
                                   WINSTON & STRAWN LLP
                                   101 California Street, Suite 3900
                                   San Francisco, CA  94111-5894
                                   *Attorneys for Plaintiff Global IP Solutions,*
                                   *Inc.*