Luke A. Connelly, Esq.
Edward C. Wipper, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jonathan M. Cohen (admitted *pro hac vice*)
Krista M. Enns (admitted *pro hac vice*)
101 California Street, Suite 3900
San Francisco, California 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Plaintiff Global IP Solutions, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

GLOBAL IP SOLUTIONS, INC.                             :   07 CV 7631 (RJH)
                                                      :
                            Plaintiff,                :
                                                      :
            -against-                                 :
                                                      :
DELTATHREE, INC.                                      :
                                                      :
                            Defendant.                :
------------------------------------------------------------------ X

**DECLARATION OF EDWARD ABBATI IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE SHIMY ZIMELS'S DECLARATION AND OF
PLAINTIFF'S OPPOSITION TO DEFENDANT DELTATHREE, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

I, Edward Abbati, declare the following:

1. I am employed by Global IP Solutions, Inc. ("GIPS") as Executive Vice President Operations. I have been with GIPS for over seven (7) years and before serving as Executive Vice President Operations, I was GIPS's Chief Financial Officer. I have personal knowledge of the facts set forth below, and if called upon to testify, I could and would competently testify to them. I make this declaration in support of GIPS's Opposition to deltathree, Inc.'s ("Deltathree's") Motion for Partial Summary Judgment and in support of GIPS's Motion to Strike Shimmy Zimels's Declaration or, in the Alternative, Disregard It.

2. When the parties were negotiating of the "OEM Licensing and Distribution Agreement" ("Agreement"), Jeffrey Zeichick was GIPS's point of contact with Deltathree.

3. I reviewed and edited the various drafts of the Agreement but I always sent my drafts to Zeichick who then transmitted and discussed those drafts to Deltathree.

4. I have read Mr. Zimels's declaration and have reviewed the document he attached as Exhibit B. Exhibit B is a draft of the Agreement that I sent to Zeichick the day before the Agreement was signed.

5. On August 19, 2005, Zeichick called me to discuss changes to the Agreement proposed by Deltathree, specifically by Eugene Serban.

6. During this call, Zeichick did not mention Section 13.2.

7. After reviewing the proposed changes Zeichick did mention, I approved them, which finalized the Agreement.

8. It was never GIPS's intent that the Agreement's limitation of liability section would shield Deltathree from liability for failure to properly report and pay royalties.

9. Until GIPS invoked its audit rights under the Agreement, Deltathree did not submit to GIPS any royalty data or a royalty check for the second quarter of 2006 or any quarter in 2007. Deltathree still has not remitted royalty payments for any of these quarters.

10. Although Deltathree did not contemporaneously report royalty data or remit royalty checks to GIPS for many of the quarters that the Agreement was in force, by the close of the first quarter of 2007, signs began to emerge that Deltathree was underreporting royalty data and, therefore, underpaying royalties owed.

11. According to information Deltathree publicly reported to the SEC, between July 1, 2006 and March 31, 2007, its number of users increased by almost 200,000. In addition, Deltathree sent GIPS a detailed royalty report that illustrated Deltathree was dividing its number of users (or at least certain categories of users) by 10 and then providing GIPS with a quarterly average instead of the quarterly total.

12. For calendar years 2005 and 2006, Deltathree had only paid GIPS approximately $25,000 in royalties.

13. At my direction, after GIPS received the royalty report that illustrated that Deltathree was dividing the number of users by 10 and averaging, Michael Poppler, GIPS's European Sales Director approached Effi Baruch, Deltathree's Senior Vice President, Technology and Operations. During that conversation, Baruch admitted among other things that Deltathree had been reporting a quarterly average number of users not the quarterly total number of users.

14. After this admission, at my direction, GIPS began to press Deltathree for the explanation behind this. As noted above, until GIPS demanded an audit of Deltathree's royalty reporting, Deltathree did not submit to GIPS any royalty data for the second quarter of 2006 or any quarter in 2007.

15. I have reviewed the data Deltathree has reported to GIPS pursuant to this Court's August 2007 order. It is GIPS's position that for new accounts using GIPS's software, Deltathree owes GIPS $1.00 in the quarter that the new account holder made his/her first call.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2008

By: _____
Edward Abbati