Luke A. Connelly, Esq.
Edward C. Wipper, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jonathan M. Cohen (admitted *pro hac vice*)
Krista M. Enns (admitted *pro hac vice*)
101 California Street, Suite 3900
San Francisco, California 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Plaintiff Global IP Solutions, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GLOBAL IP SOLUTIONS, INC. | : | 07 CV 7631 (RJH) |
| Plaintiff, | : | : |
| -against- | : | |
| DELTATHREE, INC. | : | |
| Defendant. | : | |

**PLAINTIFF'S LOCAL RULE 56.1(b) STATEMENT IN OPPOSITION TO DELTATHREE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b), Plaintiff Global IP Solutions, Inc. ("GIPS") submits the following Counter-Statement of Facts in response to Defendant Deltathree's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment, dated February 5, 2008 and filed February 6, 2008. The paragraph numbers herein correspond to the paragraph numbers in Defendant Deltathree's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment unless otherwise indicated:

**Statement No. 1:**

Deltathree is a Delaware corporation, headquartered in New York, which provides integrated Voice Over Internet Protocol ("VoIP") telephony services, products, hosted solutions, and infrastructure. *See* Declaration of Shimmy Zimels dated February 1, 2008 ("Zimels Declaration") ¶ 2.

**Response to Statement No. 1:**

As set forth in Federal Rule of Civil Procedure 56(e), a declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(e). Mr. Zimels, however, does not purport to have personal knowledge about any of the subjects raised by his declaration. Rather, he merely states that he is Deltathree's President and Chief Executive Officer and that his declaration is being submitted in support of Deltathree's Motion for Partial Summary Judgment. GIPS's position is that Statement No. 1 should be stricken or disregarded for this reason. *See also* GIPS's Memorandum of Law in Support of Plaintiff's Motion to Strike Shimmy Zimels' Declaration ("Strike Mem."). However, because this information can be confirmed from reliable outside sources such as SEC filings, GIPS admits Statement No. 1.

**Statement No. 2:**

One of the products Deltathree offers is the ability to make phone calls from a customer's personal computer to a telephone, known as PC-to-Phone connectivity. This product is called a "Softphone." *See* [Zimels Declaration ¶ 2].

**Response to Statement No. 2:**

As set forth in Federal Rule of Civil Procedure 56(e), a declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(e). Mr. Zimels, however, does not purport to have personal knowledge about any of the subjects raised by his declaration. Rather, he merely states that he is Deltathree's President and Chief Executive Officer and that his declaration is being submitted in support of Deltathree's Motion for Partial Summary Judgment. GIPS's position is that Statement No. 2 should be

stricken or disregarded for this reason. *See also* Strike Mem. However, because Mr. Zimels is Deltathree's CEO and he should have personal knowledge about the products his company offers, and this information can be confirmed from reliable outside sources such as SEC filings, GIPS admits Statement No. 2.

**Statement No. 3:**

Global IP Solutions, Inc. ("GIPS") (formerly Global IP Sound, Inc.) is a Delaware corporation with offices in San Francisco, California. GIPS is known for its Digital Signal Processing and IP telephony expertise. GIPS has developed and/or acquired rights to certain software used to improve the sound quality for devices utilized to make VoIP calls. *See* Complaint of Global IP Solutions, Inc., dated August 28, 2007 ("Complaint") ¶ 2.

**Response to Statement No. 3:**

GIPS admits Statement No. 3.

**Statement No. 4:**

Deltathree and GIPS entered into an OEM Licensing Agreement (the "Agreement"), effective August 19, 2005, pursuant to which Deltathree licensed from GIPS the right to use GIPS's software in Deltathree's Softphone – in return for which Deltathree agreed to pay GIPS royalties. Deltathree also agreed to use GIPS's support services for the software, and pay fees for those services. *See* Zimels Declaration ¶ 3; Agreement (Exhibit A to Zimels Declaration).

