UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

GLOBAL IP SOLUTIONS, INC.,                       :
                                                 :
                          Plaintiff,             :        07 CV 7631 (DCP)
                                                 :
         vs.                                     :
                                                 :
DELTATHREE, INC.,                                :
                                                 :
                          Defendant.             :
-------------------------------------------------------------x

## DELTATHREE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Dominic J. Picca (DP 2376)
Seth R. Goldman (SG 2452)
666 Third Avenue
New York, New York 10017
Attorneys for Defendant
Tel: 212-692-6845
Fax: 212-983-3115

*Attorneys for Defendant deltathree, Inc.*

March 25, 2008

4289248v.2

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ...................................................................................................... 4

I.      THE LIMITATION OF DELTATHREE'S LIABILITY IS UNAMBIGUOUS. ............... 4

        A.     New York Law Requires Enforcement of the Agreement's Plain Meaning .......... 4

        B.     GIPS's View that the Plain Meaning of Section 13.2 Is Absurd Does Not
               Render the Limitation of Liability Ambiguous or Relieve GIPS of its
               Consequences ............................................................................................ 5

        C.     GIPS Proffers No Plausible Alternative Interpretation of Section 13.2 ................ 8

        D.     Deltathree Does Not Interpret Section 13.2 in Isolation ................................. 9

        E.     The Fact that the Limitation of Liability Might Result in GIPS Recovering
               a Percentage of its Alleged Damages Does Not Create an Ambiguity in
               Section 13.2 .............................................................................................. 10

        F.     Section 12.3 Does Not Create an Ambiguity in Section 13.2 ............................ 11

        G.     Section 13.1 Does Not Create an Ambiguity in Section 13.2 ............................ 12

        H.     The Royalty Provisions of the Agreement Do Not Illustrate
               that Section 13.2 Is Ambiguous .................................................................. 13

        I.     Principles of Contract Interpretation Mandate Enforcement of Section 13.2 ........ 13

II.     THE EXTRINSIC EVIDENCE UNDERSCORES THAT GIPS SHOULD BE
        BOUND BY THE LIMITATION OF LIABILITY .......................................... 15

III.    GIPS UTTERLY FAILS TO DEMONSTRATE THAT THE LIMITATION OF
        LIABILITY IS UNENFORCEABLE AS AGAINST PUBLIC POLICY ..................... 17

IV.     THE COURT SHOULD DIRECT THAT IF DELTATHREE TENDERS THE
        MAXIMUM AMOUNT OF DAMAGES, WITHOUT ADMITTING ANY
        LIABILITY, THE COURT WILL ENTER FINAL JUDGMENT ................................ 18

V.     GIPS'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING MUST BE DISMISSED BECAUSE IT IS REDUNDANT ...................19

CONCLUSION..........................................................................................................................19

4289248v.2

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*,
    485 F.3d 85 (2d Cir. 2007).............................................................................................18

*DynCorp v. GTE Corp*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002)........................................................................10, 17

*Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003)........................................................................17, 18

*Stamm v. Barclays Bank of New York*,
    960 F. Supp. 724 (S.D.N.Y. 1997) ..............................................................................6, 16

## STATE CASES

*Arnav Indus., Inc. v. Brown, Raysman, Millstein, Felder & Steiner L.L.P.*,
    96 N.Y.2d 300, 727 N.Y.S.2d 688 (2001) ........................................................................16

*Carlson v. Hamilton*,
    332 P.2d 989 (Utah 1958) ..................................................................................................6

*Deutsche Lufthansa v. Boeing*,
    2007 WL 403301 (S.D.N.Y. Feb. 2, 2007)........................................................11, 13, 17, 18

*Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    2002 WL 31106406 (S.D.N.Y. Sept. 20, 2002)...................................................................7

*John Doris, Inc. v. Solomon R. Guggenheim Found.*,
    209 A.D.2d 380, 618 N.Y.S.2d 99 (2d Dep't 1994).........................................................6, 15

*Lease Corp. of Am., Inc. v. Resnick*,
    288 A.D.2d 533, 732 N.Y.S.2d 266 (3d Dep't 2001) ...........................................................6

*Mercury Partners LLC v. Pacific Medical Buildings, L.P.*,
    2007 WL 2197830 (S.D.N.Y. July 31, 2007) ..................................................................6, 15

*Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.*,
    84 N.Y.2d 430, 618 N.Y.S.2d 882 (1994) .................................................10, 11, 13, 14, 17

*Reiss v. Fin. Performance Corp.*
    97 N.Y.2d 195, 738 N.Y.S.2d 658 (2001) .......................................................................14

*South Rd. Assocs., LLC v Int'l Bus. Mach. Corp.,*
    4 N.Y.3d 272, 793 N.Y.S.2d 835 (2005) ................................................7

*Tech. Exp., Inc. v. FTF Bus. Sys. Corp.,*
    2000 WL 222628 (S.D.N.Y. Feb. 25, 2000) ...........................................6

*Uribe v. Merchants Bank of New York,*
    91 N.Y.2d 336, 670 N.Y.S.2d 393 (1998) ..............................................5

