UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
                                                                      :
GLOBAL IP SOLUTIONS, INC.                                             :   07 CV 7631 (RJH)
                                                                      :
                        Plaintiff,                                    :
                                                                      :
            -against-                                                 :
                                                                      :
DELTATHREE, INC.                                                      :
                                                                      :
                        Defendant.                                    :
---------------------------------------------------------------------X

## REPLY IN SUPPORT OF PLAINTIFF'S
## MOTION TO STRIKE SHIMMY ZIMELS'S DECLARATION
## OR, IN THE ALTERNATIVE, DISREGARD IT

WINSTON & STRAWN LLP

By: Luke A. Connelly, Esq.
    200 Park Avenue
    New York, New York 10166
    Telephone:   (212) 294-6700
    Facsimile:   (212) 294-4700

    Jonathan M. Cohen
    (admitted *pro hac vice*)
    Krista M. Enns
    (admitted *pro hac vice*)
    101 California Street, Suite 3900
    San Francisco, California  94111
    Telephone:   (415) 591-1000
    Facsimile:   (415) 591-1400

    *Attorneys for Plaintiff Global IP
    Solutions, Inc.*

1

## I. INTRODUCTION

To "clarify any questions" as to whether Mr. Zimels is competent to testify as to the matters set forth in his declaration and to "moot GIPS's motion to strike" (Opp. at 1-2), Deltathree has submitted: (1) the Supplemental Declaration of Shimmy Zimels; as well as (2) a Memorandum of Law in Support of Defendants' Opposition to Plaintiff's Motion to Strike or Disregard Shimmy Zimels's Declaration. As discussed below, neither the testimony in the Supplemental Declaration nor the arguments in the Opposition establish that Mr. Zimels has personal knowledge about the two primary issues on which Mr. Zimels testifies—namely (1) the parties' contract negotiations and (2) how much Deltathree had or should have paid GIPS. Therefore, Mr. Zimels's testimony (or at least the portions thereof identified in GIPS's motion) should be stricken or disregarded.

## II. ARGUMENT

**A.     Even If The Original Zimels Declaration Purported To Be Made On Personal Knowledge, That Would Not Make It So.**

The original Zimels Declaration is not defective simply because "it does not contain the magic language 'upon personal knowledge.'" (Opp. at 2 (mischaracterizing GIPS's argument).) Indeed, "personal knowledge of information contained within the affidavit cannot be demonstrated by mere incantation." *In re Livent, Inc. Noteholders Sec. Litig.*, 355 F. Supp. 2d 722, 734 n.11 (S.D.N.Y. 2005). Rather, a declaration "must describe the basis on which [the declarant] is competent to testify to the matters contained" therein. *See Livent Inc.*, 355 F. Supp. 2d at 734. The original Zimels Declaration did not, however, do this.

B. **The Original Zimels Declaration Did Not Evidence That Mr. Zimels Has Personal Knowledge About the Contract Negotiations Or About How Much Deltathree Had Or Should Have Paid GIPS.**

In the original Zimels Declaration, the only basis set forth as to why Mr. Zimels was competent to testify about the contract negotiations or how much Deltathree had or should have paid GIPS was that Mr. Zimels is "President and Chief Executive Officer of defendant deltathree." (Zimels Decl. ¶ 1.) According to Deltathree, this statement in and of itself is enough to establish a basis for all of Mr. Zimels's testimony. (*See* Opp. at 2—"The Zimels Declaration fulfills [the personal knowledge] requirement because Mr. Zimels is Deltathree's President and CEO.") As illustrated by the Zeichick Declaration, however, Mr. Zimels never participated directly in the contract negotiations. (*See* Zeichick Decl. ¶ 8.) Therefore, while it is undisputed that Mr. Zimels is Deltathree's President and CEO, there is no information in the declaration as to the why Mr. Zimels is competent to testify in regards to the negotiations. That there is no information about the basis of Mr. Zimels's testimony in regards to the negotiations also raises a question as to the basis of his testimony in regards to any amounts that Deltathree paid or should have paid GIPS.