**Response to Statement No. 4:**

As set forth in Federal Rule of Civil Procedure 56(e), a declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(e). Mr. Zimels, however, does not purport to have personal knowledge about any of the subjects raised by his declaration. Rather, he merely states that he is Deltathree's President and Chief Executive Officer and that his declaration is being submitted in support of Deltathree's Motion for Partial Summary Judgment. GIPS's position is that Statement No. 4 should be stricken or disregarded for this reason. *See also* Strike Mem. However, because GIPS agrees

with Statement No. 4, it admits Statement No. 4 and admits that Exhibit A to the Zimels Declaration is a copy of the executed Agreement.

**Statement No. 5:**

The Agreement is a comprehensive and detailed 17-page contract (including four appendices) that attempts to address all aspects of the parties' business relationship – from announcing the relationship on the Norwegian Financial Bulletin Board to the GIPS copyright notice Deltathree was obligated to include with its Softphone. *See, e.g.*, Agreement § 6.2, Appendix D § 2.1.

**Response to Statement No. 5:**

As set forth in Federal Rule of Civil Procedure 56(e), a declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(e). Mr. Zimels, however, does not purport to have personal knowledge about any of the subjects raised by his declaration. Rather, he merely states that he is Deltathree's President and Chief Executive Officer and that his declaration is being submitted in support of Deltathree's Motion for Partial Summary Judgment. GIPS's position is that Statement No. 5 should be stricken or disregarded for this reason. *See also* Strike Mem.

Further, Mr. Zimels did not participate in the negotiations of the Agreement. *See* Zeichick Decl.[1] ¶ 8; *see also* Strike Mem. Therefore, he has no personal knowledge about what the parties were "attempting" to address with the Agreement. In addition, GIPS objects to Mr. Zimels's characterization of the Agreement. *See* Fed. R. Evid. 1002. Therefore, GIPS denies Statement No. 5

**Statement No. 6:**

The Agreement recites that the parties negotiated it "with the advice of counsel and approval of their authorized representatives." Agreement § 16.7.

**Response to Statement No. 6:**

GIPS admits Statement No. 6.

[1] Declaration of Jeff Zeichick in Support of Plaintiff's Motion to Strike Shimmy Zimels's Declaration and of Plaintiff's Opposition to Defendant Deltathree Inc.'s Motion for Partial Summary Judgment ("Zeichick Decl.").

**Statement No. 7:**

The Agreement includes a severability clause, and an integration clause stating that it constituted the entire agreement between the parties on the subject matter. Agreement §§ 16.4, 16.8.

**Response to Statement No. 7:**

GIPS objects to Statement No. 7 because it mischaracterizes the provisions at issue. *See also* Fed. R. Evid. 1002. GIPS admits the Agreement has a Section titled "Severability." *See* Agreement § 16.4. GIPS denies that this Section addresses what constitutes the entire agreement between the parties. *See id.* GIPS also admits the Agreement has a Section titled "Entire Agreement." *See* Agreement § 16.8. GIPS admits that it provides: "This Agreement, together with its Appendices, is the entire Agreement between the parties regarding its subject matter . . . ." *Id.*

**Statement No. 8:**

The Agreement also contains a choice-of-law clause: "This Agreement is governed by the laws of New York . . . . Choice of law rules do not apply . . . ." Agreement § 16.3.

**Response to Statement No. 8:**

GIPS admits Statement No. 8.

**Statement No. 9:**

In addition to a number of more specific limitations of liability interwoven throughout the Agreement (*see, e.g.*, Agreement §§ 8.3, 10.2, 10.4, 12.1 and 14.6), the Agreement includes a general "Limitation of Liability" section in Article 13. Every word of each of the three subsections of Article 13 is in all capital letters (the bold emphasis is added below).

Section 13.1 provides:

> EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER SECTIONS 12.1 OR 12.3, AS APPLICABLE, OR CLAIMS BY GIPS RELATING TO MISAPPROPRIATION OR INFRINGEMENT OF ITS INTELLECTUAL PROPERY BY LICENSEE, **NEITHER PARTY IS LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES OF ANY KIND (INCLUDING BUT NOT LIMITED TO LOST PROFITS) RELATING TO THIS AGREEMENT** OR THE USE OR PERFORMANCE OF THE GIPS SOFTWARE ...