*Vigilant Ins. Co. v. Bear Stearns Cos.,*
    2008 WL 656260 (N.Y. Mar. 13, 2008) .................................................5

*W.W.W. Assocs., Inc. v. Giancontieri,*
    77 N.Y.2d 157, 565 N.Y.S.2d 440 (1990) ..............................................5

*In re Wallace,*
    86 N.Y.2d 543, 634 N.Y.S.2d 669 (1995) ..............................................7

## STATUTES

Fed. R. Civ. P. § 56 ..........................................................................................1

## MISCELLANEOUS

3 *Corbin on Contracts* 607 (1989) .................................................................16

## PRELIMINARY STATEMENT

Defendant deltathree, Inc., ("Deltathree") respectfully submits this reply memorandum of law in further support of its partial motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Deltathree's motion asks the Court to enforce the limitation of liability in Section 13.2 of its license agreement with plaintiff GIPS: "IN NO EVENT DOES GIPS'S OR DELTATHREE'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR FOR BREACH OF THIS AGREEMENT … EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT." These words are susceptible of only one meaning — whether viewed in isolation or in the context of the Agreement as a whole.

In opposing Deltathree's motion, GIPS beseeches the Court to violate a bedrock principle of contract law: freedom of contract. Courts do not intervene to rescue sophisticated parties from unintended consequences arising from the contracts they sign. Yet that is the relief GIPS seeks. GIPS's opposition boils down to the illegitimate argument that the Court should deny summary judgment based on extrinsic evidence that GIPS did not intend the limitation of liability to mean what it says, even though, as the evidence shows, GIPS accepted that change specifically during negotiations. GIPS acknowledges that unambiguous agreements must be enforced as written, without resort to extrinsic evidence. So it grasps at straws in the Agreement, attempting to manufacture an ambiguity in the limitation of liability. Each of those attempts falls flat. The limitation of liability is unambiguous and extrinsic evidence regarding it is inadmissible. *See infra* Point I.

Even if extrinsic evidence were admissible, it would only fortify Deltathree's motion. GIPS's witnesses aver that they never intended Section 13.2 to limit Deltathree's liability to the amounts Deltathree paid under the Agreement, but they never say what they **did** intend the

limitation of Deltathree's liability to mean. That silence is particularly odd since the original language of Section 13.2 came from GIPS. Instead, GIPS implies that it did not realize Section 13.2 limited Deltathree's liability at all when it executed the Agreement. Yet it is black-letter law that a sophisticated party like GIPS is bound by the terms of the Agreement, whether or not it paid attention to them.

GIPS's apparent excuse for being caught unawares by the limitation of liability is the contention that Deltathree never flagged the change to Section 13.2 that made its limitation reciprocal, covering Deltathree as well as GIPS. That contention is demonstrably false, as <u>GIPS</u> recently has produced a draft of the Agreement flagging precisely that change and an e-mail from its officer acknowledging and accepting the change that made the parties' rights and obligations reciprocal. Thus, the extrinsic evidence serves only to reinforce the conclusion that GIPS must abide by the consequences of the limitation of liability, notwithstanding its apparent regrets. *See infra* Point II.

Finally, GIPS mounts no opposition at all to the other two aspects of Deltathree's motion, which seek rulings that: (1) if Deltathree tenders the maximum amount of its liability to GIPS ($111,350) — without admitting liability — the Court will enter final judgment; and (2) GIPS's Third Claim, for breach of the implied covenant of good faith and fair dealing, must be dismissed as redundant. The Court should render judgment for Deltathree accordingly. *See infra* Points IV & V.

## STATEMENT OF FACTS

The stated purpose of Deltathree's motion for partial summary judgment is to avoid the costly litigation of liability and damages by resolving this case based on the limitation-of-liability provision. *See* D3 Br. at 1, 21-22. Yet GIPS's opposition ironically accuses Deltathree

of ignoring the core issues of liability and damages, and regurgitates GIPS's complaint's allegations on those issues. *See, e.g.*, GIPS Br. at 3-6, 14. Deltathree will not present here the facts supporting its defenses on liability and damages. And the Court should disregard GIPS's attempt to confuse the issue on this motion and poison the well for Deltathree.[1]

By contrast, Deltathree will respond here to GIPS's statement of facts concerning the history of the limitation of liability in Section 13.2 of the Agreement because GIPS's statement of facts does relate to the subject of this motion and because it is erroneous. Based on declarations from Edward Abbati and Jeff Zeichick submitted in its Opposition, GIPS avers that the parties did not negotiate Section 13.2 and that "[a]lthough Deltathree changed the language of Section 13.2 to, among other things, make it reciprocal, **these changes were not flagged to GIPS**." GIPS Br. at 3 (emphasis added). But on March 18, 2008 — after it filed its opposition papers — GIPS produced a draft of the Agreement in which the change rendering Section 13.2 reciprocal **was** flagged to GIPS. *See* Exhibit A to the Declaration of Dominic J. Picca (filed herewith) at p. 6. Furthermore, in a subsequent e-mail from GIPS, Mr. Zeicheck, an officer of GIPS, says he went through all of Deltathree's proposed changes, including to Section 13.2, and that GIPS "was okay with all changes."