C. **The Supplemental Zimels Declaration Does Not Evidence That Mr. Zimels Has Independent Personal Knowledge About the Contract Negotiations.**

Of the two primary issues covered by the original Zimels Declaration, the Supplemental Zimels Declaration only covers one—the contract negotiations between GIPS and Deltathree. Mr. Zimels asserts that he has "personal knowledge as to how the parties conducted themselves during the negotiations" because he "was kept consistently apprised of the progress and details of the negotiations as they unfolded." (Supp. Decl. ¶ 3.) In effect, therefore, he is claiming to have personal knowledge based on what someone else told him. (*See also* Declaration of Paul C. White ¶ 5 ("I consistently kept Mr. Zimels apprised of the progress and details of the negotiations as they unfolded.").) If his testimony about the negotiations is based on what Mr.

3

White told him, then his testimony is inadmissible hearsay and it cannot be used to support Deltathree's motion. (*See* Fed. R. Civ. P. 56(e)(1) ("A supporting . . . affidavit must . . . set out facts that would be admissible in evidence . . . .") Moreover, it appears that for part of the negotiation time frame, any testimony by Mr. Zimels would be double hearsay. (*See* White Declaration ¶ 7 (stating that he did not become directly involved in the negotiation until "the final stages").)

D.  **The Supplemental Zimels Declaration Does Not Sufficiently Explain The Documentary Basis Underlying His "Personal Knowledge" About the Contract Negotiations Or About How Much Deltathree Had Or Should Have Paid GIPS.**

In the alternative, and as to both the contract negotiations and the amount of money Deltathree paid GIPS, Deltathree argues that Mr. Zimels has "personal knowledge" because he reviewed certain unidentified company records. (*See* Opp. at 2-3 & 4.) Testimony supporting this argument, however, is not contained in the Supplemental Declaration. Rather, Mr. Zimels simply "confirms" in the Supplemental Declaration that all of the facts provided by his original declaration were made "upon my own personal knowledge" or "after a review of the documents and the company's business records." (Supp. Decl. ¶ 4.) He does not identify "the documents" he reviewed, whether "the documents" were produced, or which facts in his declarations were provided based on his review of "the documents." Similarly, he does not identify which company business records he reviewed, whether those business records were produced,[1] or which facts in his declarations were provided based on his review of the business records.

E.  **The Cases Deltathree Cites Does Not Support The Position That Any Time An Officer Asserts He Has Reviewed "The Documents" Or "The Company's Business Records," That Provides A Sufficient Basis For Any And All Testimony.**

Although Mr. Zimels does not identify "the documents" and/or "the company's business records" that he reviewed, or which portions of his declaration are based on the review of "the

---

[1] The documents comprising Exhibit C that were attached to the original Zimels Declaration were not produced to GIPS until a week after Deltathree's Motion was filed. *See* Cohen Decl. ¶ 7.

documents" and/or "the company's business records," Deltathree argues that the mere assertion that sources were reviewed provides a sufficient basis for Mr. Zimels's testimony. (*See* Opp. at 3 ("Even if Mr. Zimels did not have personal knowledge as to every detail of the negotiations, because declarations may be made on personal knowledge by an officer of a company after review of the company's business records, Mr. Zimels had sufficient personal knowledge to testify that the initial draft of the Agreement was produced by Deltathree to GIPS."); *id.* at 4 ("The invoices which comprise Exhibit C can clearly be categorized as [] business records, and Mr. Zimels is therefore competent to testify as to the accuracy of these invoices and to the facts which flow from them.").)  Deltathree, however, cites no evidentiary basis for its arguments. And, as discussed above, Mr. Zimels states nothing more than he reviewed unidentified "documents" and "company's business records." (Supp. Decl. ¶ 4.)[2]  It appears the Deltathree's argument, therefore, is based on the legal authority it cites.