OR THE PROVISION OF SERVICES, REGARDLESS OF THE THEORY OF LIABILITY.

Section 13.2 provides:

EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF A PARTY UNDER SECTIONS 12.1 OR 12.3, AS APPLICABLE, **IN NO EVENT DOES GIPS'S OR DELTATHREE'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR FOR BREACH OF THIS AGREEMENT**, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR ANY OTHER LEGAL THEORY, **EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT**.

Section 13.3 provides:

THE LIMITATIONS IN ARTICLES 13.1, AND 13.2 APPLY EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY, BUT DO NOT LIMIT LIABILITY FOR DEATH OR BODILY INJURY CAUSED BY EITHER PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDCUT.

**Response to Statement No. 9:**

GIPS admits that Sections 13.1, 13.2, and 13.3 are accurately reproduced and that emphasis has been added. It denies that each of the three subsections of Article 13 "is in all capital letters" but admits that each of the three subsections appears in a small-caps font. GIPS also objects to the first sentence of Statement No. 9, which provides a characterization of the various Agreement provisions referenced. *See* Fed. R. Evid. 1002. Therefore, GIPS denies the rest of Statement No. 9.

**Statement No. 10:**

The initial draft of the Agreement that Deltathree received was a form agreement prepared by, and regularly used by GIPS. *See* Zimels Declaration ¶ 4; Draft Agreement (Exhibit B to the Zimels Declaration).

**Response to Statement No. 10:**

GIPS disputes Statement No. 10. Paragraph 4 of the Zimels Declaration is made on information and belief. Federal Rule of Civil Procedure 56(e) requires that "affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004). Further, as also set forth

in Federal Rule of Civil Procedure 56(e), a declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(e). Mr. Zimels, however, does not purport to have personal knowledge about any of the subjects raised by his declaration. Indeed, he has no personal knowledge about the negotiations underlying the Agreement. *See* Zeichick Decl. ¶ 8. Finally, Exhibit B to the Zimels Declaration is not the "initial draft" of the Agreement. *See* Zeichick Decl. ¶¶ 17-18; Abbati Decl.[2] ¶ 4. *See also generally* Strike Mem.

**Statement No. 11:**

Section 13.2 of this initial draft provided a limitation of liability for GIPS. Deltathree negotiated to make that limitation reciprocal, and Section 13.2 of the executed Agreement (quoted above) provides a limitation of liability for both GIPS and Deltathree. *See* Zimels Declaration ¶ 5; Draft Agreement § 13.2.

**Response to Statement No. 11:**

GIPS disputes Statement No. 11. Paragraph 4 of the Zimels Declaration, which is the basis for paragraph 5, is made on information and belief. Federal Rule of Civil Procedure 56(e) requires that "affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004). As also set forth in Rule 56(e), a declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(e). Mr. Zimels, however, does not purport to have personal knowledge about any of the subjects raised by his declaration. And he has no personal knowledge about the negotiations underlying the Agreement. *See* Zeichick Decl. ¶ 8. Exhibit B is not the "initial draft" of the Agreement. *See* Zeichick Decl. ¶¶ 17-18; Abbati Decl. ¶ 4 Deltathree did not negotiate to make Section 13.2 reciprocal. *See* Zeichick Decl. ¶¶ 10-15. GIPS admits that Section 13.2 of the executed agreement makes Section 13.2 reciprocal. *See* Response to Statement No. 1, *supra*; Zimels Decl. Ex. A

[2] Declaration of Edward Abbati in Support of Plaintiff's Motion to Strike Shimmy Zimels's Declaration and of Plaintiff's Opposition to Defendant Deltathree Inc.'s Motion for Partial Summary Judgment ("Zeichick Decl.").