The true sequence of events, as recited in the accompanying Declaration of Paul C. White (Deltathree's CFO at the time), and corroborated by the documents, is as follows: At 11:00 AM Eastern Time on August 19, 2005, Jeff Zeichick sent to Mr. White and Eugene Serban (then

---

[1]    For now, Deltathree will suffice to say that GIPS's factual case is fundamentally flawed because it conflates the concepts of "user" and "account." Under the Agreement, royalties were to be calculated based on "Incremental Active **Users**." Agreement Appendix C, § C.2 (emphasis added). As GIPS should know, a single **user** of Deltathree's Softphone can have multiple **accounts**. GIPS repeatedly misrepresents Deltathree's SEC's filings as reporting increases of hundreds of thousands of users. *See, e.g.*, GIPS Br. at 4. In truth, those filings reported increases in the number of **accounts**, not users.

4289248v.2

Deltathree's Corporate Counsel) an e-mail attaching an updated draft of the Agreement. After reviewing the attached draft, Mr. White noted to Mr. Serban that the limitation of liability in Section 13.2 was not reciprocal. Mr. White advised Mr. Serban to modify Section 13.2 to make it reciprocal. *See* White Decl. ¶¶ 8-9 & Exhibit B.

At 1:52 PM that day, Mr. Serban sent an e-mail to Mr. Zeichick attaching a revised draft of the Agreement, showing Deltathree's proposed changes using Microsoft Word's "Track Changes" function. That revised draft showed clearly in blue coloring the insertion of the words "OR DELTATHREE'S" in Section 13.2, such that Section 13.2 then read (in pertinent part): "IN NO EVENT DOES GIPS'S **OR DELTATHREE'S** AGGREGATE LIABILITY UNDER THIS AGREEMENT OR FOR BREACH OF THIS AGREEMENT … EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT." *See* Picca Decl. Exhibit A; White Decl. ¶ 10 & Exhibits A & B.

At 3:08 PM that same day, Mr. Zeichick sent an e-mail to Mr. Serban, copying Messrs. White and Abbati, with the subject line "Deltathree GIPS – Clean copy of final Agreement." The e-mail states: "Hi Eugene, as we just discussed on the phone, I went through your comments / edits in the document with Edward **and he was ok with all of changes** [sic]. …" *See* White Decl. ¶ 11 & Exhibit A (emphasis added). One of the "changes" or "edits in the document" was the change in blue making Section 13.2 reciprocal, which GIPS thus approved.

## ARGUMENT

### I. THE LIMITATION OF DELTATHREE'S LIABILITY IS UNAMBIGUOUS

#### A. New York Law Requires Enforcement of the Agreement's Plain Meaning

GIPS strains but fails to conjure up any genuine ambiguity in the limitation-of-liability provision. It is for cases like this that the New York Court of Appeals has admonished: "[W]hen the meaning of a … contract is plain and clear … it is entitled to be enforced according to its terms … and not to be subverted by straining to find an ambiguity which otherwise might not be

4

thought to exist." *Uribe v. Merchants Bank of New York*, 91 N.Y.2d 336, 341, 670 N.Y.S.2d 393, 396 (1998) (internal quotation marks omitted).

As the New York Court of Appeals has held, whether or not an agreement is ambiguous "is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990). And it "is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." 77 N.Y.2d at 163 (internal quotation marks omitted).

Just weeks ago, the New York Court of Appeals yet again underscored its insistence upon holding sophisticated parties to the terms of their agreements, even in the face of severe consequences. In *Vigilant Ins. Co. v. Bear Stearns Cos.*, the court reiterated that unambiguous provisions "must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *See Vigilant Ins. Co.*, 2008 WL 656260, at 3 (N.Y. Mar. 13, 2008) (internal quotation marks omitted). The court reversed the Appellate Division and held that Bear Stearns forfeited its claim to $45 million of insurance coverage by entering into a settlement without its insurers' consent: "As a sophisticated business entity, Bear Stearns expressly agreed that the insurers would 'not be liable' for any settlement in excess of $5 million entered into without consent," and thus could not recover from the insurers. *Id.*

Given that Section 13.2 is clearly worded, New York law dictates that it be enforced as written.

**B.    GIPS's View that the Plain Meaning of Section 13.2 Is Absurd Does Not Render the Limitation of Liability Ambiguous or Relieve GIPS of its Consequences**

GIPS opposes this Court's enforcement of the "plain and ordinary meaning" of Section 13.2. Its independent arguments for a supposed ambiguity will be addressed in turn below, but a common thread running through them is the refrain that it would "make no sense" or be "absurd"

4289248v.2

for GIPS to have agreed to limit Deltathree's liability to the amounts Deltathree paid under the

Agreement, as Section 13.2 clearly provides. *See* GIPS Br. at 1, 7, 11, 12, 13, and 17. In

essence, then, what GIPS is asking the Court to do is reform the Agreement to excuse it from the

consequences of what it now considers a bad bargain. This Court's precedents, and New York

law, bid the Court to reject that request.