    1.    <u>Neither *Heritage Packaging* nor *Brooks Fashion Stores* stands for the proposition that any time a company's officer reviews unspecified business records, the company can assert that he has personal knowledge about any and all subjects discussed in his declaration.</u>

In support of its arguments as to why Mr. Zimels has personal knowledge about the contract negotiations and how much Deltathree paid (or should have paid) to GIPS, Deltathree cites *Merrill Lynch Business Financial Services Inc. v. Heritage Packaging Group*, No. CV-06-3951, 2007 WL 2815741 (E.D.N.Y. Sept. 25, 2007), and *In re Brooks Fashion Stores, Inc.*, No.

---

[2] If, by "business records, "Mr. Zimels was implying that he reviewed the invoices attached as Exhibit C to his original declaration, it is unknown where these invoices came from and how this group of invoices alone supports the position that the sum total of the amounts listed thereon is the total amount Deltathree paid and should have paid GIPS.  For example, there is no testimony about who was responsible for keeping the documents, who collected them for Mr. Zimels's review, and when they were collected.  Nor is there testimony that the documents that comprise Exhibit C are all of the invoices GIPS sent Deltathree.  There is no testimony about why submission of a GIPS invoices translates to assertion that GIPS was paid.  There are hand-written notations on the invoices, some of which set forth that the invoices were "paid," but neither Mr. Zimels nor Deltathree identifies whose hand-writing it is, when it was written, and/or whether it is accurate.  That is, there is no evidence that such a notation means Deltathree actually paid GIPS the amounts listed.  Further, at least one invoice, *i.e.*, the eleventh invoice (No. 1996), is not marked "paid" at all.

92 Civ. 1571, 1994 WL 132280 (S.D.N.Y. Apr. 14, 1994). (*See* Opp. at 3 & 4.) Neither case, however, is on point. For example, in *Heritage Packaging*, the court found that a declarant had "personal knowledge of the facts contained in her declaration" because the declarant "stated that she relie[d] on and use[d] the documents attached to her declaration as part of her employment." 2007 WL 2815741, at *4. While Mr. Zimels attaches certain documents he reviewed to his original declaration, he does not state that he relied on and/or used them as part of his employment. Indeed, Deltathree implies to the contrary with its argument—that he has personal knowledge about certain subjects because of his review of the documents. *Heritage Packing*, thus, is inapposite.

Similarly, *Brooks Fashion Stores* is not directly on point because even with the additional material set forth in the Supplemental Declaration, the sum total of Mr. Zimels's testimony is unlike the testimony at issue there. In *Brooks Fashion Stores*, the defendant's Vice President of Human Resources submitted evidence of the plaintiff's employment status and evidence of company policies "through company records." 1994 WL 132280, at *4 n.3. The district court rejected the plaintiff's claim that the declaration was "non-probative." *Id.* Here, GIPS is not complaining that Mr. Zimels's declaration is non-probative. Deltathree's Motion raises the parties' intent behind a provision of the OEM Agreement and Mr. Zimels provides testimony about the parties' negotiations. Similarly, the Motion raises a question about monies paid and Mr. Zimels testifies about monies paid. What GIPS is challenging is whether Mr. Zimels is competent to testify about these subjects. This aside, in *Brooks Fashion Stores*, the Court found that although the declarant was not present at "key events," "his status as Vice President of Human Resources and his review of the relevant records, satisfies the personal knowledge requirement of Rule 56(e)" because as the Vice President of Human Resources, the declarant "certainly ha[d] personal knowledge of employment forms executed by [the plaintiff] and

6

evaluation reports prepared by [the plaintiff's] supervisors." *Id.* Here, there is no similar certainty as to Mr. Zimels's personal knowledge.