**Statement No. 12:**

After signing the Agreement and receiving GIPS's software, in October 2005, Deltathree completed its up-front payments to GIPS, totaling $80,000 – $60,000 in "platform fees" for the software platform; $15,000 in advance royalties; $3,000 as a pre-payment for three months of GIPS support services; and $2,000 for product testing. *See* Zimels Declaration ¶ 6; Agreement Appendix C. Deltathree's subsequent royalty and fee payments to GIPS brought the total paid under the Agreement to $111,350. *See* Zimels Declaration ¶ 6; Invoices (Exhibit C to Zimels Declaration).

**Response to Statement No. 12:**

GIPS disputes Response No. 12. As set forth in Federal Rule of Civil Procedure 56(e), a declaration submitted in support of a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(e). Mr. Zimels, however, does not purport to have personal knowledge about any of the subjects raised by his declaration. Rather, he merely states that he is Deltathree's President and Chief Executive Officer and that his declaration is being submitted in support of Deltathree's Motion for Partial Summary Judgment. GIPS's position is that Statement No. 12 should be stricken or disregarded for this reason. In addition, Deltathree did not produce these documents to GIPS prior to moving for partial summary judgment. *See* Cohen Decl.[3] ¶ 7. Further, while Mr. Zimels claims that each of the documents attached as Exhibit C is an invoice, the last page of Exhibit C does not look like the others. Rather, it appears to be a summary. Mr. Zimels does not explain this discrepancy, or whether the last page is a summary and, if so, whether he prepared it. And it appears that the last page of Exhibit C has errors. For example, the summary purports that invoice number 1893 is a "GIPS Qtrly Royalty Report" in the amount of $3,000. The invoice number 1893, however, is for "Basic Support – VoiceEngine Advanced GIPS Quarterly Support per OEM agreement dated Aug. 19, 2005. In addition, although the last page of Exhibit C lists invoice number 1087-0B, Deltathree has produced no invoice by that

[3] Declaration of Jonathan M. Cohen in Support of Plaintiff's Motion to Strike Shimmy Zimels's Declaration and of Plaintiff's Opposition to Defendant Deltathree Inc.'s Motion for Partial Summary Judgment ("Cohen Decl.").

number.[4] Finally, Mr. Zimels does not explain how the invoices "correspond" to Deltathree's payments to GIPS. For these reasons, therefore, Exhibit C should be stricken or, in the alternative, disregarded.

**Statement No. 13:**

On or about July 19, 2007, GIPS sent a letter to Deltathree in which GIPS purported to advise Deltathree that the Agreement would terminate on July 31, 2007. The letter claimed material breaches of the Agreement by Deltathree and demanded that as of July 31, Deltathree cease "the further marketing, sale and distribution" of Deltathree products including GIPS software, and return or destroy all copies of GIPS software. *See* Zimels Declaration ¶ 7; July 19 GIPS Letter (Exhibit D to Zimels Declaration).

**Response to Statement No. 13:**

GIPS disputes Statement No. 13 because it did not just "purport[] to advise" Deltathree that the Agreement would terminate on July 31, 2007. *See* GIPS Letter (Exhibit D to Zimels Declaration). As set forth in the letter, GIPS did indeed advise Deltathree that the Agreement would terminate on July 31, 2007. *See id.* Otherwise, GIPS admits Statement No. 13.

**Statement No. 14:**

On or about July 25, 2007, Deltathree sent a letter to GIPS replying to its July 19 letter. Deltathree's letter disputed GIPS's claims of material breach and stated that (in any event) Deltathree had completely cured all alleged breaches. The letter stated Deltathree's position that there was no "legitimate or permissible ground for [GIPS] to claim that the Agreement will terminate," and that an immediate termination "would cause material harm and damages to [D]eltathree" – which had "invested significant time and resources" in integrating GIPS's software. *See* Zimels Declaration ¶ 8; July 25 Deltathree Letter (Exhibit E to the Zimels Declaration).

---

[4] Based on the documents produced, this could be a transcription error. *See* Zimels Decl. Exhibit C (listing 1893 as the invoice number and GIPS's contract ID number as 1087-0B). The amount on invoice number 1893 is the same for the entry on the chart listed as invoice number 1087-0B.