       This Court has adhered to the principle of freedom of contract, and used the following

formulation of it:

> People should be entitled to contract on their own terms without the
> indulgence of paternalism by courts in the alleviation of one side or
> another from the effects of a bad bargain. Also, they should be permitted
> to enter into contracts that actually may be unreasonable or which may
> lead to hardship on one side. It is only where it turns out that one side or
> the other is to be penalized by the enforcement of terms of a contract so
> unconscionable that no decent, fair-minded person would view the ensuing
> result without being possessed of a profound sense of injustice, that equity
> will deny the use of its good offices in the enforcement of such
> unconscionability.

*Stamm v. Barclays Bank of New York*, 960 F. Supp. 724, 732-33 (S.D.N.Y. 1997) (*quoting*

*Carlson v. Hamilton*, 332 P.2d 989, 990-91 (Utah 1958)).

       Moreover, as this Court recently reinforced, under New York law, "'the courts may not

rewrite the agreement to relieve a sophisticated contracting party from terms that it later deems

disadvantageous,'" improvident, or even inequitable. *See Mercury Partners LLC v. Pacific*

*Medical Buildings, L.P.*, 2007 WL 2197830, at *14 (S.D.N.Y. July 31, 2007) (*quoting John*

*Doris, Inc. v. Solomon R. Guggenheim Found.*, 209 A.D.2d 380, 381, 618 N.Y.S.2d 99, 100 (2d

Dep't 1994)). Stated differently, a court "cannot revise or modify an agreement simply because

the [party] realizes, 'with the benefit of hindsight, [that it] may have made a bad bargain.'" *Id.*

(*quoting Lease Corp. of Am., Inc. v. Resnick*, 288 A.D.2d 533, 535, 732 N.Y.S.2d 266, 269 (3d

Dep't 2001)); *see also, e.g., Tech. Exp., Inc. v. FTF Bus. Sys. Corp.*, 2000 WL 222628, at *2

4289248v.2

(S.D.N.Y. Feb. 25, 2000) (enforcing clause that "may well have been a very bad bargain" because "the Court may not relieve sophisticated commercial entities of their bad bargains").

Even claims of absurdity cannot prevent the enforcement of an unambiguous agreement. As this Court has held, the rule of avoiding absurd or unreasonable results "is a rule of construction that assists the court in resolving the meaning of contract terms, rather than providing a justification for departing from those terms." *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2002 WL 31106406, at *7 (S.D.N.Y. Sept. 20, 2002).

In *Granite Partners*, this Court relied on the New York Court of Appeals decision in *In re Wallace*, 86 N.Y.2d 543, 634 N.Y.S.2d 669 (1995), to reject an argument of absurdity. *See* 2002 WL 31106406, at *6. In *Wallace*, the Court of Appeals likewise rejected an absurdity argument in ruling that the plain language of a lease agreement provided that the rent for a term of 33 years would only be determined 32 years into the term. Although the court recognized that this "retrospective appraisal mechanism may be novel or unconventional," the provision was unambiguous, did not "lead to an absurd result," and did not "warrant excursion beyond the four corners of the document." 86 N.Y.2d at 545, 548.

As *Wallace* opines, the principle of enforcing clear and complete agreements according to their terms "imparts stability to commercial transactions" and is particularly important where "the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length." *See id.* at 548 (internal quotation marks omitted); *accord, e.g., South Rd. Assocs., LLC v. Int'l Bus. Mach. Corp.*, 4 N.Y.3d 272, 277, 793 N.Y.S.2d 835, 838 (2005). That is exactly the context here. By its own admission, GIPS is a "sophisticated licensor." GIPS Br. at 1, 13. And the Agreement recites that the parties negotiated it "with the advice of counsel and approval of their authorized representatives." Agreement § 16.7.

7

The Agreement also provides that "IN NO EVENT DOES ... DELTATHREE'S AGGREGATE LIABILITY ... EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT." GIPS's pleas that it "makes no sense" or would be "absurd" for it to have agreed to that limitation of liability provide no justification for departing from it. Even if the limitation of liability were inequitable or unreasonable (which it is not), the Court could not rewrite it. GIPS, the sophisticated licensor, must be bound by the contract it freely made, especially one whose form GIPS created.

### C.  GIPS Proffers No Plausible Alternative Interpretation of Section 13.2

This is not a case where the Court must choose between two plausible interpretations of a contract, or even two competing interpretations at all. Deltathree urges the plain meaning of Section 13.2. GIPS responds not with a coherent alternative construction of Section 13.2 but with at least two possible constructions that it calls "equally reasonable" when in fact they are not. *See* GIPS Br. at 9-10.

GIPS claims that an "equally reasonable construction of Section 13.2" is that the limitation of liability "would not remain in force if the Agreement terminated because of breach." *See id.* In fact, that construction is unreasonable because Section 13.2 expressly applies in cases of breach: "IN NO EVENT DOES GIPS'S OR DELTATHREE'S AGGREGATE LIABILITY UNDER THIS AGREEMENT *OR FOR BREACH OF THIS AGREEMENT* ... EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT" (emphasis added).