     2.    <u>Neither *Discover Re Managers* nor *St. Francis Hospital* stand for the proposition that it is "reasonable" to assume that a company executive has personal knowledge about the subjects in his declaration.</u>

Deltathree's reliance on *Discover Re Managers, Inc. v. Preferred Employers Group, Inc.*, No. 3:05-CV-809, 2006 WL 2838901 (D. Conn. Sept. 29, 2006), also is misplaced. (*See* Opp. at 2 (citing *Discover Re* for the proposition that it is "reasonable that [a] company's vice president had personal knowledge of a company's contractual relationship.") In *Discover Re*, the plaintiffs moved for partial summary judgment on, among other things, its breach of contract claim. *See id.* at *1. In support thereof, plaintiffs presented "evidence that defendant breached the contract by failing to remit all monies owed pursuant to the Underwriting Agreement" in dispute through the declaration of a company vice president. *See id.* at *4. Specifically, the vice president provided testimony about the defendant's failure to remit premiums as well as documentary evidence. *See id.* The defendant moved to strike the declaration on the ground that the vice president did not have personal knowledge about the subject matter set forth in the declaration. *See id.* at *6.

In response, the vice president submitted a supplemental declaration. *See id.* In that declaration, he clarified that "his knowledge of events is based on his 'personal knowledge gained through the ordinary course of [his] duties at Discover.' 'Specifically, my statements . . . are based on my review of the Underwriting Administration Agreement . . ., my review of the Plaintiffs' business records and correspondence with the Defendant . . . , and most importantly, my repeated attempts over the past two years to collect the unpaid premium from the Defendant." Based on this testimony, the Court found that the plaintiff had "sufficiently establishe[d] [the vice president's] personal knowledge of the subject at hand." *Id.* It went on to

7

find that his "testimony reflect[ed] the proper elements of his position as Vice President and Corporate Counsel for plaintiffs. From such vantage point, it is reasonable that [his] observations and knowledge of defendant's contractual relationship with plaintiffs would be accessible and, moreover, accurate." *Id.* In contrast to the supplemental declaration in *Discover Re*, here there is no such specificity in the Supplemental Zimels Declaration.

So too, *New York ex rel Spitzer v. St. Francis Hospital*, 94 F. Supp. 2d 423 (S.D.N.Y. 2000), is distinguishable. At issue in *St. Francis Hospital* was a declaration submitted by a company's "vice president of contracts." *Id.*, 94 F. Supp. 2d at 427. The defendants moved to strike portions of the declaration asserting that the vice president lacked personal knowledge. *See id.* In response to the challenge to the paragraphs concerning requests for proposal his company issued and a particular response his company received, the district court denied the motion to strike. Specifically, it found that "[a] reasonable fact-finder could believe that [the declarant], as vice president of contracts, had personal knowledge regarding [the company's] request for proposals and the proposal it received from Mid-Hudson in response." *See id.* Contrary to Deltathree's parenthetical, therefore, *St. Francis Hospital* does not stand for the general proposition that it is "reasonable that [a] company's vice president had personal knowledge of a company's contractual relationship." (Opp. at 2.) *St. Francis Hospital* stands for the proposition that it is reasonable that a company's vice president of contracts has personal knowledge about requests for proposals issued and responses received.

## III. CONCLUSION

Notwithstanding the additional facts set forth in the Supplemental Declaration and the arguments set forth in Deltathree's Opposition, Deltathree has not established that Mr. Zimels's declaration meets the standards of Rule 56(e). Mr. Zimels's testimony, therefore, should be stricken or disregarded. In the alternative, and at a minimum, paragraph 4, paragraph 5, and Exhibit C of the original Zimels Declaration should be stricken or disregarded.

Dated: New York, New York
       April 4, 2008

                                      Respectfully Submitted,

                                      WINSTON & STRAWN LLP

                                      /s/ Krista M. Enns

By:    Luke A. Connelly, Esq.
       Edward C. Wipper, Esq.
       WINSTON & STRAWN LLP
       200 Park Avenue
       New York, NY 10166-4193
       Telephone:   (212) 294-6700
       Facsimile:   (212) 294-4700

       Jonathan M. Cohen, Esq.
       *Admitted pro hac vice*
       Krista M. Enns, Esq.
       *Admitted pro hac vice*
       WINSTON & STRAWN LLP
       101 California Street, Suite 3900
       San Francisco, CA 94111-5894

       *Attorneys for Plaintiff Global IP Solutions, Inc.*