**Response to Statement No. 14:**

GIPS admits Statement No. 14.

**ADDITIONAL STATEMENTS IN OPPOSITION TO DEFENDANT'S MOTION**

**Statement No. 15:**

On or about June 28, 2005, Deltathree contacted GIPS by email about GIPS's products. *See* Zeichick Decl. ¶¶ 2-4.

**Statement No. 16:**

Thereafter, Jeff Zeichick began to negotiate the Agreement with Gus Gussarsky of Deltathree. *See* Zeichick Decl. ¶ 6; Abbati Decl. ¶ 2.

**Statement No. 17:**

Mr. Gussarsky asked Zeichick to finalize the details of the Agreement with Eugene Serban and Paul White. *See* Zeichick Decl. ¶ 7.

**Statement No. 18:**

Mr. Zimels was not involved in the negotiations. *See* Zeichick Decl. ¶ 8.

**Statement No. 19:**

Exhibit B to the Zimels Declaration is not the "initial draft" of the Agreement – rather, it is a draft sent from Abbati to Zeichick. *See* Zeichick Decl. ¶ 18; Abbati Decl. ¶ 4. This draft was sent the day before the Agreement was signed. *See* Zeichick Decl. ¶ 18; Abbati Decl. ¶ 4.

**Statement No. 20:**

GIPS transmitted to Deltathree a draft of the Agreement with its final changes on the morning of August 19, 2005. *See* Zeichick Decl. ¶ 9. Section 13.2 was not reciprocal. *See id.*

**Statement No. 21:**

Several hours later, Deltathree sent back a draft of the Agreement with its further revisions and Eugene Serban called Zeichick about it. *See* Zeichick Decl. ¶¶ 10-11. Mr. Serban did not raise Section 13.2. *See* Zeichick Decl. ¶ 11. The parties never negotiated about Section 13.2. *See id.*

**Statement No. 22:**

In the executed version of the Agreement, Section 13.2 is reciprocal. *See* Zimels Decl. Ex. A.

**Statement No. 23:**

GIPS never intended Section 13.2 to limit Deltathree's liability for failure to accurately report and/or pay royalties. *See* Zeichick Decl. ¶ 15; Abbati Decl. ¶ 8.

**Statement No. 24:**

From the date the Agreement was signed until the end of 2006, Deltathree paid GIPS approximately $25,000 in royalties. *See* Abbati Decl. ¶ 12.

**Statement No. 25:**

Deltathree submitted to GIPS a document that highlighted it was calculating royalties by dividing the number of users (or at least certain categories of users) by 10 and then averaging the number of quarterly users. *See* Abbati Decl. ¶¶ 11 & 13. And Deltathree admitted that it was calculating royalties based on averaging. *See id.* ¶ 13.

**Statement No. 26:**

Appendix C of the executed Agreement provides that Deltathree will pay royalties based on the "total number of additional users" in a quarter that makes his/her first outbound call. *See* Zimels Decl. Ex. A Appendix C, C.2(B) (emphasis added).

**Statement No. 27:**

For the third quarter of 2007, Deltathree reported to GIPS that there were approximately 84,000 new accounts using GIPS's software. *See* Cohen Decl. ¶ 5.

**Statement No. 28:**

Under GIPS's interpretation of the Agreement, if each of these new accounts made his/her first outbound call during the third quarter of 2007, Deltathree would owe GIPS $84,000. *See* Abbati Decl. ¶ 15.

**Statement No. 29:**

Under Deltathree's interpretation of the Agreement, it would pay only $1.00 in royalties to GIPS for the third quarter of 2007. *See* Cohen Decl. ¶ 6.

Dated: New York, NY
February 29, 2008

Respectfully Submitted,

WINSTON & STRAWN LLP

/s/ Krista M. Enns

By: Luke A. Connelly, Esq.
Edward C. Wipper, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Jonathan M. Cohen, Esq.
*Admitted pro hac vice*
Krista M. Enns, Esq.
*Admitted pro hac vice*
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Plaintiff Global IP Solutions, Inc.*

SF:200213.1