Even more surprising, GIPS's second attempt posits that "if the Agreement remained in force" because Deltathree was using GIPS's software without paying for it, liability would be capped not by "THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS," as Section 13.2 provides, but by the amounts "Deltathree **should have** paid under the Agreement." GIPS Br. at 10. Of course, GIPS cannot superimpose the words "should have" onto Section 13.2, and to do so would

8

gut the significance of the limitation itself.  Indeed, it would not be much of a limitation of

liability for breach of contract if Deltathree's liability were limited to what it "should have paid

under the Agreement."  GIPS's alternative constructions conflict with the words themselves and

amount to nothing more than wishful thinking.

### D.    Deltathree Does Not Interpret Section 13.2 in Isolation

Deltathree's motion interprets Section 13.2 in the context of the Agreement.  In its

opening brief, Deltathree presented the Agreement as a detailed, integrated contract.  Deltathree

showed that the limitation of liability in Section 13.2 does not exist in a vacuum but instead is

part of an extensive network of limitations of liability, several of which benefit GIPS

exclusively.  Deltathree cited no fewer than 14 separate sections of the Agreement other than

Section 13.2, and it addressed the interplay between Sections 13.1, 13.2, and 13.3.  *See* D3 Br. at

2-5, 11-12.  Thus, GIPS's complaint that Deltathree's analysis "begins and ends with Section

13.2" and "ignores the basic canon" of "read[ing] the contract as a whole" is nonsense.  *See*

GIPS Br. at 7.

In fact, GIPS is projecting onto Deltathree its own failure to review various relevant

provisions in the Agreement, including in Section 13 itself.  For example, GIPS never even cites

Section 13.3, in which the parties underscored the gravity of the limitation of liability in Section

13.2 by agreeing that: "THE LIMITATIONS IN ARTICLES 13.1 AND 13.2 APPLY EVEN IF THE OTHER

PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE

FAILURE OF THE ESSENTIAL PURPOSE OF ANY LIMITED REMEDY."  GIPS's position that the plain

meaning of Section 13.2 would fail to compensate it for its alleged damages (*see, e.g.*, GIPS Br.

at 9) contradicts Section 13.3.

GIPS also remains silent on the numerous limitations of liability that protect GIPS, and

that blunt its charge that the limitation of Deltathree's liability is unreasonable.  Under Section

9

10.2, for instance, if GIPS breached its warranty that its software would perform according to specifications, Deltathree could not recover any damages, no matter how great. And, in theory, under Section 13.2 itself, GIPS's software could have corrupted Deltathree's entire Softphone system and caused millions of dollars of damage — yet GIPS's liability would have been limited to "THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS," which initially equaled $80,000. *See* D3 Br. at 5. GIPS does not deem the limitations of **its** liability as unreasonable.

E.    **The Fact that the Limitation of Liability Might Result in GIPS Recovering a Percentage of its Alleged Damages Does Not Create an Ambiguity in Section 13.2**

GIPS attacks Deltathree for seeking enforcement of Section 13.2 and thus "arguing for a substantial bargain." GIPS Br. at 9. That is precisely the function of a limitation of liability, and that bargain already has been made by GIPS. Deltathree considers GIPS's $1 million damages claim grossly inflated, but the figure is irrelevant.[2] Under the law, GIPS could not shirk the limitation of liability to which it agreed. Furthermore, as described above, had GIPS's software corrupted Deltathree's entire system, the limitation of liability would have worked to give GIPS a "substantial bargain" on its obligations to Deltathree.

Courts enforce limitations of liability even where the gap between the damages alleged and the maximum amount of liability is much greater than it is here. In the leading case of *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.*, for instance, the jury found that Noble's breach of contract was willful and awarded over $6.7 million in damages to MetLife. But the Appellate Division reduced the award to $204,000 based on the limitation of liability, and the New York Court of Appeals affirmed. *See Metropolitan Life Ins. Co.,* 84 N.Y.2d 430, 434, 440, 618 N.Y.S.2d 882 (1994); D3 Br. at 13-19 (*discussing MetLife* at length). In *DynCorp v. GTE*

---

[2] Paying any mind to the amount of claimed and unproven damages would only give a party confronting a limitation of liability incentive to inflate its damages claim.

*Corp.*, the plaintiff sought in excess of $100 million in damages, but this Court enforced the limitation of $24,750,000. *See DynCorp.*, 215 F. Supp. 2d 308, 309, 318 (S.D.N.Y. 2002). And in *Deutsche Lufthansa AG, v. The Boeing Co.,* Lufthansa claimed tens of millions of dollars in damages, but this Court enforced a one-million dollar limitation. *See Deutsche,* 2007 WL 403301, at *1-*2, *4 (S.D.N.Y. Feb. 2, 2007).

Not surprisingly, GIPS cites no authority on this point. Regardless, the very purpose of a limitation of liability is to allocate the risk of economic loss, and "courts should honor" that risk allocation. *See MetLife*, 84 N.Y.2d at 436.

### F.    Section 12.3 Does Not Create an Ambiguity in Section 13.2

GIPS's argument based on Section 12.3 of the Agreement is frivolous because the Agreement's indemnification provisions are inapplicable here. *See* GIPS Br. at 10. If the indemnification provisions were applicable, then if Deltathree were to pay a judgment to GIPS in this case, GIPS would have to indemnify Deltathree, along with attorneys' fees. That is because the portion of Section 12.3 that GIPS does **not** quote provides: "GIPS shall indemnify, defend, and hold [Deltathree] … harmless from and against any liabilities, damages, judgments, losses, costs, and expenses (including reasonable attorneys' fees) **arising out of any action or manner inconsistent with the terms and conditions of this Agreement**" (emphasis added). Thus, on GIPS's logic, if Deltathree were found to have breached the Agreement by acting in a "manner inconsistent with [its] terms," GIPS would be obligated to indemnify Deltathree for that damage.

Furthermore, if the indemnification provisions were applicable, Section 12.4 would bar GIPS's copyright-infringement claim because it provides: "THE FOREGOING STATES THE PARTIES' EXCLUSIVE OBLIGATIONS AND EXCLUSIVE REMEDIES WITH RESPECT TO INFRINGEMENT OF

11

ANY INTELLECTUAL PROPERTY RIGHTS OF ANY KIND." There is no express remedy in Article 12 of the Agreement for GIPS to sue Deltathree for copyright infringement.

The objective intent of the parties in Article 12 was to provide for indemnification in the event of **third-party** intellectual property-based claims. Consequently, Section 12.3 is irrelevant and generates no ambiguity in Section 13.2. GIPS cannot argue otherwise -- unless it is willing to dismiss its copyright claim and indemnify Deltathree against its own claims in this lawsuit.

### G.    Section 13.1 Does Not Create an Ambiguity in Section 13.2

In its opening brief, Deltathree showed that the limitation of liability in Section 13.2 applies equally to GIPS's copyright-infringement claim since it: (1) uses the phrase "in no event"; (2) applies not only to liability "for breach of this Agreement" but also to liability "under this Agreement," and under "**any … legal theory**" (emphasis added); and (3) does not carve out intellectual property infringement claims, while Section 13.1 does. *See* D3 Br. at 11. In response, GIPS musters only its mantra that "it makes no sense." *See* GIPS Br. at 11. "It makes no sense" is hardly an excuse as a matter of law (or fact). *See supra* pp. 6-8.

In any event, Section 13.2 does not "eviscerate" the carve-out for intellectual property claims in Section 13.1 (GIPS Br. at 11), and the two sections make perfect sense in conjunction. Simply, the parties agreed that any claim by GIPS against Deltathree "relating to misappropriation or infringement of its intellectual property" would not be subject to exclusion of indirect, consequential, and punitive damages, but would be subject to the overall cap of the amounts Deltathree paid under the Agreement. That is, GIPS can claim indirect, consequential, and punitive damages for copyright infringement, as long as those damages do not exceed $111,350.

12

There is nothing inherently unreasonable, let alone absurd, with limiting copyright damages along with contract damages. And GIPS has provided no legal support to argue the contrary. Similarly, GIPS has made no showing that its alleged copyright damages amount to anything other than the royalties Deltathree would have owed for using GIPS's software between July 31 and November 5, 2007. *See, e.g.*, GIPS Br. at 5. But even if its alleged copyright damages were fundamentally different, they were not carved out of Section 13.2, and GIPS cannot ask the Court to carve them out now.

### H. The Royalty Provisions of the Agreement Do Not Illustrate that Section 13.2 Is Ambiguous

Again citing no authority, GIPS argues that "it makes no sense" for it to rely on Deltathree to report royalties and then limit Deltathree's liability "for inaccurate royalty reporting." *See* GIPS Br. at 12. But once again, that is the consequence of the bargain GIPS struck. Moreover, courts enforce limitations of liability even in cases where plaintiffs relied heavily on defendants that were largely immunized from liability. In each of *MetLife* and *Deutsche Lufthansa v. Boeing*, the plaintiff invested millions of dollars to support defendant's computer systems before the defendant walked away from the agreement, leaving the plaintiff holding the bag. But the courts enforced the limitations of liability nevertheless. *See MetLife*, 84 N.Y.2d at 435, 439; *Deutsche Lufthansa*, 2007 WL 403301, at *4.[3]

### I. Principles of Contract Interpretation Mandate Enforcement of Section 13.2

Deltathree's opening brief demonstrated that the New York case law on contract interpretation generally, and limitations of liability specifically, require enforcing Section 13.2 as written. *See* D3 Br. at Point II. As the New York Court of Appeals held in *MetLife*, parties

---

[3] Moreover, assuming *arguendo* that Deltathree misreported its royalty payment obligations (which it did not), GIPS had every opportunity to police those efforts more closely. Its failure to be vigilant should not be a basis to eviscerate the limitation of liability provision.

13

4289248v.2

"may later regret their assumption of the risks of non-performance" in a limitation of liability, "but the courts let them lie on the bed they made." 84 N.Y.2d at 436 (internal quotation marks omitted).

In contrast, GIPS's summary section on canons of contract construction is unavailing. *See* GIPS Br. at 12-13. In addition to restating its arguments (addressed above) that the limitation of liability is "absurd" and "commercially unreasonable," GIPS argues that enforcing Section 13.2 as written would place it at Deltathree's mercy. In this section — as in the rest of its brief — GIPS relies only on general propositions of the law and does not discuss the facts of a single case it cites in its favor.

The two cases GIPS does cite actually support Deltathree. One of them is *MetLife*, the leading case that was the centerpiece of Deltathree's opening brief and with which GIPS completely fails to grapple. In stating that courts do not favor "placing one party at the mercy of the other," the Court of Appeals in *MetLife* **supported** its application of the limitation of liability because the contrary result would "eliminate any semblance of reciprocity." *See* 84 N.Y.2d at 437-38. Here, too, declining to enforce the limitation of Deltathree's liability would eliminate the express reciprocity of Section 13.2.

Similarly, in the second case GIPS cites — *Reiss v. Fin. Performance Corp.* — the Court of Appeals held that the warrants at issue were "drafted by sophisticated and counseled business persons" and were "enforceable according to their terms" even though one party received a windfall as a result. *See* 97 N.Y.2d 195, 201, 738 N.Y.S.2d 658, 660 (2001). Here, too, the Court should enforce the limitation of liability according to its terms, as agreed upon by sophisticated and counseled business people.

14

GIPS asserts that the "effect of Deltathree's argument is to ask the Court to read the Agreement so that GIPS is at a disadvantage." GIPS Br. at 13. However, "courts may not rewrite the agreement to relieve a sophisticated contracting party from terms that it later deems disadvantageous.'" *Mercury Partners*, 2007 WL 2197830, at *14 (*quoting John Doris*, 209 A.D.2d at 381).

## II.    THE EXTRINSIC EVIDENCE UNDERSCORES THAT GIPS SHOULD BE BOUND BY THE LIMITATION OF LIABILITY

As discussed in Point I above, extrinsic evidence is inadmissible to vary the terms of an unambiguous agreement and should not be considered in construing Section 13.2. Yet the extrinsic evidence regarding Section 13.2 strongly supports enforcing it as written because it demonstrates that: Deltathree intended Section 13.2 to be reciprocal and proposed a change to that effect; GIPS accepted the change; and GIPS did not intend some contrary meaning to the limitation of Deltathree's liability because it purportedly did not even focus on it.

As noted, GIPS's recent document production has disproved its claim that the change to Section 13.2 that rendered the limitation of liability reciprocal was never flagged to GIPS. *See supra* p. 2. The change was flagged in blue in the draft sent to GIPS at 1:52 PM on August 19, 2005, the date the Agreement was signed. At 3:08 PM, Jeff Zeichick of GIPS returned a final, clean copy of the Agreement accepting that change, with a cover e-mail stating: "Hi Eugene, as we just discussed on the phone I went through your comments / edits in the document with Edward **and he was ok with all of changes** [sic]" (emphasis added). *See supra* pp. 2-3.

GIPS appears to claim that it unwittingly agreed to make Section 13.2 reciprocal (*see* GIPS Br. at 14; Zeichick Decl. at ¶¶ 7-16; Abbati Decl. at ¶¶ 5-8), but that claim is legally irrelevant and factually untrue. "A party to a contract has an obligation to read its provisions. It is a fundamental principle of contract law that a person who signs a contract is presumed to

know its terms and consents to be bound by them." *Stamm v. Barclays Bank of New York*, 960 F.

Supp. 724, 731 (S.D.N.Y. 1997) (*citing 3 Corbin on Contracts* 607 (1989)).

In *Stamm*, the plaintiffs opposed enforcing British forum-selection and choice-of-law

provisions because they did not realize when entering the agreement that under British law,

defendants were immune from certain damages claims and exempt from investor-protection

laws. But since the provisions were neither unconscionable nor induced by fraud, the Court

concluded that it had to enforce them. *Id.* at 731-33; *see also, e.g., Arnav Indus., Inc. v. Brown,*

*Raysman, Millstein, Felder & Steiner L.L.P.*, 96 N.Y.2d 300, 304, 727 N.Y.S.2d 688, 691 (2001)

("a party who signs a document is conclusively bound by its terms absent a valid excuse for

having failed to read it"). As in *Stamm*, whether or not GIPS understood it was immunizing

Deltathree from certain liabilities, it is bound by the Agreement it signed.

The further upshot of GIPS's purported lack of attention to Section 13.2 is the fact that

GIPS offers no competing interpretation of the limitation of Deltathree's liability. Messrs.

Zeichick and Abbati state that they did not intend to limit Deltathree's damages to the amount it

had paid under the Agreement, but neither witness states what he **did** intend the limit on

Deltathree's liability to mean, apparently because they claim not to have realized that Section

13.2 had become reciprocal. *See* Zeichick Decl. at ¶ 15; Abbati Decl. at ¶ 8. Accordingly, there

is only one intent relevant to construing Section 13.2 -- that of Delathree, which intended the

words to mean what they say: Deltathree's liability is limited to the total amount it paid GIPS

under the Agreement, $111,350. In any event, as set forth above, GIPS did review the proposed

change and accepted it. It strains credulity therefore to believe GIPS did not understand the

import of adding the words "and Deltathree's" to Section 13.2, when that Section is a provision

in GIPS's form Agreement.

4289248v.2

### III.   GIPS UTTERLY FAILS TO DEMONSTRATE THAT THE LIMITATION OF LIABILITY IS UNENFORCEABLE AS AGAINST PUBLIC POLICY

Deltathree's opening brief extensively demonstrated, under both the common law and New York's Uniform Commercial Code, that GIPS could never prove that the limitation of liability in Section 13.2 is void as against public policy. *See* D3 Br. Point II. GIPS has no response to Deltathree's discussion of the leading *MetLife* case, the U.C.C. law, or many of the other authorities on which Deltathree relied. And its efforts to distinguish a select three of Deltathree's cases miss the mark.

First, in *Deutsche Lufthansa v. Boeing,* this Court found no allegations of "intentional wrongdoing" in the context of the standard that requires "'**nothing short of … a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts.'**" *See* 2007 WL 403301, at *1-*2 (S.D.N.Y. Feb. 2, 2007) (emphasis added) (*quoting Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003)). Lufthansa did allege that Boeing intentionally breached a service agreement in bad faith. But that alleged conduct did not rise to the level of intentional wrongdoing of the sort the case law contemplates, and neither would an allegedly intentional breach by Deltathree in this case. *See id.*; *see also* D3 Br. at 14-19.

Second, GIPS weakly asserts that *DynCorp v. GTE Corp.* is factually dissimilar because it involved an unambiguous limitation of liability. See GIPS Br. at 17. GIPS entirely misses the point, which is the public-policy exception, not ambiguity. The fact remains that in *DynCorp*, this Court "refused to re-write how the parties allocated their risks" and enforced the limitation of liability notwithstanding plaintiff's allegations of fraud and egregious conduct — allegations much stronger than GIPS's here. *See* 215 F. Supp. 2d 308, 309, 313 (S.D.N.Y. 2002).

Third, in *Net2Globe*, this Court enforced a limitation of liability where the defendants sought to pass on higher costs to the plaintiff, and when the plaintiff refused to bear those costs, the defendants intentionally terminated service under the contract. *See* 273 F. Supp. 2d at 450-52. GIPS's attempt to distinguish *Net2Globe* is remarkable. It states that "the language in the Agreement does not directly address the issue at hand – whether Deltathree is immunized from liability if it fails to pay (or underpays) royalties." GIPS Br. at 17 n.55. Section 13.2 does address the issue at hand, providing that "IN NO EVENT DOES ... DELTATHREE'S AGGREGATE LIABILITY ... EXCEED THE TOTAL AMOUNTS PAID BY DELTATHREE TO GIPS UNDER THIS AGREEMENT."

Finally, GIPS disputes the fact that Delathree's consent to a preliminary injunction and removal of GIPS's software as of November 5, 2007 demonstrates its good faith in this case. *See* D3 Br. at 16-17; GIPS Br. at 15-16. But good faith is not the standard. The standard requires "a compelling demonstration of egregious intentional misbehavior evincing extreme culpability," and GIPS does not, and cannot, make that demonstration. *See Deutsche Lufthansa*, 2007 WL 403301, at *2.

## IV. THE COURT SHOULD DIRECT THAT IF DELTATHREE TENDERS THE MAXIMUM AMOUNT OF DAMAGES, WITHOUT ADMITTING ANY LIABILITY, THE COURT WILL ENTER FINAL JUDGMENT

This point is undisputed. GIPS does not deny that the amount Delathree paid it under the Agreement is $111,350. Nor does it dispute that under controlling Second Circuit precedent, if the defendant tenders the amount at stake, even without admitting liability, "nothing of significance remain[s] to adjudicate," and the case should end. *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,* 485 F.3d 85, 94 (2d Cir. 2007); D3 Br. at 21-22. Accordingly, the Court should order not only that Deltathree's aggregate liability is limited to $111,350, but

that if it tenders that amount to GIPS — without conceding any liability — the Court will enter final judgment disposing of this case.

**V.    GIPS'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING MUST BE DISMISSED BECAUSE IT IS REDUNDANT**

GIPS offers no defense of its duplicative Third Claim for Relief.  Thus, regardless of how the Court rules on Deltathree's limitation of liability, it should dismiss GIPS's claim for breach of the implied covenant of good faith and fair dealing.  *See* D3 Br. at 22-23.

## CONCLUSION

For the foregoing reasons, Deltathree respectfully requests that the Court grant its motion for partial summary judgment and order that: (1) Deltathree's potential liability in this case is limited to $111,350; (2) if Deltathree tenders that amount to GIPS, without admitting liability, the Court will enter final judgment; and (3) GIPS's Third Claim, for breach of the implied covenant of good faith and fair dealing, is dismissed as redundant.

Respectfully submitted,

By: _____
Dominic J. Picca (DP 2376)
Seth R. Goldman (SG 2452)
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
666 Third Avenue
New York, New York 10017
Attorneys for Defendant
Tel:  212-692-6845
Fax:  212-983-3115

*Attorneys for Defendant deltathree, Inc.*

Dated:  March 25, 2008

19